**WINSTON LEE**
**ATTORNEY AT LAW**
**20 VESEY STREET ~ SUITE 400**
**NEW YORK, NEW YORK 10007**
**Tel. (212)267-1911**
**Fax. (212)964-2926**

May 2, 2016

The Honorable Alison J. Nathan
United States District Judge                               Filed ECF
Southern District of New York
New York, New York 10007

Re: United States vs. Anthony King
S2 15 Cr. 95 (AJN)

Dear Judge Nathan:

I write as counsel for Mr. Anthony King, a defendant in the above-referenced case.

This letter is respectfully submitted, in response to the Government's May 2, 2016 letter to the Court and in advance of a bail review hearing scheduled for May 3, 2016. For the reasons stated below, I respectfully submit that this Court should affirm the granting of bail to Anthony King by United States Magistrate Judge James C. Francis IV after a detention hearing held on April 27, 2016.

### I.    Background

On April 27, 2016, Mr. King was initially presented before United States Magistrate Judge James C. Francis IV and arraigned on the instant indictment, which charges Mr. King with: (a) racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); (b) narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A); and (c) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(a)(iii). The Government's letter incorrectly states that Mr. King is charged in Count Three of the indictment.

Judge Francis held a detention hearing at which the parties were afforded a full opportunity to proffer evidence and present oral argument. At the conclusion of the detention hearing, Judge Francis denied the Government's request to detain Mr. King and ruled that Mr. King had rebutted the presumption that he posed a danger to the community or a risk of flight.

Judge Francis granted Mr. King a bail package which includes, *inter alia*, the following conditions: a $50,000 PRB to be signed by three financially responsible persons; posting of $1,000.00 cash; travel restricted to the SDNY and EDNY; surrender of all travel documents and no new applications; strict pre-trial supervision; and home confinement.

As of this writing, Mr. King has secured three financially responsible persons prepared to sign a bail bond on his behalf, and two of them have already been interviewed by the Government and approved. Mr. King has also had a land line installed in his primary residence in anticipation of Pre-trial Services installing an ankle bracelet monitoring device on that phone; and Mr. King's family is ready to post the required $1000.00 cash.

      Three people have unequivocally come forward and offered to act as sureties for Mr. King, each confident that he will abide by any terms and conditions imposed by this Court should he be released on bond. They include Mr. King's mother, a Certified Nurse's Assistant; Mr. King's sister, a Sales Associate at Macy's; and a second sister of Mr.KIng, who works as a direct care provider to mentally challenged individuals. While the means of these proposed suretors are comparatively modest, their willingness to expose themselves to potentially devastating financial consequences underscores their confidence in Mr. King.

      Additionally, Mr. King consents to the addition of these conditions to his bail package: drug testing and monitoring; no contact or associating with co-defendants except in the presence of counsel; and any other conditions as the Court deems appropriate and necessary.

## II.    Applicable Law

      18 U.S.C. § 3142(e) provides that " [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the §Controlled Substances Act."  The indictment here charges such an offense, thus, the statutory presumption in favor of detention applies to this case. *See*, *e.g.*, *United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991); *United States v. Contreras*, 776 F.2d 51 (2d Cir. 1985).

      Nevertheless, the presumption contained in § 3142 places only a burden of *production* on the accused.  That burden can be satisfied by coming forward with some evidence tending to rebut the presumption. This burden of production should not be confused with a burden of persuading the Court on any factual issue. *See*, *e.g.*, *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986); *See also United States v. Mercedes* 254 F.3d 433 (2d Cir. 2001) (accused bears limited burden of production - not of persuasion); *United States v. Validivia*, 104 Fed. Appx. 753, 754 (1st Cir. 2004) (regardless whether presumption rebutted, burden of proof remains on Government); *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (accused's obligation to come forward with evidence does not shift Government's burden of persuasion); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (presumption shifts to accused burden of production not persuasion); *United States v. Kirkaldy,* 181 F.3d 83 (2d Cir. 1999) [1] ; *United States v. Rodriguez*, 950 F.2d at 88 (same); *United States v. Clarke,* 2000 WL 1499344 at *4 (N.D.N.Y. 2000) (statutory presumption imposes only burden of production on accused; burden of persuasion always remains with Government, to establish dangerousness by clear and convincing evidence).

      As the Eleventh Circuit noted,

> [o]nce the government establishes probable cause it becomes the task of the defendant to come forward with some quantum of evidence contrary to the fact presumed by the statute.  Having done so, the defendant has met his obligation.  The ultimate burden of persuading . . . still rests with the government.

---

[1] " [T]he government retains the burden of persuasion on this issue, 'a defendant must [only] introduce some evidence contrary to the presumed fact in order to rebut the presumption.' *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991). "

*United States v. Hurtado*, 779 F.2d 1467, 1471 (fn.4)(11th Cir. 1985)(*citing United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985)).

### III.   Argument

Judge Francis correctly denied the Government's request to detain Mr. King when he ruled that the Government had failed its burden of establishing that no set of conditions could assure the safety of the community and all future appearances of Mr. King as required. The substantial and restrictive bail conditions prescribed by Judge Francis more than address both safety of the public and any flight risk by Mr. King.

At the detention hearing, the Government alleged, that Mr. King was a significant participant in the charged conspiracy, who held the position of a so called "Big Suit".

Yet, it is quite telling, and belies the Government's characterization of Mr. King, that they could not proffer any concrete evidence to support or corroborate their assertions. Unlike the case of co-defendants, the Government did not - presumably, because they could not - cite one instance where Mr. King was captured on any incriminating video or Title III recordings. This total absence of any video or audio recorded evidence of Mr. King's participation in the conspiracy is totally at odds with the government's depiction of him as someone who played a significant role. The absence of any incriminating audio recording of Mr. King is more significant in light of the fact that there were thousands of intercepted conversations recorded over the course of the far reaching and long term investigation in this case.

Mr. King was arrested, without incident, on April 27, 2016, at about 4:00 a.m., at his residence in Endicott, New York, where he resides with his girlfriend, their three year old daughter, and his girlfriends's seven year old son, all of whom were present. Mr. King has been involved in a committed relationship with his girlfriend for the past fives years, and he has lived in this residence and community for the past three years, working at odds jobs to help support his young family. These facts have been corroborated by Mr. King's immediate family and were never contested by the Government at the detention hearing. Yet, Mr. King's place of residence is hours away by car from any of the locations where members of the charged conspiracy allegedly conducted their criminal activities. Moreover, it is incredible that not one shred of incriminating evidence or contraband of any kind linking Mr. King to the charged conspiracy was ever seized from Mr. King or from his residence. Furthermore, there are no incriminating post arrest statements attributed to Mr. King.

In the first four pages of its May 2, 2016 letter, the Government merely regurgitates the general allegations from the indictment and its press releases, setting forth nothing specific to Mr. King.

Only at page five of their letter, under the heading of "The Weight of the Evidence" does the Government attempt to proffer anything specific as to Mr. King. In relating the proffered evidence to the Court, the Government letter is artfully crafted to minimize and obfuscate the shortcomings and limitations of their evidence. I will address them in order.

1. The government's claim that BMB's leader named Mr. King a Big Suit" seems to be nothing more than anecdotal evidence from cooperators. The Government cites nothing from the voluminous amount of evidence obtained during the course of the investigation that corroborates this anecdotal evidence. Nor do they describe anything else that remotely suggests that Mr. King had held such a position, such

  as tattoos, ostentatious jewelry, insignias, or any other trappings typical of a so called high-ranking member.

2.  The Government states that Mr. King "participated in a 2012 shooting against a rival gang member..." The weakness of this proffered evidence is evident from its lack of detail. Once again, it appears this is anecdotal evidence from a cooperator that is uncorroborated by any concrete evidence that the Government can present. I assume the vague term "participation" was deliberately used to describe Mr. King's supposed involvement in that 2012 shooting because the Government does not know the exact nature of Mr. King' alleged "participation."

3.  The Government cites only two prior arrests of Mr. King in connection with marijuana and declares that the aforesaid cooperators' anecdotal testimony about Mr. King's involvement in shootings and his status as a Big Suit" will be corroborated by these "prior encounters' involving marijuana.

  a)  With regard to the first arrest, the Government states that "On June 4, 2010, King sold marijuana to an undercover officer..." and directs the Court to Exhibit A at page 17 in support of that statement. Yet, the Government fails to point out that that arrest was resolved with a plea to "Possession of Marijuana", under New York Penal Law 221.05, which is a violation, not a crime, under New York Law and the imposition of a fine. Importantly, the final disposition of this case with a violation plea was known to Judge Francis and was an important consideration when he made his determination. Moreover, the Government remains hard put to explain how a marijuana violation corroborates Mr. King's involvement in violence as a high-ranking member of a major drug organization.

  b)  With regard to the second arrest, the Government states that " . . . on July 8, 2010, King was arrested in possession of eight bags of marijuana..." But the Government merely provides the Court with a narrative of the original charges against Mr. King from a report which indicates that the matter was "Sealed." *See* Government Exhibit A at page 14. There is reason to believe that that case was "Sealed" after the case was dismissed on the merits. Once again, the Government strains to explain how this "Sealed" case strongly corroborates the aforesaid anecdotal cooperator testimony.

4.  The Government states that "...on March 9, 2009 a witness observed King driving an automobile from which shots were fired..."  The details in the in the police report (Government Exhibit A at 26) are worded in such a way as to preclude Mr. King from being the alleged shooter since he was driving the vehicle at the time when shots were fired from the vehicle. Notably, the Government is unable to proffer any more details or concrete facts surrounding this incident. Although the Government fails to indicate it, I assume this matter was dismissed and sealed because law enforcement lacked any or insufficient evidence to act upon or prosecute this matter. Thus, it once again appears that Mr. King's alleged involvement in this 2009 case rests upon the conveniently serve serving uncorroborated testimony of a cooperator.

5.  The Government claims that King's association with BMB is "further confirmed by social media postings in which several gang members ...

express loyalty and admiration for Mr. King. Such social media postings are subject to interpretation, and their characterizations by the Government should not be dispositive. The Government should be required to provide these postings, which I assume they can easily do, so that the Court can determine if they clearly represent what the government claims they do.

Thus, it appears that any proffered evidence about the most serious allegations regarding violence by Mr. King come from the anecdotal testimony of the government's cooperating witnesses, whose credibility and reliability can be expected to be vigorously contested should the matter proceed to trial.

In connection with two of his marijuana possession cases, Mr. King found himself financially unable to pay the imposed fines when he was required to, which resulted in the issuance of bench warrants. But it should be noted that Mr. King did eventually appear in court to pay these fines, and there are presently no outstanding fines that remain unpaid.

Most important, Mr. King's record of is devoid of any convictions for offenses involving violence or firearms. Mr. King maintains his assertion at the detention hearing that he was never been formally charged or convicted of any firearms offense. Simply put, there is no history of violence in Mr. King's insignificant criminal record, nor has there been any claim of domestic violence in his personal relationships.

## IV.   Conclusion

Based on all of the above, the Government has failed to meet its burden under 18 U.S.C. § 3142(e), and Mr. King has clearly come forward with sufficient facts to rebut the presumption.

His pretrial release under the substantial and very restrictive bail package granted by Judge Francis, which includes home confinement with electronic monitoring will more than address any concerns regarding risk of flight or danger to the community.

Mr. King's family and friends are prepared to come before this Court where they intend to stake their financial futures on the presence of the Mr. King at each and every court appearance. Each potential surety understands that they will be jointly and severally liable for the entire amount of the bond should Mr. King fail to return to court. Mr. King, a United States citizen, will appear in court when required to do so, comply with all the very restrictive conditions imposed by this Court and cooperate with United States Pre-Trial Services. He understands that his failure to return to court would result in the financial ruin of his family and friends and would result in additional charges being levied against him.

Accordingly, at the conclusion of the bail review hearing, I will respectfully request that the Court affirm the setting of bail by Judge Francis with the conditions outlined above.

Respectfully submitted,

/s/
WINSTON LEE