# GRECO ♦ NEYLAND, PC

ATTORNEYS AT LAW

November 15, 2016

Honorable Alison J. Nathan
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

<u>*VIA ELECTRONIC FILING (ECF)*</u>

Re:   <u>United States v. Robert Feliciano</u>, 15-CR-00095; Letter Regarding Sentencing

Dear Judge Nathan:

On <u>July 15, 2016</u>, Robert Feliciano, Jr., pled guilty to one count of racketeering in violation of <u>18 U.S.C. § 1962(d)</u>. Mr. Feliciano is scheduled to be sentenced by this Court on Monday, November 21, 2016. We write now to provide Your Honor with information that is relevant to your sentencing decision. Specifically, we are asking the Court to impose a sentence of one year and one day due to the nature and circumstances of the offense, the changes in Mr. Feliciano's life since this offense occurred, and Mr. Feliciano's family support and situation.

## **I.**

## **STATEMENT OF ROBERT FELICIANO, JR.'S BACKGROUND HISTORY**

Robert Feliciano, Jr. ("Feliciano" or "Mr. Feliciano"), was born on October 11, 1990, in Bronx, New York, to Robert and Josephine Feliciano. Mr. Feliciano has one sibling, Justin, who is autistic and epileptic. Feliciano and his brother were raised by both parents in a middle-class home in the Bronx, NY. Mr. Feliciano, Sr., works as a plumber, and Mr. Feliciano, Jr., resided with his mother prior to his arrest. Mr. Feliciano's parents divorced when he was about 20 years old.

For the past eight years, Mr. Feliciano has been romantically involved with Carolyn Ann (Karolann) Garcia.  Ms. Garcia and Mr. Feliciano have one child, Delilah Kassiey Feliciano, who is 19 months old.  Delilah suffers from Dandy-Walker syndrome, a congenital brain malformation involving the cerebellum.  Delilah is susceptible to ear infections and must visit a neurologist every three (3) months.

## II.

## SENTENCING FACTORS

### A. Consideration of the Guidelines

While the Court is no longer required to impose a sentence within the Guidelines, the Second Circuit has held that District Courts must "consider" the Guidelines.  In "order to fulfill this statutory duty to 'consider' the Guidelines a sentencing judge will normally have to determine the applicable Guideline range."  US v. Crosby, 397 F.3d at 111 (2d Cir.2005).  Thus, to decide what sentence is appropriate for Mr. Feliciano, the Court must first calculate the Guideline range for this offense.

Because the offense of conviction involves a racketeering charge, § 2E1.1 of the Sentencing Guidelines applies.  In determining the appropriate base offense level, the sentencing court is required to calculate the defendant's 'relevant conduct' under guidelines §§ 1B1.3(a) and (1)(b).

### B. Offense Level Computation and 18 U.S.C. § 3553(a) Factors

Although the imposition of a sentence in accordance with the United States Sentencing Guidelines is not mandatory, the Guidelines are advisory and the Court is required to consider any

applicable Guideline provisions, as well as other factors enumerated in 18 U.S.C. § 3553(a), to arrive at an appropriate sentence in the instant case.

Section 3553(a) requires that this Court consider the purposes of sentencing, including punishment, promotion of public safety, and deterrence. Under these standards, the Court may impose a non-guideline sentence in appropriate circumstances. For the instant offense, there is no statutory mandatory minimum term of imprisonment required. The maximum punishment authorized by statute is twenty (20) year imprisonment. 18 U.S.C. § 1962(d).

The offense level calculation-which all parties agree upon-is predicated on the following calculations:

**Base Offense Level:** The Guideline for these offenses is U.S.S.G.M. § 2E1.1. Under that section, the base offense level is either 19 or the base offense level applicable to the underlying criminal activity, in this case a narcotics conspiracy, whichever is higher. The Guidelines section applicable to the underlying narcotics conspiracy is § 2D1.1, which provides for a base offense level of 30 because the offense involved between 280 and 840 grams of crack, under § 2D1.1(a)(5) and § 2D1.1(c)(5).

**Initial Base Offense Level:**                                                                 **30**

**Adjustment Offense Level (Subtotal):**                                          **30**

**Adjustment for Acceptance of Responsibility:** Mr. Feliciano pled guilty, and the Government intends to make a motion stating that it was notified in a timely manner by the defendant of his intention to do so. Per Guidelines § 3E1.1(a) and § 3E1.1(b), three (3) levels are subtracted.

                                                                                                      -   **3**

**Total Offense Level**:                                                                          **27**

### C. Criminal History

The parties and Probation Department agree that Mr. Feliciano has three (3) criminal history points for a criminal history category of II.

### D. A Sentence of One Year and One Day is Appropriate Due to The Nature and Circumstances of the Offense

Amongst the most important sentencing factors for a court to consider are the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). As an initial matter, we should note here that we do not intend to downplay the seriousness of the offense of conviction in this case: Mr. Feliciano pled guilty to racketeering, and, specifically, Mr. Feliciano admitted to being an *associate*[1]-not a member-of a gang and distributing narcotics, an offense for which Congress has appropriately authorized the Court to impose prison time. It should be noted, however, that this particular offense has no mandatory minimum, reflecting the congressional judgment that there are circumstances where someone convicted of this offense is appropriately placed on probation. Moreover, it is important to note-as Probation does-that Mr. Feliciano committed "no overt act…after 2014." PSR ¶ 53. This timing is crucial, as it represents a dividing point in Mr. Feliciano's life. As the Court knows, Mr. Feliciano was previously sentenced to a term of five (5) years' probation for his role in a bar fight. After that state case-and after Mr. Feliciano committed any of the overt acts which bring him within the purview of the conspiracy charged in this case- Mr. Feliciano welcomed his daughter into the world, and, to be frank, turned his life around, as shall be seen more clearly in § II(E), *infra*.

---

[1] The Pre-Sentence Report states that Mr. Feliciano was a "member" of the Big Money Bosses. See PSR ¶ 22. Mr. Feliciano, however, allocated to being an associate of the gang, not a member.

In addition, as Probation notes, Mr. Feliciano "was not involved in any acts of violence for the criminal enterprise." PSR, 28. The Government seems to maintain the position that Mr. Feliciano was a "triggerman" in a 2014 shooting and that he had a reputation as a "shooter" amongst the gang-members. PSR ¶ 26. It is not at all clear, however, upon what evidence this assertion is based, and Mr. Feliciano vehemently denies this allegation. Based upon a conversation with AUSA Rachel Maimin on November 15, 2016, it appears that the Government has no particular incident of violence that it will seek to prove against Mr. Feliciano at sentencing. To the extent that the Government maintains the position that Mr. Feliciano either was a triggerman in a specific incident or that he has a reputation as a "shooter" amongst the gang members-and to the extent that the Court finds this allegation relevant to sentencing-Mr. Feliciano respectfully requests a *Fatico* hearing.

### E. A Sentence of One Year and One Day is Appropriate Due to Mr. Feliciano's Background and Character-Specifically, His Family Support, Family Situation, and Employment Opportunities Post-Incarceration

Congress has directed sentencing courts to consider "the history and the characteristics" of the defendant when imposing sentence. 18 U.S.C. § 3553(a)(1). As a general matter, a defendant's family circumstances are justification for granting a below-Guidelines sentence. See, e.g., U.S. v. Johnson, 964 F.2d 124, 128 (2d Cir.1992). The depth and breadth of the love and support that Mr. Feliciano has with his family, friends, community leaders, employers, and coworkers-as well as the dependence that his autistic brother, young daughter, and fiancée have on him-justify a below-Guidelines sentence in this case.

As an initial matter, it is important to note that Probation has recognized the important role that family has played and continues to play in Mr. Feliciano's life, recommending a sentence of

forty-eight (48) months, thirty (30) full months below the bottom of the Guidelines range.  PSR, 28.  Mr. Feliciano's positive family support-as well as his general good character-is best seen through his relationship with his parents and autistic, twenty-three (23) year old brother.  Mr. Feliciano's parents write:

> Our son Robert is a young man who is very respectful, hardworking, caring, loving and responsible….He is a great brother who has had a strong impact in helping us raise his brother with autism.  He was always his brothers [sic] voice when he didn't speak, know his wants and needs better than his parents.  He was always protective and mindful of how to handle his brother and make him as happy and comfortable.  Exh. A, Letter from Robert and Josephine Feliciano, Nov. 11, 2016, 1.

It is not an easy thing for a child to develop and maintain a strong relationship with a younger, autistic brother, but it appears that that is exactly what Mr. Feliciano has accomplished.  But Mr. Feliciano has been more than just an older brother.  Rather, Mr. Feliciano served as his younger, autistic brother's "voice" and "protector," perhaps an understandable role for a young adult but a difficult one for a child or teenager to assume.  Nevertheless, it appears that Mr. Feliciano did just that, and that he did so with aplomb.

Mr. Feliciano's brother, Justin, echoes the relationship with Robert, Jr., that his parents describe.  Specifically, Justin writes: "My brother Robert I love very much.  I miss him too.  When will R.J. come home?  I hope soon so we can play our video games together."  Exh. B, Letter from Justin Feliciano, Nov. 10, 2016.  Although simplistic in content and form, Justin's letter nevertheless speaks volumes about the emotional bond that he has with his brother Robert, and the negative impact that Robert's incarceration has-and will continue to have-on Justin.

In addition to his brother and parents, nineteen months ago Mr. Feliciano welcomed a new daughter, Delilah, into the world.  A constant theme amongst those who know Mr. Feliciano has

been not only the love and support that he has for his daughter and the rest of his family, but also the manner in which Mr. Feliciano has evolved throughout his life to assume more responsibility, particularly-but not solely-as it relates to his daughter. Mr. Feliciano's parents write:

> ….He is an absolute great father to his daughter Delilah and becoming a parent has made him into a mature adult….He has evolved and life for him has turned dramatically. He has the best sense of humor and loves making people laugh and plays practical jokes as well. He has an infectious smile and is ready to help anyone when they need it….He has taken up the trade as a plumber's helper like his father. This is where he gets his great worth ethic from. Long hours and hard work to provide for his own family now was his goal. <u>Exh. A, Letter from Robert and Josephine Feliciano, Nov. 11, 2016, 1</u>.

Continuing on the theme of gaining maturity, especially as it relates to the care for his young daughter, Mr. Feliciano's grandparents, Salvador Feliciano and Ana Rivera, write that: "I know he is very remorseful for his mistakes and would like the opportunity to make things right again for himself but more importantly for his daughter. So many children grow up without a father, but my grandson is one who adores and loves his daughter and wants to be there to raise her so she doesn't get lost and make bad choices and has her father to look up to as she grows." <u>Exh. C, Letter from Salvador Feliciano and Ana Rivera, Oct. 23, 2016</u>.

  The notion that Mr. Feliciano is gaining responsibility and maturing throughout his life is so omnipresent in the letters that have been written that it sounds almost like a broken record. For example, Mr. Feliciano's maternal grandparents write: "Watching him grow has been just pure joy. It has been wonderful to see him mature and become an outstanding father to my great-granddaughter Delilah. He is a funny guy, always making jokes or pulling a prank. He is also thoughtful, considerate, hardworking, and very, very respectful." <u>Exh. D, Letter from Gilbert Perez and Maria Fuentes, Oct. 24, 2016</u>. From this and other letters, it appears as though

becoming a father has been a real turning point in Mr. Feliciano's life to such that since her birth Mr. Feliciano has done nothing but dedicate himself to work and family.

Karolann Garcia, Mr. Feliciano's fiancée and the mother of his child, also speaks about the manner in which Mr. Feliciano has matured throughout the years as well as Mr. Feliciano's relationship with his daughter and some of the health difficulties that Delilah experiences. Ms. Garcia writes that:

> I have been together with Robert for 10 years and have seen him grow in to the man and father he is today. We are high school sweethearts and he supported me through my 4 years that I was away in college. He is and will always be the one and only man that I trust and can depend on….
>
> Robert is hardworking and dedicated to the progression of our family and his life. He has held jobs in plumbing and maintenance that he has succeeded in with dedication to whatever he does….We waited nine years to have our child so that we can be prepared and stable enough to give our daughter a family and the best life that she can have….Robert is the parent who picks our daughter up every day when he gets out of work and takes her a bath and feeds her dinner until I come home. He is a big asset in our daily lives and we need him home to be with his family.
>
> Since Delilah's birth in 2015, Robert has taken care and loved his daughter with his entirety. Delilah loves her father very much and needs him as part of her life to see her grow in to a beautiful person….I am a full time worker and need as much help as I can get for our daughter has a disability called Dandy Walker Syndrome that causes her to see a neurologist every three months. He has been there to support me and his daughter from day one….Delilah needs her father in her life to be her support and encourage her to grow in to a loving human being. His daughter loves her father very much and asks for him daily. <u>Exh. E, Letter from Karolann Garcia, Nov. 2016</u>.

Given Delilah's health concerns, it is imperative that Mr. Feliciano be home to support and care for his daughter. More to the point, as Ms. Garcia points out, Mr. Feliciano, since the birth of his daughter, has matured to the point where his sole focus in life is working and caring for her.

The compassion, care, and love that Mr. Feliciano has for his daughter is not a coincidence- it echoes the relationship he has had with his brother. Gladys Figueroa, a family friend since birth, writes about both relationships and their parallels:

> During his childhood I knew the type of person [Robert] would be because of the way he loved his brother. He totally adores him. Having a brother with a mental disability is hard enough, but being his voice, his protector and loving him as he does I knew that Robert (RJ) would grow up to be the compassionate, loving, patient and great father he is today….Life isn't easy and knowing how much extra time his parents had to give to his brother he never complained he just knew had had to mature faster than most kids his age….Truly heartbreaking for his daughter to be without her daddy because in the short he was with her completely totally loved her, took care of her and knew that life was different now. He is hardworking and is very respectful to everyone he meets. A trait hard to find in this generation we live in now. I know that there is always room for change and redemption, this is what Robert (RJ) will do. To be a better man, father and son. Exh. F, Letter from Gladys Figueroa, November 11, 2016.

Once again, the themes of love, care, compassion, and accepting more and more responsibility are self-evidence from the words of those who know Mr. Feliciano best.

It is not simply Mr. Feliciano's family that speaks both of his good character as well as the positive change in him since his daughter was born, but rather his employers and community leaders as well. William Ausperger, Jr., Mr. Feliciano's employer, has indicated that he will welcome Mr. Feliciano back to work after his release because Mr. Feliciano:

> [I]s very hardworking. He is an individual who will assist when help is needed without question. He will come into work early or stay late when needed without any excuse. He is a proud father and I know this is why he works as hard as he does….When Robert was arrested I was very saddened by the news. It was very hard to accept because he is a dedicated worker, co-worker, friend and father….I hope that he is able to be given a second chance and come back to work to do what he does so well." Exh. G, Letter from William Ausperger, Jr..

Similar to Mr. Feliciano's parents, Mr. Ausperger notes Mr. Feliciano's work ethic and ties it directly to his relationship with his daughter. Moreover, it speaks volumes of Mr. Feliciano's

work-ethic and character that his employer would welcome him back to work after this conviction and incarceration, a fact that Probation noted in recommending that the Court impose a forty-eight (48) month sentence in this case.  <u>PSR, 28</u>.

Beyond his employer, community leaders speak about Mr. Feliciano's good character and maturation through parenthood.  Mr. Feliciano's pastor writes:

> I know that Robert is a kind and caring individual and now that he has acknowledged his imperfections I can assure that improvement has begun.  I have been pleased to witness a positive change in Robert.  I can assure you that without a doubt that Robert has been remorseful for his past choices and has expressed it and it has been reflected in his efforts to maintain a positive social environment as well as employment to support his family.
>
> I am confident with the support of his family and his sincere desire to obey the law Robert understands the severity of his decisions and is striving to live a productive life.  I am delighted to vouch for Robert.  <u>Exh. H, Letter from Pastor Rosemarie Archilla, Williamsbridge United Reformed Church, May 17, 2016</u>.

Once again, Mr. Feliciano's pastor talks about a "positive change" and Mr. Feliciano's desire to lead a "productive life."  None of which is to say that Mr. Feliciano has been perfect in the past-he has not.  But all of which is to say that Mr. Feliciano has led-and continues to lead-a significantly different life since his daughter was born, and since he participated in this offense.

In addition to family, friends, employers, and community leaders, Mr. Feliciano's co-workers speak glowingly of him.  For example, Manuel Antonio Villa-Mena, a co-worker, speaks glowingly about Mr. Feliciano's work ethic, abilities, and general good character:

> Robert has a great work ethic.  He is always ready to take to task any job that is given to him.  In his short time with the company he has been one of the best helpers I had the privilege of working with.  He is very humble and mild mannered with a great sense of humor.  He pays attention to detail and has good customer service skills.  We have a good working relationship and am proud to have him [not just] as a co-worker but a friend.  <u>Exh. I, Letter from Manuel Antonio Villa-Mena, Nov. 1, 2016</u>.

The glowing reports of Mr. Feliciano's character and work ethic are not limited to friends, family, employers, and co-workers, but also include customers.  Luis Ortiz, a superintendent at a building where Mr. Feliciano has performed work, knowing full-well the offense to which Mr. Feliciano has pled guilty, writes: "I would welcome Robert back into my building for work without any concern or worry."  Exh. J, Letter from Luis Ortiz, Nov. 1, 2016.  Once again, it speaks volumes that Mr. Ortiz not only writes so well about Mr. Feliciano, but that he would not just allow but "*welcome*" Mr. Feliciano back into his building as a convicted felon.

Beyond the words on the page, the vast number of people of varying relationships with Robert who wrote in on behalf of Mr. Feliciano speaks volumes about the type of person that Mr. Feliciano is.  In addition to the letters excerpted directly in this memo, no fewer than nine (9) other co-workers and fourteen (14) other friends and family members wrote the Court in support of Mr. Feliciano.  See Exh. K, Collected Letters of Support.  We encourage the Court to read these letters, as they paint similar pictures of love, compassion, respect, diligence, and maturation of Mr. Feliciano.

In closing, it is not simply the love and support from Mr. Feliciano's family that justifies a below-Guidelines sentence in this case, although as stated both the depth and breadth of that support is particularly impressive here.  Rather, it is also the extent to which Mr. Feliciano's family-in particular, his young daughter, young fiancée, and autistic brother-depend upon him.  It is difficult enough raising a young child, and it is even more difficult when that child has health complications like Dandy-Walker syndrome.  This difficulty can only be exacerbated when the father is not present to assist with the child-rearing.  By all accounts, Mr. Feliciano is a dedicated and doting father who needs to care for his sick child.

### III.     Conclusion

This is a case of two Roberts, the Robert Feliciano of his youth and the Robert Feliciano entering adulthood.  The offense that brings Mr. Feliciano before Your Honor was committed in his youth, before his daughter was born.  See PSR ¶ 53.  Since that time, Mr. Feliciano had a daughter, and re-dedicated himself to work and family, family and work.  Those who know Mr. Feliciano speak glowingly not just about his good character, but also about the positive changes, maturation, and growing acceptance of responsibility that they have seen in Mr. Feliciano.  He stands before Your Honor as a different man than the one who committed this offense, and asks that the Court provide him not only with the opportunity to continue caring for his family, but also to continue evolving into the mature, responsible man that so many see in him.

For the foregoing reasons, we respectfully request that this Court sentence Mr. Feliciano to one year and one of incarceration.

Respectfully Submitted,

/s/ Richard M. Langweber
Richard M. Langweber, Esq. &
Jeffery L. Greco, Esq.
GRECO NEYLAND, P.C.
535 Fifth Ave., 25th Floor
New York, NY 10017
Phone (212) 951-1300
Fax: (212) 951-1302
Langweber Cell (508) 245-9566
Greco Cell (212) 810-1774
*Counsel to Defendant Frederick Weintraub*

CC:     AUSA Rachel Maimin, SDNY (via ECF & via electronic mail)