UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA

    -against-                                    15-CR-0095

DAQUAN REID,
                          Defendant.
-----------------------------------------------------------------x

# SENTENCING MEMORANDUM

BRYAN KONOSKI
Treyvus & Konoski, P.C.
*Attorney(s) for the Defendant*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832
Fax: (718) 668-1094
Email: bkonoski@aol.com

# Table of Contents

**INTRODUCTION**..................................................................................................1

**DAQUAN REID'S BACKGROUND AND HISTORY**................................................1

**SENTENCING GUIDELINES CALCULATION**......................................................7

**AN OVERVIEW OF SENTENCING POST-BOOKER**............................................8

    A. A sentence of one year and one day is appropriate due to the nature and circumstances of the offense of the defendant. (18 U.S.C. § 3553(a)(l))..........................................10

    B. A sentence of one year and one day is appropriate due to the history and characteristics of the defendant. (18 U.S.C. § 3553(a)(l))..........................................12

    C. A sentence of one year and one day is appropriate (18 U.S.C. § 3553(a)(2)) ...............14

        a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense..............................................14
        b) To afford adequate deterrence to criminal conduct....................................15
        c) To protect the public from further crimes of the defendant.........................16
        d) To provide the defendant with needed educational or vocational training. medical care. or other correctional treatment in the most effective manner..........................................................................................16

**CONCLUSION**..................................................................................................16

I.

## INTRODUCTION

Defendant, Daquan Reid, will be sentenced upon his plea of guilty to Count Two of the Indictment, which charged the defendant with conspiracy to distribute and possess with intent to distribute crack-cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841.

I offer this sentencing memorandum to assist the Court in arriving at a sentence "sufficient but not greater than necessary" to satisfy the goals of sentencing as codified at 18 U.S.C. § 3553(a)(2).

II.

## DAQUAN REID'S BACKGROUND AND HISTORY

There is certainly no doubt that when someone commits a crime in our society, there are repercussions. Nothing in this memorandum to the court should be interpreted as undermining the seriousness of the offenses that Mr. Reid admitted to committing. However, based on my communications with Mr. Reid's family members, my review of the attached reference letters, my review of the discovery in this case, and the content of the PSR, I believe that leniency by this Honorable Court is justified in this case.

The proof and evidence in this case demonstrates that Mr. Reid's actions were not driven solely by greed or a desire to inflict harm on society. Daquan Reid's actions appear to have been primarily motivated by a desire to ensure that his necessities were taken care of and that his family was relieved of financial pressures. As Mr. Reid's sister, Tenisha Munroe, tells us, "[o]ur mom was a single mother so it's always been only us. This is one of the reasons Daquan took the path he decided to take because he was tired of seeing our mom struggle, tired of the evictions and backed up bills." (Ex. A). Additionally, his mother, Curlene White, explains, "my son did something wrong and I'm not asking you to overlook it, I'm merely asking you to understand that

he did it for the sake of his family and our struggles. We've been evicted, homeless, powerless, and sometimes we went without due to my lack of good health." (Ex. B).

Although Mr. Reid's actions are certainly worthy of some amount of punishment, the facts and evidence demonstrate that Daquan Reid is likely to be rehabilitated through this experience and lead a law-abiding life moving forward into the future. Despite the nature of this crime, Mr. Reid is a loving young man who is exceptionally close to his family. It is this close-knit bond to his family which will provide him the support and motivation he needs to remain out of trouble in the future. Although Mr. Reid may have been originally motivated to engage in drug-dealing activities to ensure that his necessities were provided for, Mr. Reid and his family have been completely distraught since he has been incarcerated. Neither he, nor his mother, nor his sister or niece, want to be apart from each other under this type of circumstances again in the future.

Daquan Reid was born on March 27, 1995, in the Bronx, New York. His mother is Ms. Curlene White, age 50. (PSR ¶ 49). Although Mr. Reid does not have any full siblings, he has one loving and supportive half-sibling, who is his sister, Tenisha Munroe, age 29. (PSR ¶ 50). His family also includes his 10-year old niece, Perri Ellis (Tenisha Munroe's daughter). (PSR ¶ 50). Mr. Reid does not know his father. Unfortunately, his parents separated prior to his birth and he never met his father. (PSR ¶ 49). The available evidence shows that Mr. Reid's world -- and his primary motivation – are the three women in his life (his family).

As addressed above, Daquan Reid comes from an extremely loving and supportive family. He has a very close relationship with his mother, sister, and niece. Unquestionably, Mr. Reid's arrest in this case let his family down and his mother and sister were "shocked and hurt" by his arrest. (PSR ¶ 51). Nonetheless, despite being "shocked and hurt" by Mr. Reid's actions and arrest in this case, his family has remained involved in his life. On a weekly basis, they visit with

him at the Metropolitan Correctional Center (MCC) and place money in his commissary account when finances permit. (PSR ¶ 51). They have also been very involved in his case and have attended all court appearances. (PSR ¶ 51).

Although Mr. Reid's family is very loving and supportive, Mr. Reid's childhood was not easy. In fact, growing up in the household was "rough" due to his living conditions. (PSR ¶ 52). The family was very poor. Although his mother, Ms. White, "tried to do the best she can", the family lacked basic necessities. (PSR ¶ 52). Ms. White would hold jobs from time to time, but she was often unable to hold stable employment. (PSR ¶ 52). The family barely made ends meet with the help of public assistance benefits. (PSR ¶ 52). Finances were extremely tight and, at times, the refrigerator and cabinets were barren and the family had "nothing to cook". (PSR ¶ 52). As one can imagine, being hungry as a child is a tragic and emotionally scarring experience that no-one should have to endure. Moreover, while growing up, Mr. Reid, "never really had a lot of clothing". (PSR ¶ 52). Due to the family's financial constraints, Mr. Reid and his family were evicted from their residence on several occasions. (PSR ¶ 52). Life growing up in the Reid household was financially unstable.

Despite the tough home environment growing up, the family remained close. Mr. Reid's mother, Curlene White, explained that Mr. Reid is a "very caring, loving person" who is "always there for his family." (PSR ¶ 56). The probation report notes that during the interview of Ms. White, she was "very emotional" and related that her son's incarceration has a "big impact on [her] life and is tearing her apart". (PSR ¶ 56).

Mr. Reid's caring personality is not simply a statement set forth by his mother and sister. In fact, there are thirteen (13) reference letters attached that demonstrate Mr. Reid has been known to be loving and caring. Some key points set forth in the attached reference letters are as follows:

1. "I always admired his bond with his mom" [. . .] "he is well family oriented and friendly person" **(Viveen Pellington-Gogoh) (Ex. C).**

2. "Daquan is a well-mannered intelligent young man who have a lot of respect and cares a lot about people. He is a well-known young man with respect in our community because of his loving heart. [. . .] This has been a very hard time for the family especially for his mom." **(Shanique Monroe) (Ex. D).**

3. "Daquan comes form a god fearing, strong and tight knit loving family." **(Chechey Williams) (Ex. E).**

4. "I can say this had been a very hard time for Ms. White. Daquan is coming from a great home. He has a lot of respect for others and have a well given and loving and caring personality". **(Sandra Wallace) (Ex. F).**

5. "Daquan is the son of my close family friend Curlene White. He is a well-mannered, soft spoken, intelligent young man who treats everyone with respect and courtesy. Daquan is well known and liked in the community in which he lives, due to his helpfulness and kindness to others. It has been really disheartening to his family especially on Birthday and Holiday occasions. We all miss Daquan dearly, not being there to celebrate the happy times with us as a family." **(Natasha Courtwright) (Ex. I).**

6. "Mr. Reid significantly valued spending time with his family and never missed an important day for them. He also helps his sister to pick up his niece from school on a daily bases, so it's been hard on Ms. Munroe without him being around." **(Michelle Wright) (Ex. J).**

7. "Daquan is coming from a well raised family he is a person who have a lot of respect for others and have a well caring heart. . . .." **(Kawaine Ellis) (Ex. K).**

8. "[Daquan] is an extremely thoughtful and considerate person who would do anything to make his little cousin, my granddaughter smile." **(Paleicia Reid) (Ex. M)**

Further demonstrating Mr. Reid's love for his family is the fact that he has a full sleeve tattoo on his right arm, which includes his mother's name, "Curlene" and his niece's name, "Perry", written in "stars". (PSR ¶ 62).

Moreover, there are important entries that have been retrieved from Mr. Reid's Facebook (social media) postings, which also support and demonstrate the close-knit and loving bond that he has with his family. Some of these entries are as follows (all entries below can be found in Ex. N):

1. Commenting on a post: "Love u Mama so Happy For U I swear". (October 3, 2015)

2. Status update: "I love my mother Odee nobody will ever take her place dats my world my everything" "#CurleneOneSon" (Note: The hashtag "#" notes "CurleneOneSon". This is clearly referencing Curlene White, Mr. Reid's mother). (October 2, 2015)

3. Status update: "on da rd (road) tryna get dis money for my familia" (June 10, 2015).

4. Status update: "Sneaker shopping wit mommy n perri my girls." "#ILiveForEm". (April 2015)

5. Status update: "Feel like running away but I got ppl dat depend on me". (April 18, 2015)

6. Status update: "Jus want everything to be great dats all I want in life". (April 18, 2015)

Certainly, the defense understands that the Government could certainly point to numerous Facebook and social media entries that demonstrate a connection to illegal activities. We are not undermining the proof and evidence in this case. In fact, Mr. Reid plead guilty early in this case, which demonstrates he recognized the evidence against him and that he was willing to accept responsibility for his actions. However, these particular social media entries, which I addressed above, are extremely important because they do demonstrate something that is very unusual in cases involving alleged gang activity – a close family bond. These entries corroborate exactly what Curlene White, Tenisha Munroe, and all of the reference letters state; that Mr. Reid is a caring, loving individual who has an extremely close connection to his family.

Mr. Reid's entries are very unusual to find on social media postings for someone who is supposedly a "hardened" criminal, as the Government would have the Court believe. In fact, these types of postings demonstrate the exact opposite of any assertion that he is a "hardened" criminal – these postings demonstrate that he is not so far down the "wrong path" that he cannot be rehabilitated. These postings demonstrate that he veered down a wrong path because of the love for his family and a desire to be able to afford the basic necessities that he and his family were deprived of throughout his childhood. But, there is one thing that Mr. Reid now knows, which is that if he continues down this path in the future he will be deprived of the love and closeness of his family by being locked in a prison cell for many years. Undoubtedly, he knows that he has let his family down by being arrested. He traveled down the wrong road, got arrested, and knows his family was "shocked and hurt" by his arrest. Mr. Reid certainly does not want to be away from his family's presence, and deprived of their hugs, and their love, any longer than he has to be. (See Exhibit O, photos of Mr. Reid with his family). He expressed his main goal is to "return home to his family as soon as possible". (PSR ¶ 54).

Surely, there can be a view that Mr. Reid's love for his family is what drove him to commit the crimes alleged herein. In fact, based on the information contained in the family's letters, and on Mr. Reid's Facebook page, such a view would be true. But, I assert to the Court, that Mr. Reid's love for his family will also be a significant motivating factor for him to withdraw from a life of criminal activity and, instead, lead a law-abiding life. Up until this point in time, Mr. Reid had no criminal history and was never in jail for a prolonged time. However, the arrest in this case has sent a very clear message to him that he is flirting with destroying that close-knit bond with his family and spending many years in a prison cell far away from the family he loves so dearly.

While awaiting sentence, Mr. Reid has been focusing on ensuring that he is ready for release back into society. While in custody, he has studied for his GED and is now ready to take the exam. (PSR ¶ 74). Certainly, this is a significant step towards rehabilitation. As confirmed by Chechey Williams, Daquan Reid "always had a love for fixing cars and dreamed of a successful career as an Auto Mechanic Engineer". Mr. Reid still has this goal. (PSR ¶ 75). If the Court gives him a second chance, he promises to take steps towards achieving that goal.

### III.
### SENTENCING GUIDELINES CALCULATION

The Probation Office arrived at an adjusted offense level 29, which is the Stipulated Guidelines Range set forth in Mr. Reid's plea agreement with the Government. Moreover, the Probation Office arrived at a Criminal History Category of I. Thus, per the Sentencing Guidelines, the range for imprisonment is 87 to 108 months. The Department of Probation has recommended a sentence of 87 months' incarceration.

The Defendant has no objection to the sentencing guidelines calculation arrived at by the Probation Office and agrees with the calculation. However, Mr. Reid should receive the benefit of a sentence outside the Stipulated Guidelines Range based on factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

Therefore, regardless of the Government's calculation, and even if the Court agrees with Probation's calculation, I still request that the Court depart from the sentencing guidelines and sentence the defendant to **1 year and 1 day incarceration** because such a sentence is "sufficient but not greater than necessary" to satisfy § 3553(a).

## IV.

## AN OVERVIEW OF SENTENCING POST-BOOKER

Since 2005, district courts have had wide discretion to impose non-Guidelines sentences, as long as they are reasonable. *See United States v. Booker*, 543 U.S. 220, 226-227 (2005) (eliminating requirement that district courts impose Guidelines-range sentences). The Guidelines are "effectively advisory", *see Gall v. United States*, 552 U.S. 38, 62 (2007), and are only "the starting point and the initial benchmark." *Id.*, at 49.

Moreover, "the Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890, 892 (2009).

In an informative (not controlling) decision, the Second Circuit re-examined how courts conduct and review sentences, not only post-Booker, but specifically post-*Gall/ Kimbrough*. *See United States v. Cavera*, 550 F.3d 180, 184 (2d Cir. 2008); c.f. *Kimbrough v. United States*, 552 U.S. 85 (2007).

The *Cavera* court's *en banc* opinion explains that district courts are no longer to presume that a Guidelines range sentence is reasonable. *See Cavera*, 550 F.3d at 184. The district court "must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *Id.*

Similarly, the Third Circuit has found that *Gall* and *Kimbrough* have expanded the sentencing court's authority to stray from the Guidelines, empowering district courts with "'wide latitude in making individualized sentencing determinations.'" *United States v. Marrero*, 313 Fed.Appx. 557, 558 (3rd Cir. 2009); citing *United States v. Rodriguez*, 527 F.3d 221, 225 (1st Cir. 2008).

In *United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009), the Third Circuit noted that post-*Booker*, district courts must make an "'individualized assessment based on the facts presented." *Tomko*, 562 F.3d at 567; quoting *Gall*, 552 U.S. at 597.

The Third Circuit has further explained that the district court must consider all of the factors in 18 U.S.C. §3553(a) to determine the appropriate sentence, "which may vary from the sentencing range called for by the Guidelines." *United States v. Levinson*, 543 F.3d 190, 194-95 3rd Cir. 2008). Ultimately, the touchstone of "reasonableness" reflects "rational and meaningful consideration" of §3553(a) factors. *United States v. Grier*, 475 F.3d 556, 571 (3rd Cir. 2007).

In *Tomko*, the court concluded:

> In order for the Guidelines regime to be truly advisory, a district court must be potentially able, when the proper situation arises, to sentence a defendant outside the Guidelines range but within the statutory range. Any other conclusion would alter the statutory sentencing scheme enacted by Congress and interpreted by *Booker*.

*Tomko*, 562 F.3d at 574-75.

Therefore, although the Guidelines remain a factor, district courts must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentences and the sentencing range established for: (A) the applicable category of offense committed by
>
> the applicable category of defendant as set forth in the guidelines;

(5) [ ... ];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*See* 18 US. C.§ 3553(a).

Ultimately, of course, the overarching goal of sentencing is to ensure that a sentence is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing under § 3553(a)(2).

A.

### A SENTENCE OF ONE YEAR AND ONE DAY IS APPROPRIATE DUE TO THE NATURE AND CIRCUMSTANCES OF THE OFFENSE OF THE DEFENDANT. (18 U.S.C. § 3553(a)(1)).

Amongst the most important sentencing factors for a court to consider are the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). As an initial matter, it is important to note that the defendant is not downplaying the seriousness of the offense of conviction in this case. Mr. Reid plead guilty to Count Two of the indictment charging him with conspiracy to possess and distribute crack-cocaine. Notably, however, Count One of the indictment was a racketeering offense, which Mr. Reid was not named in. Moreover, while the Government has alleged that Mr. Reid was affiliated with the BMB gang and sold drugs with their "blessing", the Government has never alleged that Mr. Reid was an official member of a gang. Moreover, Mr. Reid plead guilty to a lesser-included offense under Count Two of the indictment, which has no mandatory minimum sentence. The lack of a mandatory minimum sentence reflects the congressional judgment that there are circumstances where someone convicted of an offense should be given leniency.

The Government has maintained the position that Mr. Reid agreed with BMB leader, Nico Burrell, to engage in a shooting against members of the 2Fly gang in retaliation of an earlier shooting of Burrell's sister and fellow BMB member, Michelle Jemison. However, it is not clear upon what evidence this assertion is based. Mr. Reid vehemently denies this allegation. In fact, during prior bail arguments before the Court, the Government has conceded that there is no proof that Mr. Reid made any efforts to carry out a shooting, nor does the Government have any proof that Mr. Reid ever personally engaged in any acts of violence whatsoever. During a prior bail argument, the Government stated that the purported "agreement" with Nico Burrell occurred in or about the Fall of 2014, which was approximately 1.5 years before Mr. Reid was arrested. Surely, if Mr. Reid had any real intent to engage in a crime of violence, or ever entered into a legitimate agreement to engage in a crime of violence, then waiting 1.5 years to carry out that crime would be an extremely long delay. Moreover, if he had engaged in a crime of violence involving a shooting, it could be expected that Mr. Reid would have become an official member of the BMB gang for his efforts. He was not an official member of the gang, which only supports a finding that he never engaged in a crime of violence. The only reasonable conclusion that can be drawn from the fact that there is no proof Mr. Reid engaged in a crime of violence during that 1.5 year time period, and that he was never promoted to become an official member of the BMB gang, is that there never was an agreement to engage in a crime of violence.

**B.**

**A SENTENCE OF ONE YEAR AND ONE DAY IS APPROPRIATE DUE TO THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT. (18 U.S.C. § 3553(a)(l)).**

Congress has directed sentencing courts to consider "the history and characteristics" of the defendant when imposing sentence. 18 U.S.C. § 3553(a)(l). As a general matter, a defendant's family circumstances are justified for granting a below-Guidelines sentence. *See U.S. v. Johnson*, 964 F.2d 124, 128 (2d Cir. 1992). The depth and breadth of the love and support that Mr. Reid has with his family, including his mother, sister, and 10-year old niece, as demonstrated by the 13 attached reference letters, photographs, and Mr. Reid's own statements on his Facebook page (made prior to his arrest, and not for the purpose of sentencing), demonstrate that a below-Guidelines sentence is appropriate in this case.

In this case, as discussed under Section III, the "history and character of the defendant" was discussed. That section is incorporated herein by reference. However, to reiterate, a constant theme that is demonstrated by the information above is that Mr. Reid strayed from a law-abiding life to provide for his basic necessities, and the basic necessities of his family, including food, clothing, and shelter. He strayed into criminal conduct due to the love he had for his family, and a desire to provide what his mother was unable to provide while he was a child. However, it is this same love that will motivate him to lead a law-abiding life going forward into the future. Mr. Reid has now experienced what it is like to be incarcerated and removed from the closeness of his family.

It is notable that Mr. Reid has no criminal convictions, has a CHC I, and is now working towards obtaining his GED. All of this also demonstrates that he will rehabilitate and work towards becoming a productive member of society.

Mr. Reid's role in his family's lives and the impact on their lives if Mr. Reid is sentenced to a prison sentence, is relevant to his sentence in this case pursuant to USSG § 5H1.6. Although the policy statement of USSG § 5H1.6 generally discourages departures based on family ties, they are still a relevant area of inquiry and have been found to be persuasive for a departure in other cases. For instance, in *United States v. Owens*, 145 F .3d 923 (7th Cir. 1998), the Court found that a departure from 169 to 120 months under § 5H1.6 was justified for defendant who maintained good relationship with his children and court believed his active role raising and supporting his family was atypical for crack dealer. In *United States v. Crawford*, 2007 WL 2436746 (E.D. Wis. Aug. 22, 2007), the district court granted a variance from the Guidelines due to the defendant's family situation with five children and the impact incarceration would have on the children. In *Crawford*, the court sentenced the defendant to time served and placed her on four years' probation.

Based upon the guidance provided for in *United States v. Owens* and *United States v. Crawford*, the Court in this case is free to consider Mr. Reid's family ties and the impact that his incarceration will have on his mother, sister, and niece, as a basis for a variance. As discussed in Section III, above, Mr. Reid has demonstrated a significant loving bond with his family. Moreover, his sister, Tenisha Munroe, points out in her reference letter that "this ordeal has been very tough on our family especially my 10-year old daughter. Daquan has always been there for her as far as dropping her to school, picking her up, feeding her, and just playing the role of a dad when her dad didn't."

Aside from issuing a variance based on the impact of a prolonged sentence to his family, I assert that the demonstrated close bond to his family is a basis to find that Mr. Reid is worthy of leniency by the Court because he is likely to lead a law-abiding life in the future. Notably, his

close-knit ties to his family are not simply created and set forth in reference letters strictly for the purpose of sentencing. In fact, the close-knit tie to his family is demonstrated by Facebook postings that were placed online long before Mr. Reid was arrested in this case, which makes the assertions that his family is close and loving extremely credible.

Because Mr. Reid has a demonstrated close-knit and loving relationship to his family, all of whom want to ensure that he remains out of prison in the future, coupled with the fact that he had no criminal history prior to this incident, and that he is working towards his GED in an effort to one day become an Auto Mechanic, he should be given a second chance and the Court should issue a lenient sentence in this case.

### C.
### A SENTENCE OF ONE YEAR AND ONE DAY IS APPROPRIATE (18 U.S.C. § 3553(a)(2)).

In this case, the Court must also consider the need for the sentence imposed. 18 U.S.C. § 3553(a)(2). Based on the totality of the circumstances present in this case, coupled with an analysis of each of the pertinent factors set forth in 18 U.S.C. § 3553(a)(2), which are discussed below, the Court should consider that justice is served with a sentence of **1 year and 1 day incarceration.**

### (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

In this case, a sentence of 1 year and 1 day incarceration is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. As discussed above, Mr. Reid had admitted to possessing and distributing crack-cocaine as part of a conspiracy. However, he has no past criminal history, did not engage in any crimes of violence, was not charged with Racketeering (demonstrating less culpability than some of his co-defendants), and plead guilty to a lesser included offense that does not have a mandatory minimum sentence. The fact that he was offered a reduced plea, where many other co-defendants have been

proceeding on a path towards trial with much more significant offers from the Government, demonstrates that Mr. Reid's overall role is less than many of his other co-defendants. Therefore, it is appropriate to consider his role in the offense - which was reduced as compared to other defendants in the case - when considering an appropriate sentence.

Moreover, a sentence of 1 year and 1 day incarceration would be sufficient to provide just punishment for the offense, but yet provide him with an opportunity to correct his actions, obtain his GED, and begin working towards becoming a productive member of society as an auto-mechanic.

### (B) To afford adequate deterrence to criminal conduct.

In this case, a sentence of 1 year and 1 day incarceration would afford adequate deterrence to criminal conduct. This is demonstrated by the fact that this is Mr. Reid's first brush with a serious criminal charge. He has now experienced what it is like to be disconnected from the closeness of his family as he is locked in a jail cell. He is missing time with his family, skipping the holidays, and has not had the opportunity to regularly see his 10-year old niece. Certainly, some punishment is warranted in this case. However, for a 21-year old young man, the involvement in a serious case such as this one, the ability to observe the extensive penalties that some defendants are facing, and the fact that he is facing the very realistic risk of being incarcerated for a prolonged period of time and removed from his family has sent a very clear message to Mr. Reid: that criminal conduct will not be tolerated. The fear of long-term incarceration, and being removed from his family for a 1 year and 1 day sentence, I assert, is sufficient to provide an adequate deterrence to future criminal conduct.

### (C) To protect the public from further crimes of the defendant.

Mr. Reid has no criminal history. Based on the information contained above, it is urged that the Court find that a sentence of 1 year and 1 day incarceration adequate to protect the public from further crimes of the defendant.

### (D) To provide the defendant with needed educational or vocational training. medical care. or other correctional treatment in the most effective manner.

Mr. Reid is currently working on obtaining his GED. It is expected that he will obtain his GED within the proposed 1 year and 1 day jail sentence. He will soon be ready to start engaging in vocational training, or searching for a job, to start working as an Auto Mechanic.

## V.

## CONCLUSION

As set forth in the discussion above, we request that Mr. Reid be sentenced to 1 year and 1 day incarceration. In this case, such a sentence is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing under § 3553(a).

Additionally, for any sentence that is imposed upon Mr. Reid, we ask that he be incarcerated in a correctional facility that is close to New York City so that his family can visit with him regularly.

On behalf of Mr. Reid, I thank the Court for taking the time to consider our sentencing submission. We look forward to addressing the Court during the sentencing hearing.

Dated:  New York, NY
November 23, 2016

Yours, etc.,

_____
BRYAN KONOSKI (BK7563)
Treyvus & Konoski, P.C.
*Attorney(s) for the Defendant*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832