UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                          :
                                                                  :       S2 15 Cr. 95 (AJN)
              - v. -                                              :
                                                                  :
DAQUAN REID,                                                      :
                                                                  :
                          Defendant.                              :
                                                                  :
------------------------------------------------------------------X

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

 

                  PREET BHARARA
                  United States Attorney
                  Southern District of New York
                  One St. Andrew's Plaza
                  New York, New York 10007

RACHEL MAIMIN
MICAH W.J. SMITH
HAGAN SCOTTEN
JESSICA FEINSTEIN
DREW JOHNSON-SKINNER
Assistant United States Attorneys
    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA                                                :
                                                                        :      15 Cr. 95 (AJN)
                        - v. -                                          :
                                                                        :
DAQUAN REID,                                                            :
                                                                        :
                        Defendant.                                      :
                                                                        :
------------------------------------------------------------------------X
```

**PRELIMINARY STATEMENT**

The defendant in this case, Daquan Reid, is scheduled to be sentenced on November 29, 2016. The Government respectfully submits this memorandum in advance of that sentencing and in response to Reid's sentencing memorandum, which requests a sentence of a year and a day—a drastic downward variance from the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 87 to 108 months' imprisonment. For the reasons that follow, the Government disagrees and respectfully requests that the Court impose a sentence within the Guidelines range. Reid was a drug dealer. He sold crack cocaine with members of a violent street gang—the Big Money Bosses ("BMB" or the "Gang"). While there is no dispute that Reid was not a member of BMB, the sentence Reid requests would not come close to meeting the statutory sentencing factors, especially the need to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence to criminal conduct. A sentence within the Guidelines range is necessary to send the message that selling crack with a violent street gang will be met severely by the Courts.

**I.    Procedural History**

On April 27, 2016, the S2 Indictment in this case was unsealed, charging 63 members and associates of BMB with: (1) racketeering conspiracy, in violation of Title 18, United States Code Section 1962; (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution, in violation of Title 21, United States Code, Section 860; and/or (4) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

On July 15, 2016, Reid pled guilty to Count Two of the S1 Indictment in this case, which charged him with narcotics conspiracy. (PSR ¶ 8.)  As detailed below, under the terms of his plea agreement, Reid was permitted to plead guilty to a lesser included offense that does not carry a mandatory minimum sentence.

**II.    Offense Conduct**

**A.  Background**

Beginning in December 2014, the New York City Police Department, the Drug Enforcement Administration, Homeland Security Investigations, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation into two rival street gangs—BMB and the 2Fly YGz ("2Fly")—that were operating in the Bronx, New York.  The investigation revealed that since at least in or about 2007, up until in or about 2016, members of BMB and 2Fly were involved in a variety of racketeering acts, including murders, attempted murders, robberies, narcotics trafficking, bank fraud, and counterfeit currency offenses.

**B.  BMB**

The structure of BMB is described accurately in the PSR.

2

BMB was a subset of the "Young Bosses," or "YBz" street gang, which operates throughout the New York City area. BMB—whose members also sometimes refer to themselves as the "Money Making Mafia" or "Triple M"—operated primarily on White Plains Road from 215th Street to 233rd Street in the Bronx, which is a long stretch of road under a subway train overpass that is hedged on each side by single-family homes and local commercial establishments. BMB's narcotics trafficking activity was based principally in the vicinity of White Plains Road and 224th Street, an open-air drug spot that was referred to by gang members as the "Forts." BMB members sold drugs and down White Plains Road, however, including at a spot on 219th Street and a house on 230th Street. BMB members sold crack cocaine, marijuana, and prescription pills, including Percocet pills (i.e., oxycodone). BMB members kept firearms at each of these White Plains Road locations. BMB members also operated a drug spot on Boston Road and Eastchester Road in the Bronx, which they refer to as "B Road." BMB members who worked principally at the B Road spot typically refer to themselves as "Blamma." Generally speaking, BMB members were encouraged to continue openly "jacking," or proclaiming their membership in the gang, and many did so not only in person but also through social media websites such as Facebook.

In addition to its narcotics trafficking, BMB members and associates engaged in acts of violence, including shootings, stabbings, and gang assaults; these acts of violence protected the power of the gang, deterred attacks from rivals, and secured the gang's territories and drug spots. Moreover, members who engaged in a sufficient amount of violence could earn a leadership position, which was referred to as a "Big Suit." Members with "Big Suit" status were further subcategorized as, among other things, "Burberry Suits," "Louis Suits," "Gucci Suits," Ferragamo Suits," and "Sean John Suits," in order to signify their relative rank in the gang.

Among other things, a BMB member with "Big Suit" status had the authority to recruit other individuals into the gang.  Two of the highest-ranking "Big Suits" in BMB were NICO BURRELL, a/k/a "Zico Nico," and DOUGLAS MCLARTY, a/k/a "Q Don."  Both BURRELL and MCLARTY enhanced their status in the gang, in part, by committing attempted murders when they were each juveniles.

Members of BMB rose in status and rank within the gang not only by engaging in acts of violence, but also by maintaining their membership in the gang for a long period of time.  Members who were loyal associates for a substantial amount of time are referred to as "Day One Niggas," meaning that they have been associating with the gang since its earliest days.  For example, in a posting on Facebook on July 7, 2013, BMB member RASHEID BUTLER, a/k/a "Rah," wrote: "i love my Day1 Niggas that was here since this #TripleM Shit 1ST STARTED."  Similarly, BMB leader NICO BURRELL, a/k/a "Zico Nico," discusses the "Day One" concept in a rap video posted on YouTube in December 2015 and entitled "Live From Gutter."  In the video, BURRELL raps, "No new niggas, only day one / I know they ain't tellin' if that day come," after which another rapper repeats in the background, "no snitchin.'"

BMB has, more generally, developed a gang norm against "snitchin,'" or cooperating with law enforcement.  For example, a BMB associate posted on Facebook on July 20, 2011, "Like QuDOn Said 'No Snitchin Policy'"; the reference to "QuDOn" is a reference to MCLARTY, who is one of BMB's leaders and whose alias is "Q Don."  BMB's norm against "snitchin'" was fostered through YouTube videos and social media postings, including postings in which gang members are praised for their refusals to cooperate with law enforcement in particular instances.  The norm is also enforced through disparagement of and threats of violence against BMB members who are suspected of having violated the norm by cooperating.  During

4

the course of this investigation, law enforcement learned of at least one instance in which a BMB member's home was fired upon because he made a statement to law enforcement about individuals with whom he had committed a robbery. During another instance, the child of a suspected cooperator in this case was threatened and spat upon in the street. The norm against cooperation facilitates the gang's criminal enterprise and is one of the reasons why members of BMB tend to commit their robberies and fraud offenses with other members of BMB.

Many of the specific acts of violence committed by BMB members related to its longstanding rivalry with 2Fly, which is based principally in the nearby Eastchester Gardens public housing development ("Eastchester Gardens"), but which also has members who live in the "Valley" area just east of BMB's "B Road" spot on Boston Road and Eastchester Road. BMB also has developed rivalries with other street gangs in the northern Bronx, including the "Young Shooter Gang," or "YSGz," which is based in the Edenwald public housing development ("Edenwald"), and the "Slut Gang," which is based in the Boston-Secor public housing development ("Boston-Secor"). In connection with these rivalries, BMB members developed a practice of "mobbing," meaning to gather in large groups and travel to the base of operations of a rival gang to engage in violence there. Members of rival gangs also sometimes went "mobbing" and attack or attempt to attack BMB at its bases of operations. Videos of "mobbing" incidents were posted on YouTube. The close proximity of the BMB, 2Fly, YSGz, and Slut Gang bases of operations—all of which are in or on the border of the New York City Police Department's 47th Precinct—contributed to the frequency of acts of violence.

In addition to acts of violence, members and associates of BMB promoted their gang and disparaged rival gang members by highlighting a distinguishing feature of BMB: it is not based in a housing development, as are its principal rivals 2Fly (in the Eastchester Gardens), YSGz (in

5

Edenwald), and the Slut Gang (in Boston-Secor).  As noted above, BMB principally operated along White Plains Road, a long stretch of road hedged on each side by single-family homes and local commercial establishments.  The name of the gang ("Big Money Bosses") and the other allusions to wealth that the gang employs (for example, the brand-name clothing retailers used to identify leadership positions) all serve to underscore this difference.  In addition, members and associates of BMB have publicly mocked the living conditions of the housing developments in which many of their rivals live.  For example, in a Facebook post on July 10, 2014, BMB member DONQUE TYRELL, a/k/a "Polo Rell," posted a photograph of a young child laying on a bed and covered with cockroaches, with the caption "MEANWHILE IN EDENWALD."  In connection with the posting of this picture, TYRELL wrote, "Dirty ass project," followed by six smiley-face "emoticons."  Similarly, in a Facebook posting on May 28, 2014, BMB member MASHUD YODA, a/k/a "Papa Ola," writes, "No Lie ECG [*i.e.,* the Eastchester Gardens] The Dirtiest PROJECTS UPTOWN . . . . Like OBAMA Said CHANGE But I Guess He forgot Bout ECG !!"

      Consistent with this feature of BMB, members and associates of the gang engaged not only in narcotics distribution and robberies to enrich and distinguish its members from rivals, but also engaged in a variety of frauds, including bank fraud and counterfeit currency offenses.  To perpetrate some of these fraud offenses, BMB members and associates often employed their girlfriends and female acquaintances.

      **C.  Reid's Role**

      Reid was not a member of BMB.  Rather, he sold crack cocaine with members of BMB at a BMB drug spot, with BMB's protection and blessing.  Relative to his co-defendants who also sold crack with BMB, Reid was a mid-level dealer: he did not sell large wholesale quantities of

crack, but he was not a bit player either. Reid sold crack cocaine at a residence in the heart of BMB territory on 226th Street and White Plains Road in the Bronx. On the day of the takedown in this case, law enforcement recovered three firearms, over ten pounds of marijuana, a drug scale, and smaller marijuana packages at that location. While Reid was not present at the location on the day of the takedown, that was his home base for drug sales. Indeed, Reid was present for an earlier execution of a search warrant at the location, on January 26, 2015, when a large amount of crack and marijuana were recovered.

In addition to selling drugs, Reid also discussed plans for a shooting against 2Fly members with the leader of BMB, Nico Burrell, in retaliation for a prior shooting of Burrell's sister, Michelle Jemison. Reid agreed to participate in the shooting.

## II. The Defendant's Criminal History

Reid does not have any prior convictions. He has previously been arrested for possessing marijuana, but the arrest did not lead to a conviction.

## III. The PSR and Guidelines Calculation

In keeping with the plea agreement between the parties, the PSR calculates the defendant's total offense level as 29, which includes an enhancement for possession of a gun in connection with the offense. In Criminal History Category I, Reid's sentencing Guidelines range is 87 to 108 months' imprisonment.

## 3553(a) ARGUMENT

For the reasons that follow, a sentence within the Guidelines range is necessary to meet the statutory sentencing factors, in particular to provide just punishment and afford adequate deterrence to criminal conduct.

While Reid was not a member of BMB, he sold crack cocaine—a lethal and addictive poison that destroys communities and families. He did so with members of the violent street gang BMB, at a BMB drug spot, under the protection of BMB members. Reid has agreed that he is responsible for an extremely large amount of crack cocaine: between 280 and 840 grams—enough to incur a mandatory minimum sentence of 10 years' imprisonment without the benefit of his plea agreement—and that a firearm was possessed during the offense. Indeed, multiple firearms have been recovered from Reid's drug spot by law enforcement. Reid also conspired to commit a retaliatory shooting with the leader of BMB.[1]

Reid asks for a downward variance to a year and a day. Reid claims that he merits leniency because he does not have a significant criminal history, because he only sold drugs to make money for his family, and because his incarceration has had a significant effect on his family. However, there is no basis for a variance in this case, much less a variance of this length.

As a preliminary matter, Reid's lack of criminal history is already taken into account by his designation in Criminal History Category I. Further, the fact that Reid sold drugs to make money does not distinguish him from most other drug dealers. While Reid's family did not have significant resources, they were close knit, according to Reid, and he did not experience abuse or neglect. (PSR ¶ 52.) He could have taken a law-abiding path to make money, like the vast majority of people do, but chose not to. And while the effects of a defendant's incarceration can be tragic for family members, that is not the Court's responsibility. That is Reid's responsibility for the adult choices he has made in his life. In any event, this factor does not distinguish him from other defendants charged with similar crimes.

---

[1] Reid disputes participating in this conspiracy to commit an act of violence. While the Government stands by these facts, Reid's undisputed offense conduct provides ample basis for a Guidelines sentence in this case.

8

Even assuming that the factors Reid sets out merit some leniency, a Guidelines sentence would still be warranted in order to reflect the seriousness of the offense, provide just punishment, and provide adequate general deterrence to criminal conduct: to send the message that destroying communities through drug dealing is unacceptable and will be treated harshly. Moreover, Reid has already received a significant benefit by being permitted to plead guilty to an offense without a mandatory minimum. Indeed, as a gun was possessed in connection with the offense, Reid would not only have been subject to a 10 year minimum on the drug offense, but also a 5 year consecutive sentence for a gun. Accordingly, in light of the statutory sentencing factors—and even taking into account Reid's early guilty plea in this case, which demonstrated a significant acceptance of responsibility—a Guidelines sentence is warranted.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the range of 87 to 108 months.

Dated: New York, New York
November 28, 2016

>Respectfully submitted,
>
>PREET BHARARA,
>United States Attorney for the
>Southern District of New York,
>
>By: __/s/_____
>Rachel Maimin
>Micah W.J. Smith
>Hagan Scotten
>Jessica Feinstein
>Drew Johnson-Skinner
>Assistant United States Attorneys
>(212) 637-2460

9