UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
UNITED STATES OF AMERICA          :
                                  :    S2 15 Cr. 95 (AJN)
        - v -                     :
                                  :
BRADLEY WILSON,                   :
                                  :
              Defendant.          :
                                  :
-------------------------------------------------------------------X


---

SENTENCING MEMORANDUM ON BEHALF OF BRADLEY WILSON

---


JEAN D. BARRETT
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042

PRELIMINARY STATEMENT

I represent Bradley Wilson who is scheduled to be sentenced by the Court on December 16, 2016 at 12:30 pm. Bradley pled guilty before this Court on July 13, 2016 to conspiring with the Big Money Bosses (BMB) street gang to sell narcotics at a location controlled by the gang, in coordination with the gang. Bradley has been described as an "associate" of BMB, but not a member. *See* PSR at par. 20. He is not charged with any act of violence. As will be shown in detail below, Bradley is a kind, compassionate and creative person with great potential to be a productive member of society. Please accept this memorandum in support of a sentence below the guideline range as sufficient, but not greater than necessary, punishment for Bradley's crime and for Bradley as a person.

A.   Bradley's background and nature of the offense

Bradley Wilson is 24-year-old single young man with no children who was raised by his mother and father in the Bronx. Born in the Bronx, as a child, he was cared for by his grandmother while his parents worked. His father, who is now retired, worked as a union mason and his mother still works as an administrative assistant for New York City's Department of Homeless Services.

Bradley attended parochial grammar school, but then went to the local public middle and high schools. He began studies at Bronx Community College, but he was not up to the academic challenge and the expenses associated with attending college. As he grew older, he made various attempts at employment including poll worker, internship as a janitor in a

1

nursing home in Co-op City and a sales clerk at Macy's. He also volunteered at his church. Most recently, he experimented with designing and selling tee shirts. Unfortunately, all of these positions were temporary and he became a disconnected young man with no job and no future.[1] He began smoking marijuana when he was 18.

A significant turning point in Bradley's life occurred when he was 18. He was riding his bicycle in his neighborhood when a stranger shot him in his left arm for no reason. The bullet broke his arm, requiring surgery to remove the bullet and repair the break. No one was apprehended and Bradley experienced nightmares as a result. Later, he was treated for depression, but no medication was prescribed. We do not know the relationship between the traumatic injury Bradley experienced as a teenager and his marijuana smoking and later depression diagnosis, but the effects of traumatic stress on brain functioning and mood, leading to depression and drug use are well known. See https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3181836/ (last visited 12/9/2016).

B.   The Post-*Booker* sentencing paradigm.

Obviously, this Court is well versed in the role of the Guidelines post-*Booker*, but this memorandum will briefly summarize the process as a precursor. First the Guidelines are calculated, followed by rulings on any departure motions. *Rita v. United States*, 551 U.S. 338, 347-48 (2007); *Gall v. United States*, 552 U.S. 38, 49-50 (2007). However, the

---

[1]The Bronx is the borough with the largest percentage in New York City of disconnected youth, defined as not in school and not working. *See* Social Science Resource Council, "Measure of America; Youth Disconnection in New York City," (2015), available at http://ssrc-static.s3.amazonaws.com/moa/One_in_Seven_NYC-FINAL2.pdf (last visited 12/6/16.

Guidelines are not the only consideration. As the Supreme Court pointed out in *Gall*, the procedure established in *Rita* is the applicable one.

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.

*Gall* 552 U.S. at 49-50. [Citation and footnote omitted.]

The factors set forth in 18 U.S.C. §3553(a) are "the nature and circumstances of the offense and the history and characteristics of the defendant;" the general purposes of sentencing; the kinds of sentences available; the sentencing Guidelines; relevant policy statements by the Sentencing Commission; "the need to avoid unwarranted sentence disparities;" and, the need for restitution. There is no presumption of reasonableness to the Guideline range. Rather, the Guidelines and their policy statements are but two of seven factors that are appropriately considered by the district court. *Gall,* 552 U.S. at 50. *See also*, *Kimbrough v. United States*, 552 U.S. 85 (2007) (allowing judges to impose lower sentences based on the unfairness of the 100 to 1 crack cocaine ratio). As the Court first noted in *Koon v. United States*, and repeated in *Gall*,

> every convicted person is an individual and every case [is] a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

518 U.S. 81, 98 (1996), *quoted at Gall,* 552 U.S. at 52.

The final sentence, whether inside or outside the Guideline range is within the sound

3

discretion of the district court. *Id*. at 41. A district court's judgment that a particular sentence is "*sufficient, but not greater than necessary*" is entitled to great weight, even if the district court's judgment is based on its disagreement with the policies behind the applicable guideline. *Kimbrough,* 552 U.S. at 101. [Emphasis added.]

Lest there be any doubt that the Guidelines are a small part of the sentencing analysis to be conducted by district courts and that district courts have broad discretion to individualize sentencing, the Supreme Court reinforced these principles when it granted petitions and immediately reversed and remanded in two 2009 cases. In *Spears v. United States*, the Eighth Circuit had reversed a district court which had categorically rejected the 100:1 crack-to-powder ratio, substituting its own ratio in calculating Spears' sentence. 555 U.S. 261, 129 S.Ct. 840, 842 (2009). The Supreme Court held that the Eighth Circuit's conclusion that the district court erred "conflicts with our decision in *Kimbrough*." *Id.* In holding that "a categorical disagreement with and variance from the Guidelines is not suspect," the Court reaffirmed its holding in *Kimbrough* that the district court has the authority to vary from the crack Guidelines based on a policy disagreement with them, "not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Id*. at 843.

Five days later, the Court took the same route in summarily reversing the Fourth Circuit which had persisted in upholding a district court's application of a presumption of reasonableness to the Guidelines. *Nelson v. United States*, 129 S.Ct. 890 (2009). The Court

4

declared that

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

*Id*. at 892. [Emphasis in original.] Thus, the Guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

    C.    <u>Guideline calculation and presentence report</u>

In our comments to the draft PSR, we objected to paragraphs 23 and 27. Paragraph 23 alleges that Bradley "was arrested after he sold marijuana to an undercover police officer" on October 2, 2013. No documentation has been provided to support such an arrest and no such arrest appears on his criminal history report. Bradley recalls that around that time he was the victim of mistaken identity and once the matter was cleared up, he was released. He believes that another individual was charged with the offense.

Paragraph 27 alleges that on February 18, 2016, Bradley was found to possess marijuana and a kitchen knife during a traffic stop. Once agin no documents have been provided and there is no mention of this in his criminal history. Bradley recalls the February 2016 traffic stop. He was in the back seat of a car with three others when they were pulled over. When asked if he was carrying a weapon, he produced a pocket knife which the officer held while they verified the identifications of the four individuals and checked for warrants, after which the knife was returned it to him. Furthermore, Bradley did not have any marijuana and all four individuals, including Bradley were told they were free to go.

Bradley entered into a plea agreement with the Government, stipulating that the conspiracy distributed between 280 and 840 grams of crack. We do not dispute that fact. Assuming that the Court concurs in the Probation Department's determination, the offense level is 27. With a criminal history level of I, the Guideline sentencing range would be 70 to 87 months. We have no quarrel with the Guideline calculation.

  D.  <u>Bradley Wilson's case warrants a variance from the guideline sentence pursuant to 3553(a) factors</u>.

The Probation Department recommends a variance to 35 months. We believe that a variance is well-supported by the circumstances of the offense and by Bradley's characteristics, however, we believe those facts support a greater variance to 18 months.

In addressing the circumstances of the offense, we note that, although Bradley was charged with associating with members of a violent street gang, he was neither himself a member, nor has he ever participated in violence. He associated with members of the BMB, selling crack within their territory and engaging in narcotics-related calls with members and other associates of the gang.

Furthermore, there is the 28 to 1 crack versus cocaine disparity still lingering in the Guidelines, but the disparity exists with heroin as well. Were Bradley to have pled guilty to a heroin conspiracy, he would have had to have been responsible for between one and 3 *kilos* of heroin to warrant a base offense level of 30. For a cocaine conspiracy, the weight is even greater at 5 to 15 *kilos* for a base offense level of 30. What this means is that someone like Bradley who engaged in hand-to-hand transactions on a Bronx street corner has the same

guideline level as a major trafficker of heroin or cocaine. On the other hand, for 280 grams of cocaine, the base offense level would be 18 and the total offense level would be 15.

This Court is, of course, familiar with the evidence that this disparity results in disproportionately severe sentences for young men of color. Indeed, it is this disparity that the Supreme Court recognized in *Kimbrough, supra* and *Sears, supra*, permitting district courts to vary from the Guidelines because of a disagreement with the disparity. The fact that it has been reduced from 100-1 to 28-1 does not mean that the unfair disparity has disappeared and this Court is well within its authority to impose a lower sentence as a result.

As to Bradley's characteristics, he is a 24-year-old young man with no previous criminal history.[2] He has a high school diploma and some college. He accepted responsibility immediately and has spent his time in MCC productively. He participated in multiple rehabilitative programs, including Entrepreneurship, Bookkeeping, Customer Service, Developing Creativity, Anti-Drug Abuse, Ten Soft Skills You Need [Exhibit A] and a Re-Entry Program run by Antonio Hendrickson whose organization, Lead by Example and Reverse the Trend (LBE & RTT)[3] involves ex-offenders in counseling at-risk young people. As Mr. Hendrickson says in his letter, Bradley completed an eight week course with LBE & RTT. He adds:

> We are willing to receive him into our
> organization as a credible messenger to help with

---

[2] Bradley has pending matters which fall within the time of the conspiracy.

[3] The first two pages of his website appear at Exhibit B, pp. 2-3.

7

> the violence prevention and social emotional learning part of our program. Through redirection and empowerment, enhancing communication and social skills, our mentors/messengers help young people become positive, assertive adults who have a strong sense of self-awareness and their true potential.
>
> * * *
>
> LBE & RTT Inc., believes that Mr. Wilson will be very instrumental with the progress of the program and willingly assist where he's needed. It would be an absolute pleasure to work with him as a volunteer with our team.

Exhibit B, p. 1.

In addition, to his persistent efforts at self-improvement during his incarceration, Bradley has the strong community ties which will serve him well upon his release. He and his family have been attached to St. Luke's Episcopal Church, where he has volunteered, in the Bronx since he was baptized as a baby. *See* Exhibit B, p. 4. He has resided in the same community all of his life. He has the support of his loving parents and extended family.

Bradley's father, Linton Wilson, expresses his confidence that "Bradley will use his talents and abilities to focus on positively improving his present situation and to stay out of trouble." Exhibit B, p. 5. His mother talks about "Bradley's aspiration (sic) are to complete his college education and enter a work program where he can make the best of his abilities and aspirations with the love and encouragement from his family." Exhibit B, p. 6. His older brother, David Palmer, believes Bradley has "great potential at being a productive member of society and if given an opportunity will be a lot wiser at making the correct decisions in

life." Exhibit B p.7.  The probation officer emphasized the strength of the parent-son relationship in recommending a variance.  PSR at 28.

His extended maternal family, likewise, love and support Bradley.  His aunt Brenda Palmer talks about his creativity, intelligence, kindness and compassion.  She believes he can be "positively productive and of service in his academic field of interest and his community." Exhibit B, p. 8.  His uncle Kenneth is "certain his current situation will have a profound impact on him, and keep him out of trouble in the future."  Exhibit B, p. 9.  Another uncle, Carlton Palmer, Sr., a veteran and a retired police office, describes him as "very respectful and kind to others."  Exhibit B, pp. 10-11.

One of the primary purposes of sentencing is rehabilitation and it appears that Bradley is well on his way.  His efforts at self-improvement combined with the support of his parents, his extended family, his community and Mr. Hendrickson are strongly in his favor.  His goals are reasonable and achievable.

F. <u>Conclusion</u>

Bradley Wilson was in his early 20s when he participated in this offense.  His youth, his post-offense rehabilitation and his family and community support all point in the direction of a lower-than-guideline sentence. Bradley's character bodes well for a positive re-entry into the community when he returns to his loving family and supporters.  Based on the foregoing, it is submitted that a sufficient but not greater than necessary sentence would be no more than 18 months imprisonment.

Respectfully submitted,

*Jean D Barrett*
JEAN D. BARRETT
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042
(973)744-1000
(973)746-1490 (fax)
jeanbarrett@ruhnkeandbarrett.com

10