GCG3WILS                      Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                          15 CR 95 (AJN)

BRADLEY WILSON,

              Defendant.

------------------------------x

                                         New York, N.Y.
                                         December 16, 2016
                                         12:45 p.m.


Before:

                    HON. ALISON J. NATHAN,

                                         District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JESSICA FEINSTEIN
     Assistant United States Attorney

RUHNKE & BARRETT
     Attorneys for Defendant
JEAN D. BARRETT

1        THE DEPUTY CLERK:  U.S. v. Bradley Wilson.  Parties,

2   please state your name for the record, starting with the

3   government.

4        MS. FEINSTEIN:  Good afternoon, your Honor.  Jessica

5   Feinstein for the government.

6        THE COURT:  Good afternoon.

7        MS. BARRETT:  Good afternoon, your Honor.  Jean

8   Barrett on behalf of Bradley Wilson, and I ask you please

9   excuse my voice.  It's getting better.

10        THE COURT:  Understood.  Good afternoon, Ms. Barrett;

11   good afternoon, Mr. Wilson.

12        THE DEFENDANT:  Good afternoon.

13        THE COURT:  We're here today for sentencing in United

14   States v. Bradley Wilson, 15 CR 95.

15        In preparation for today's proceeding I have reviewed

16   the probation report, which is dated October 4, 2016.  I've

17   also received and reviewed the following additional

18   submissions:  I have the defendant's submission, which the ECF

19   filing date is December 9, 2016.  Attached to the memorandum

20   are a number of certificates of participation and completion in

21   various study programs that Mr. Wilson has taken part in while

22   incarcerated, certificates of achievement as well.  And then

23   there are letters from a number of family members of Mr. Wilson

24   as well as a reverend and the founder of an organization called

25   Lead by Example, a program that Mr. Wilson has participated in

GCG3WILS                          Sentence

1    while at the MCC, and he's been invited to continue with

2    following his incarceration.  So that's what I have from the

3    defense.  And then I have the government's submission which is

4    dated December 14, 2016.

5              Counsel, is there anything else I should have in front

6    of me for purposes of sentencing?

7              MS. BARRETT:  Yes, your Honor.  On the 14th I believe

8    I filed or the morning of the 15th I filed a letter on behalf

9    of Mr.  -- that Mr. Wilson wrote.

10             THE COURT:  Yes.

11             MS. BARRETT:  So it is a three-page letter.

12             THE COURT:  I do see that now and I had missed it, so

13   I'm actually going to take a moment to read it.  Since it is a

14   little bit long, I'll step down and do that.

15             MS. BARRETT:  Thank you, your Honor.

16             THE COURT:  And I'll return shortly.

17             (Recess)

18             THE COURT:  Thank you, counsel.  I did receive the

19   December 14 letter from counsel which attached the -- it's

20   dated December 16th, that must be a mistake.  But in any event,

21   I have the letter from Mr. Wilson that was submitted by counsel

22   with a cover letter dated December 14, 2016, and I have read

23   that letter now.

24             Counsel, is there anything else I should have in front

25   of me for purposes of sentencing?

1          MS. BARRETT:  Not from the defense, your Honor.

2          MS. FEINSTEIN:  No, your Honor.

3          THE COURT:  Can you please confirm you've received

4    each other's submissions?

5          MS. FEINSTEIN:  I have, except for the letter that was

6    written by the defendant but --

7          THE COURT:  It was ECF filed, it's docket number 873.

8          MS. FEINSTEIN:  That's fine, your Honor.

9          THE COURT:  Thank you.  All right.  Let's turn to the

10   presentence report.  Let me begin with Ms. Barrett.  I know you

11   have, but for the record, have you reviewed the presentence

12   report and discussed it with your client?

13         MS. BARRETT:  I have, your Honor.

14         THE COURT:  Mr. Wilson, did you have an opportunity to

15   read the presentence report?

16         THE DEFENDANT:  Yes, I have.

17         THE COURT:  You had an opportunity to raise with your

18   lawyer any errors in the report or anything else that should be

19   taken up with me regarding the report?

20         THE DEFENDANT:  Yes, I have.

21         THE COURT:  Thank you.  And Ms. Feinstein, can you

22   confirm that you read the presentence report as well?

23         MS. FEINSTEIN:  I have.

24         THE COURT:  So we'll put aside for the moment the

25   calculation of the sentencing guidelines.  Are there any

GCG3WILS                        Sentence

1    continuing objections to the report regarding factual accuracy,

2    Ms. Barrett?

3           MS. BARRETT:  Yes, your Honor.  With regard to

4    paragraphs 23 and 27, I raised this in my memorandum, I also

5    raised it with probation, and probation has put a footnote as

6    to those two paragraphs.  And I would ask that those paragraphs

7    be removed because there is no -- there has been no factual

8    submission in support of it.

9           THE COURT:  So taking paragraph 23, it I says on

10   October 2, 2013, at White Plains Road and 232nd Street, Wilson

11   was arrested after he sold marijuana to an undercover police

12   officer.  And then the footnote notes that defense counsel

13   maintains that this was a case of mistaken identity and should

14   be removed from the report.

15          Ms. Feinstein.

16          MS. FEINSTEIN:  Your Honor, let's take paragraph 23.

17   That paragraph is based upon a sealed arrest record which was

18   produced to the defense as part of discovery.  I have a copy

19   here.  I don't think it doesn't say he was convicted of it.  It

20   doesn't -- it simply says he was arrested.  Perhaps the wording

21   could be changed to "on the basis of sale to marijuana" instead

22   of saying "after he sold" since it is just an arrest record.

23   Maybe that will take care of the parties' dispute about the

24   facts.

25          MS. BARRETT:  Your Honor, first of all, we did not

GCG3WILS                    Sentence

                                                                    1   receive or review discovery because the plea was entered into

                                                                    2   in this case prior to that.  I would think that if there were

                                                                    3   any documented information, that it should have been supplied

                                                                    4   to the Court and counsel as part of the government's

                                                                    5   submission.  And I would again maintain that this should not

                                                                    6   be, because it is not part of his official criminal history in

                                                                    7   any way whatsoever.  It could be on an index card in whatever

                                                                    8   precinct some police officer had an encounter with him.  We

                                                                    9   don't know.  It's not on his criminal history, and there is no

                                                                   10   documentation that he was ever convicted of anything or even

                                                                   11   processed.

                                                                   12            THE COURT:  Well, so Ms. Feinstein, is it right that

                                                                   13   defense didn't -- you have an arrest record in front of you?

                                                                   14            MS. FEINSTEIN:  I do, your Honor, and I'm happy to

                                                                   15   provide it.  I only have one copy.  I can give it to defense

                                                                   16   counsel and to your Honor.  I will also say this is a pretty

                                                                   17   minor point here, I'm not sure --

                                                                   18            THE COURT:  I agree it is a minor point.  It is not

                                                                   19   going to affect my sentencing.  Given that the documentation

                                                                   20   that you have is not produced in discovery, or as part of the

                                                                   21   written sentencing submissions, my inclination is to strike it

                                                                   22   from the report.

                                                                   23            MS. FEINSTEIN:  Understood, your Honor.

                                                                   24            THE COURT:  Paragraph 23 will be struck.

                                                                   25            Turning to 27 which reads:  On February 18, 2016,

GCG3WILS                    Sentence

1   officers found him, referencing Mr. Wilson, in possession of

2   marijuana and a kitchen knife during a traffic stop.  And then

3   the footnote responded to defense counsel's objection that the

4   knife was in fact a small pocketknife and was returned to

5   Mr. Wilson because the police considered it a tool, not a

6   weapon.  And defense counsel also argues that no marijuana was

7   found.

8            Ms. Feinstein.

9            MS. FEINSTEIN:  We consent to striking that from the

10  PSR.

11           THE COURT:  Thank you.  Paragraph 27 will also be

12  struck.  Anything else, Ms. Barrett?

13           MS. BARRETT:  That's it, your Honor.

14           THE COURT:  Thank you.  And Ms. Feinstein, any

15  objections from the government regarding factual accuracy?

16           MS. FEINSTEIN:  No, your Honor.

17           THE COURT:  With the two noted paragraphs, 23 and 27,

18  struck, I otherwise adopt the factual recitations set forth in

19  the PSR.  The report will be made a part of the record in this

20  matter and placed under seal.  If an appeal is taken, counsel

21  on appeal may have access to the sealed report without further

22  application to this Court.

23           Turning to the guideline calculation, as counsel is

24  aware, I am no longer required to follow the United States

25  sentencing guidelines, but I am still required to consider the

GCG3WILS                          Sentence

1    applicable guidelines in imposing sentence, and must therefore

2    accurately calculate the sentencing guideline range.

3              In this case, there was a plea agreement to which the

4    parties stipulated to a particular calculation of the

5    sentencing guidelines.  Counsel, am I correct that the

6    calculation in the PSR is in accord with that agreement?

7              MS. BARRETT:  It is, your Honor.

8              MS. FEINSTEIN:  Yes, your Honor.

9              THE COURT:  And I presume no objections?

10             MS. BARRETT:  That's correct, your Honor.

11             MS. FEINSTEIN:  Correct.

12             THE COURT:  Based on the parties' agreement and the

13   absence of objection and my independent evaluation of the

14   sentencing guidelines, I do accept the guideline calculation in

15   the PSR.  Accordingly, using the August 1st, 2016 guideline

16   manual, I do find that the offense level is 27, criminal

17   history category is I, and the guideline range is 70 to 87

18   months' imprisonment.

19             Your plea agreement also indicated I believe that

20   counsel would not seek either an upward or downward departure

21   within the guideline system, though of course you've reserved

22   the right to make arguments for a variance, but am I correct

23   that neither side is seeking an upward or downward departure

24   within the system?

25             MS. BARRETT:  That's correct, your Honor.

GCG3WILS                          Sentence

1    MS. FEINSTEIN:  That's correct.

2    THE COURT:  Nevertheless I've considered whether there

3    is an appropriate basis for departure from the advisory range

4    within the guidelines system, and did not find any grounds

5    warranting departure under the guidelines.  Though, as I've

6    indicated, the parties are free to, and I will hear arguments

7    regarding a variance.

8    Ms. Feinstein, does the government wish to be heard

9    with respect to sentencing?

10    MS. FEINSTEIN:  Your Honor, we did submit a written

11    sentencing submission and I will rest on that.

12    THE COURT:  All right.  Ms. Barrett.

13    MS. BARRETT:  Yes, your Honor.  Briefly, because we

14    submitted a pretty comprehensive sentencing submission with

15    documents with regard to --

16    THE COURT:  Ms. Barrett, because your voice is weak

17    like mine with the cold, if you pull up even closer.

18    MS. BARRETT:  How's that?  Is that okay?

19    THE COURT:  That's better.  Thank you.

20    MS. BARRETT:  Okay.  So, your Honor, and as your Honor

21    probably knows from our submission, we're asking for a

22    significant variance, and I understand that it is a significant

23    variance.  And there are two reasons for that variance.  One of

24    them the government acknowledges, and that is that there's been

25    substantial post-arrest rehabilitation in this case.  And the

1    Supreme Court has ruled in the past that post-arrest

2    rehabilitation is a significant consideration in terms of

3    sentencing and can form the basis of variances and

4    consideration under 3553(a).  It fits right into the idea of

5    character and the character of the accused.

6           The second reason is, and I'm not asking for a

7    departure based on this, but I'm asking for the Court's

8    consideration of the fact that there is a dramatic -- still

9    dramatic disparity in terms of the kinds of sentences that are

10   imposed on individuals who are charged with distribution of

11   crack as opposed to regular cocaine powder cocaine.

12          And what I pointed out, and I just wanted to emphasize

13   to the Court again, is that had Mr. Wilson pled guilty to

14   280 grams of cocaine, an 18-month sentence would be within the

15   guidelines.  And the fact of the matter is that it has been

16   well established that the  disproportionality of these

17   guidelines has a serious impact on young men of the

18   African-American community, and as Mr. Wilson obviously is.

19   And I would urge the Court to consider that in terms of

20   fashioning a sentence that is fair and just and proportionate,

21   and proportionality is one of the important considerations

22   besides the character of the defendant and the nature of the

23   offense.  Proportionality in sentencing is an important

24   consideration, and is a consideration under the 3553(a)

25   factors.

GCG3WILS                        Sentence

1            And I would submit that a young man who has committed

2       no acts of violence, who has been engaged in hand-to-hand

3       conduct on the street corner in the Bronx in selling crack, it

4       should not be punished more severely or punished as though he

5       were a multinational drug importer.  I mean, when we talk about

6       the guideline level of level 30, with the three points of

7       acceptance of 27, an individual who is responsible for five to

8       15 kilos of cocaine fits there.  Not somebody who is selling

9       hand-to-hand cocaine on the street, or even at whatever parties

10      people are in attendance at where cocaine is distributed.

11           I would submit this is a fair and just sentence that

12      we seek of 18 months, and that it will also enable him to begin

13      his rehabilitation out on the street.  To work with

14      Mr. Hendrickson on the project, to participate in his

15      community.

16           And I also wanted to point out, too, the probation

17      office has emphasized this, the support that he has of his

18      family.  His mom, his dad, and his brother are here today.  Are

19      here today to support him, and they will continue to support

20      him and to assist him in process of rehabilitation.  I only ask

21      the Court to let that process begin sooner rather than later.

22      Thank you.

23           THE COURT:  A few questions, Ms. Barrett.

24           MS. BARRETT:  Certainly.

25           THE COURT:  The letter from Mr. Hendrickson that

1   speaks positively of Mr. Wilson and invites him to participate,

2   can you give me a sense of what that might look like.

3           MS. BARRETT:  The program is a program where offenders

4   counsel young people in the community and try to set them on a

5   path, a favorable path.  I took some pages out of the website.

6           THE COURT:  I assume they had been attached to the

7   letter.

8           MS. BARRETT:  No, it wasn't a -- it was attached to my

9   letter, your Honor.  And the pages in the website refer to

10  their mission as being the organization was created to help

11  prepare young people in disadvantaged communities for adulthood

12  through redirection and empowerment, enhancing communications

13  and social skills.  Our mentors, which Mr. Wilson would be one

14  of them, help young people become positive, assertive adults

15  who have a strong sense of self-awareness.  Many of our mentors

16  have lived the life, they're real people with histories and

17  personal experience of real issues facing young people in

18  disadvantaged communities today.  Our mentors are not academics

19  coming in to troubled communities to tell young people that

20  their behavior, whether it be truancy, violence, drugs and

21  crime, will land them in trouble.  Many of our mentors did skip

22  school, did join gangs, and did commit crimes.  All have paid

23  their dues and don't want others to make the same mistakes.

24  Our mentors are talking from experience and there is nothing

25  more powerful than that.  More importantly, our mentors want to

1     give back.

2                And that's basically --

3                THE COURT:  But can you give me a -- so my question

4     is, so Mr. Wilson would presumably serve as a mentor.  What

5     does that mean?  Is that sort of weekly involvement, monthly

6     involvement, does it happen once or twice, does it last for

7     years?  What would it look like?

8                MS. BARRETT:  Maybe Mr. Wilson can describe it for

9     your Honor.

10                THE COURT:  Go ahead, Mr. Wilson.

11                THE DEFENDANT:  The program will serve me, like,

12     monthly basis as I get to know and be more familiar, talk to

13     individuals.  Probably it will go on for as like a yearly

14     thing, depending on how good I could present myself to the

15     people.

16                THE COURT:  So, you imagine participating maybe once a

17     month?

18                THE DEFENDANT:  Yeah, probably more frequently, as

19     much as they need me to be.

20                THE COURT:  So could be once a week or something like

21     that?

22                THE DEFENDANT:  Right.

23                THE COURT:  It would last at least a year?

24                THE DEFENDANT:  Correct.

25                THE COURT:  Assuming you do a good job?

GCG3WILS                          Sentence

1        THE DEFENDANT:  Right.

2        THE COURT:  Thank you, Mr. Wilson.

3        THE DEFENDANT:  You're welcome.

4        MS. BARRETT:  Your Honor, we would consent to making

5   that a condition of supervised release.

6        THE COURT:  You anticipated my next question.  So, in

7   the terms of that would include weekly, Mr. Wilson will

8   participate on a weekly basis with this program and will

9   continue that for some period of time?  Is that what it would

10  look like?

11       MS. BARRETT:  Based on probation's consultation with

12  Mr. Hendrickson, I would think could be added to that.

13       THE COURT:  Okay.  I am trying to think creatively.

14  The number of defendants in this case means that we have a lot

15  of folks who were members of each other's community were

16  arrested at the same time, some of whom, depending on the

17  length of the prison sentence, will all return at the same

18  time.  And I'm hopeful that there are ways of thinking about

19  interventions to the same patterns just not repeating.

20  Obviously probation supervision will be important to that, but

21  I think programs like this may provide some additional

22  assistance to get folks like Mr. Wilson out of the gang

23  community, at least try to redirect some of those ties into

24  non-violent, non-illegal efforts, and this struck me as a

25  positive one in that regard.

GCG3WILS                          Sentence

1          So that's one question, no objection, and on consent

2     to a condition of supervised release that would require, with

3     consultation of probation, regular and continued involvement in

4     this program.

5          MS. BARRETT:  Yes, your Honor.

6          THE COURT:  The other thing I wanted to ask

7     Ms. Barrett, obviously Mr. Wilson has no criminal history score

8     and no prior convictions.  Could you address, there are I think

9     two pending charges and arrests.  Could you address those?

10         MS. BARRETT:  Yes.  I believe that the pending charge

11    in the city is being dismissed by the district attorney, or has

12    already been.  And in addition to that, it's our understanding

13    that the Westchester County case will be resolved.  I've been

14    in touch with the lawyer in Westchester County, and she has

15    told me that it will be resolved following the Court's

16    imposition of sentence.  And we anticipate that that will be a

17    concurrent state time within the parameters of what the Court

18    sets here.

19         THE COURT:  He does have one prior conviction for

20    disorderly conduct.

21         MS. BARRETT:  Yes, your Honor.

22         THE COURT:  That arose out of a drug arrest.

23         MS. BARRETT:  Yes, your Honor, and that is within the

24    confines of this conspiracy.

25         THE COURT:  Okay.  Otherwise there is no criminal

GCG3WILS                          Sentence

1   history.

2              MS. BARRETT:  That's correct, your Honor.

3              THE COURT:  That is a positive sign and not typical.

4   Then I think the other point to address, Ms. Barrett, if you

5   would, it's true that this is hand-to-hand drug selling, but it

6   is regular and over time, and of course it aided this gang

7   which is a violent gang.  And Mr. Wilson is not a member, but

8   associated by virtue of his crack sales.  And I do think that

9   increases the level of seriousness of the crime in a way that

10  requires me to think about, as an appropriate purpose of

11  punishment, reflecting that seriousness as well as deterrence

12  and protecting the public.

13             As you know, these neighborhoods were ravaged by the

14  gang violence and drug sales of this and rival gangs and I have

15  to make sure that is accurately reflected in all of the

16  punishments that I impose here.

17             Could you address that.

18             MS. BARRETT:  Yes, your Honor.  I would emphasize with

19  the Court the need for individual consideration of the people

20  involved in this.  Mr. Wilson was a young man who was obviously

21  pretty naive about what he was getting involved in, in my

22  opinion.  And I think that under the circumstances of this

23  case, certainly drug distribution is a plague of the

24  communities, of impoverished communities in New York City.

25  There is no doubt about it.  But it's not exclusive to his

1    neighborhood.  It is pretty pervasive throughout the city.

2          And in terms of deterrence, I don't think that an

3    individual such as Mr. Wilson's punishment is going to act as a

4    deterrent, have a deterrent effect on what is going on in the

5    city.  I think more important to that is the idea of

6    rehabilitation.  And the idea that there is something called

7    redemption for individuals, even serious drug offenses.

8          And in terms of the scale of things here, I know that

9    the government and probation describes Mr. Wilson as midlevel.

10   I don't really understand what that is.  It's kind of like the

11   whole naming names of something that have little or no meaning

12   or context.  Here, we're talking about -- if you're talking

13   about a drug community, we're talking putting him on the lowest

14   rung of the ladder.  There is nobody lower than the person who

15   is selling hand-to-hand on the corner.  He is on the bottom of

16   this pile.

17         And with regard to his rehabilitative efforts, I think

18   it is more important to encourage those than it is to set an

19   artificial example of him.  I'm not saying that there aren't

20   people who should have examples set.  I represent a lot of

21   people like that.  And there are many people in this indictment

22   who have been engaged in violent criminal activity.  He has

23   not.

24         He got picked up, scooped up in a much larger

25   investigation.  And that investigation, while he as a matter of

GCG3WILS                      Sentence

1    course, if you're going to sell drugs in the territory of a

2    gang, you are going to have to get your drugs from the gang.

3    You're not going to be able to get your drugs from Joe Schmo

4    and go out and sell it in their territory.

5           So obviously drug distribution is a serious offense,

6    that's why we're here in federal court, that's why he's facing

7    serious time.  But it doesn't mean that that has to be imposed.

8    And it doesn't mean that his rehabilitative efforts should not

9    be encouraged by letting him return to his community within a

10   reasonable period of time.

11          THE COURT:  Thank you, Ms. Barrett.

12          Ms. Feinstein, can you address the terminological

13   significance point that Ms. Barrett is making about midlevel

14   drug dealer?  What would be a lower-level drug dealer in this

15   case or otherwise?

16          MS. FEINSTEIN:  Absolutely, your Honor.  Here I think

17   midlevel is not a technical term, Judge.  It is in comparison

18   with other individuals in this case.  He wasn't selling

19   wholesale drugs to other drug dealers, so he is not a

20   high-level drug dealer, we'll put it that way.  He also was not

21   someone who on one or two occasions sold a few bags of crack.

22   This is someone who was arrested, you know, you can see on

23   paragraph 26 of the PSR and paragraph 25 of the PSR and

24   paragraph 22, with significant quantities of crack on him.  22

25   bags of crack on one occasion, 11 on another, 29 on another.

1    That's not like four or five, that's not just a few here or

2    there.  This is someone who is regularly out there selling, and

3    those amounts, even if you're just a hand-to-hand dealer, which

4    I don't think we dispute, they add up.  Those are significant

5    quantities.

6           This is someone who is, you know, his livelihood was

7    selling crack, and he was doing it under the protection of a

8    gang, a violent gang, and benefiting the gang by doing so.  So,

9    that's why we think the term "midlevel" applies.

10          THE COURT:  So, are there lower-level drug dealers in

11   this case?

12          MS. FEINSTEIN:  I believe there are, your Honor.

13          THE COURT:  So --

14          MS. FEINSTEIN:  Including, for example, marijuana

15   dealers.  I think it's hard to dispute that crack is a more

16   serious drug.

17          THE COURT:  So he is midlevel as compared to folks who

18   sold either different types or quantity of drugs, at least as

19   you have evidence to establish.

20          MS. FEINSTEIN:  Yes.  And your Honor, there are

21   obviously lots of mitigating factors here and we recognize

22   those.  We merely wanted to give the Court some context for

23   where he fits in the scheme of things.

24          THE COURT:  I appreciate that.  Every sentencing, of

25   course, is individualized, but I'm also required to ensure that

1    there are not sentencing disparities, and I do think it's

2    important when I have 63 defendants in a case, some significant

3    number of whom are pleading guilty and I'm in the process of

4    sentencing to understand relative culpability as a factor in

5    the 3553(a) context.  Though not solely, and the government I

6    think rightly concedes here that Mr. Wilson is -- I don't know

7    if you'll prove to be unusual, but I'm heartened by some of the

8    rehabilitation that I see in you, Mr. Wilson, as well as the

9    support of your family who are here and wrote to me.  It gives

10   me hope.  And your lack of criminal history.  These are

11   important factors as I try to determine what a reasonable

12   sentence for you is.

13            Counsel, anything else from you?

14            MS. BARRETT:  Your Honor, just in terms of just to

15   clarify what you're talking about in terms of bags.  A bag for

16   sale of crack is a 10th of a gram.  You know, it's not like --

17   so if you're taking 22 bags of crack, you're talking about

18   2 grams.  So, it's still a relatively small amount for somebody

19   to be walking around with on the street.  And I have nothing

20   further to add to that discussion other than to say that --

21            THE COURT:  The overall quantity here as allocuted to,

22   there's no dispute, right?

23            MS. BARRETT:  Correct, your Honor.  And that's

24   obviously over a lengthy period of time during the course of

25   the conspiracy when he joined the conspiracy.

1            THE COURT:  Right.

2            MS. BARRETT:  Which is obviously later than a lot of

3    others.  So, you know, we are not disputing quantity.  And but,

4    we do dispute the appropriateness of using that kind of

5    quantity to enhance the sentence by 28 times or enhance the

6    guidelines by 28 times.  That is clearly something that we

7    dispute in terms of what the appropriateness of sentencing

8    here.

9            THE COURT:  All right.  Thank you.  Mr. Wilson, I have

10   read your letter that you submitted to the Court, but you're

11   also welcome to make an oral statement to the Court if you'd

12   like to do so.

13           THE DEFENDANT:  Okay, I will.

14           I apologize to you, Ms. Judge Nathan, to the Court, to

15   my family right here, for all the the wrongdoings I've done in

16   my past.  And I ask that -- I know that there's no excuse for

17   what I've done, even me being financially unstable and going to

18   school, struggling with school, but I ask that I may have a

19   second chance and mercy with my sentencing, that I may become a

20   more -- more upstanding citizen in the community back in

21   society.  And I could change my acts and change the way I do

22   things, and those situations and approach situations and I

23   could be more -- more -- have a more brighter future than I

24   have now.  Thank you.

25           THE COURT:  Thank you, Mr. Wilson.

1            Counsel, any reason why sentence should not be imposed

2     at this time?

3            MS. BARRETT:  No, your Honor.

4            MS. FEINSTEIN:  No, your Honor.

5            THE COURT:  As I've stated, the guideline range

6     applicable to this cases is 70 to 87 months' imprisonment.

7     Under the Supreme Court's decision in *Booker* and its progeny,

8     the guideline range is only one factor that the Court must

9     consider in deciding the appropriate sentence.  I'm also

10    required to consider the other factors set forth in 18 U.S.C.

11    Section 3553(a).

12           These include the nature and circumstances of the

13    offense and the history and characteristics of the defendant,

14    the need for the sentence imposed to reflect the seriousness of

15    the offense, to promote respect for the law, and to provide

16    just punishment for the offense, to afford adequate deterrence

17    to criminal conduct, to protect the public from further crimes

18    of the defendant, to provide the defendant with needed

19    educational or vocational training, medical care or other

20    treatment.  I am to take into account the kinds of sentences

21    available, as I've said, the guideline range and any pertinent

22    policy statement, and the need to avoid unwarranted sentence

23    disparities, and the need to provide restitution to any victims

24    of the offense.  I am required to impose a sentence sufficient,

25    but no greater than necessary, to comply with the purposes I've

1    just described.

2              I have given substantial thought and attention to the

3    appropriate sentence in this case, in light of the 3553(a)

4    factors and the appropriate purposes of sentencing as reflected

5    in the statute.

6              Mr. Wilson does stand convicted of what is

7    unquestionably a serious offense.  He did associate himself

8    with the Big Money Bosses gang, which is a violent street gang

9    that operated in the Bronx in this particular neighborhood.

10   Big Money Bosses or BMB, as it's referred to, trafficked in

11   narcotics including crack cocaine, marijuana, and other drugs,

12   also the gang kept firearms and engaged in acts of violence,

13   including shootings, stabbing, and gang assaults.  BMB has a

14   violent culture and it has a norm against snitching and

15   cooperating.  And at base it is a dangerous, dangerous street

16   gang.

17             Mr. Wilson was an associate of that gang, not a

18   member.  But as an associate, he was a frequent drug dealer.

19   He's been described here as a midlevel drug dealer.  He was a

20   street dealer, but this was not a one-off or a short-term

21   mistake.  He sold crack cocaine, which is certainly a dangerous

22   drug, over a period of time and with frequency.  At the time of

23   his arrest, he was found with 22 bags of crack packaged for

24   distribution.  He did regularly sell crack at the gang

25   controlled area called the Forts.  This gang ravaged the areas

GCG3WILS                          Sentence

1    it occupied with dangerous drugs and violence.

2              Given Mr. Wilson's role in the conspiracy, that is of

3    a drug dealer that helped facilitate this gang's activities,

4    and he participated over a period of time and with frequency

5    selling crack cocaine, I do believe that a serious sentence is

6    warranted to reflect the seriousness of the offense, to deter

7    Mr. Wilson and others, to promote respect for the law, and to

8    protect the public.

9              However, I must and I do take into account the history

10   and characteristics of this defendant.  As a preliminary

11   matter, I note that Mr. Wilson pled guilty to this offense, he

12   did so early on.  He has accepted responsibility.  I believe

13   that his expression of remorse and acceptance of responsibility

14   both as reflected in what he said to me in court today and

15   what's written in his letter, is genuine.  And I am putting

16   some reliance on my own ability as best as I can to discern

17   genuine acceptance of responsibility, and I'm crediting

18   Mr. Wilson here with that.

19             Moreover, Mr. Wilson does not have an extensive

20   criminal history.  And there is no violence as charged, there

21   is a lot of violence in the indictment with respect to the gang

22   and many members, many co-defendants of Mr. Wilson.  No

23   allegations of violent activity with respect to Mr. Wilson.

24   And his lack of criminal history I do think is significant, and

25   that is in contrast with many others who have been charged

1    here.

2              There are also some very, as I've indicated and as has

3    been discussed, have been very positive post-arrest signs of

4    rehabilitation.  Including, I'm encouraged by his involvement

5    in the Lead by Example program as well as his what seems to be

6    a continuing commitment to education.  Mr. Wilson does have

7    education, he's expressed interest in continuing that as well

8    as in job training and seeking employment.

9              I think those are going to be critical steps for you

10   to continue taking, Mr. Wilson, upon your release.

11             The involvement of his family, as I've said, who wrote

12   to me and who are here today, his parents, I think these are

13   encouraging signs, signs of support that Mr. Wilson will have

14   following his incarceration as he takes steps towards

15   decisions, unlike the ones that he made that led him here, but

16   hopefully towards, as he said, a more productive involvement in

17   his community, and a more positive and productive life.

18             And in this regard, I have read carefully the letters

19   and other submissions on Mr. Wilson's behalf from his family

20   members.  And I do think they help establish in my mind that

21   Mr. Wilson does have potential, as I've said, based on his

22   interest in education and employment, and he has the loving

23   support of his family members.  I am heartened by this.  And

24   hope that it all continues in the future.

25             In sum, although I am convinced that this is a serious

GCG3WILS                         Sentence

1    sentence and I do believe in the necessity of reflecting the

2    seriousness in light of the damage to the community done by

3    this gang, done by crack cocaine sales, I do believe a

4    significant variance downward is important.  But the sentence

5    must also reflect the seriousness of the crime and deter

6    others.

7            I will now state the sentence I intend to impose.

8    Mr. Wilson, will you please rise.

9            It is judgment of this Court that you're remanded to

10   the custody of the bureau of prisons for 24 months to be

11   followed by a period of three years of supervised release.  You

12   may be seated.

13           During your term of supervised release, the standard

14   conditions of supervision shall apply.  In addition, you'll be

15   subject to the following mandatory conditions:  You shall not

16   commit another federal, state or local crime; you shall not

17   illegally possess a controlled substance; you shall not possess

18   a firearm or destructive device.  The mandatory drug testing

19   condition will be suspended because I'll be imposing a special

20   condition requiring drug treatment and testing.  You shall

21   cooperate in the collection of DNA as directed by the probation

22   officer.

23           In addition, the following special conditions must be

24   met:  You shall participate in an outpatient treatment program

25   approved by the United States probation office, which program

GCG3WILS                         Sentence

1   may include testing to determine whether you've reverted to

2   using drugs or alcohol.  You'll be subject to the search term

3   that's outlined on page 29 of the presentence report.  You'll

4   report to the nearest probation office within 72 hours of

5   release.  And I do recommend you be supervised in your district

6   of residence.

7          In addition, as we've discussed, I am going to make it

8   a condition of supervision that you do maintain your

9   participation in the Lead by Example program.  Of course this

10  will be with consultation with the probation officer, as well

11  as Mr. Hendrickson, the leader of this program.  But it would

12  be anticipated that Mr. Wilson would have weekly participation

13  in the program, and that it would continue during the period of

14  his supervision.  Again, though, pending consultation with

15  Mr. Hendrickson and the probation office, but it will otherwise

16  be a term of supervision.

17         I will waive the fine as I don't believe defendant has

18  the ability to pay the fine.

19         Ms. Feinstein, nothing here with regard to forfeiture

20  or restitution?

21         MS. FEINSTEIN:  No, your Honor.

22         THE COURT:  I am imposing a mandatory special

23  assessment of $100 which shall be due immediately.

24         Does either counsel know of any legal reason why the

25  sentence shall not be imposed as stated?

GCG3WILS                    Sentence

1              MS. FEINSTEIN:  No, your Honor.

2              MS. BARRETT:  No, your Honor.  Thank you.

3              THE COURT:  The sentence as stated is imposed.  I do

4    find that it is sufficient, but no greater than necessary, to

5    satisfy the sentencing purposes that I've described earlier.

6              I will say again for the record that the sentence that

7    I am imposing, the significance of the variance here turns in

8    particular on Mr. Wilson's lack of criminal history, the

9    support of his family members, his participation in this Lead

10   by Example program, and my judgment, and that is at the end of

11   the day what I'm left with, Mr. Wilson, that this will be a

12   significant life changing experience for you.  And that while I

13   see many people, many defendants involved in drug narcotics

14   activity who continue to repeat those choices, I am placing

15   some faith in you that, with the support of your family, that

16   will not be the case here.

17             And though I don't doubt you'll face difficulties,

18   financial and otherwise, going forward, you will make better

19   choices for you and for your family.

20             When you are released and on supervised release,

21   Mr. Wilson, you will have the guidance and support of the

22   probation department as you reestablish your day-to-day life

23   during your period of supervision.  Do take advantage of those

24   resources, as the folks in probation are committed to helping

25   you succeed.

1          That said, I must caution you, you must comply

2    strictly with all of the conditions of your supervised release

3    that I've imposed.  If you're brought back before me for a

4    violation of those conditions, I may sentence you to another

5    term of imprisonment.  I hope and I expect you won't put me to

6    that decision.

7          Ms. Barrett, any requests regarding designation or

8    otherwise?

9          MS. BARRETT:  Just designation in the most appropriate

10   facility as close as possible to his family, your Honor.  I

11   don't think -- the bureau of prisons is the bureau of prisons.

12         THE COURT:  Yes.  Well, I will recommend that he be

13   considered for placement -- his family is in the New York City

14   area?

15         MS. BARRETT:  That's correct.

16         THE COURT:  For placement in a facility as close to

17   the New York City area as possible to help facilitate

18   maintenance of ties with his family.

19         MS. BARRETT:  Thank you, your Honor.

20         THE COURT:  Ms. Feinstein, are there remaining counts

21   or underlying indictments that need to be dismissed at this

22   time?

23         MS. FEINSTEIN:  We move to dismiss all open counts.

24         THE COURT:  Granted.

25         Mr. Wilson, I see no basis for an appeal.  But I am

GCG3WILS                        Sentence

1    required to inform you of your appellate rights.  To the extent

2    that you have not given up your right to appeal your conviction

3    and sentence through your plea of guilty, and the agreement

4    that you entered into with the government in connection with

5    that plea, you do have the right to appeal.  If you are unable

6    to pay the cost of an appeal, you may apply for leave to appeal

7    in forma pauper.  The notice of appeal must be filed within 14

8    days of the judgment of conviction.

9              Counsel, is there anything else I can address at this

10   time?

11             MS. BARRETT:  No, thank you, your Honor.

12             MS. FEINSTEIN:  No, thank you.

13             THE COURT:  Thank you.  Mr. Wilson, good luck to you,

14   sir.

15             THE DEFENDANT:  Thank you.  God bless you, Judge

16   Nathan.

17             THE COURT:  You too.

18                             oOo

19

20

21

22

23

24

25