# GLENN A. GARBER, P.C.

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279

ATTORNEYs AT LAW
GLENN A. GARBER
(ADMITTED IN NY& NJ)

TEL: 212-965-9370   FAX: 212-965-9375
WWW.GLENNGARBER.COM

March 3, 2017

**VIA ECF**
Honorable Alison J. Nathan
U.S. District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    **United States v. Barffour Abeberse**
                **Dkt. No. 15 Cr. 95-08 (AJN)**

Dear Judge Nathan,

    This letter memorandum is submitted in support of Barffour Abeberse's ("Barffour") position on sentencing. Sentencing is scheduled for March 17, 2017 at 4 p.m.

    Key figures in Barffour's life abandoned him at a young age, and without their guidance, he started to lose his way. He is young, intelligent, has a strong work ethic, and he is on his way to rehabilitation. Thus, a variance under 18 U.S.C. 3553(a) (which the Probation Department recommends in part) is appropriate.

## Guidelines

    On December 2, 2016, Barffour pled guilty to Count One in the indictment (18 U.S.C. § 1962(d) – racketeering conspiracy to distribute cocaine base). The Plea Agreement contains a sentencing Guidelines calculation, which was largely adopted by the Probation Department:

- The Initial Baseline Offense Level is 33, and is calculated as follows:

    o The Guideline applicable to Count One is U.S.S.G. § 2E1.1. Under U.S.S.G. §§ 2E1.1(a)(1) and (2), the base offense level is the greater of 19 or the offense level applicable to the underlying racketeering activity.

    o Under U.S.S.G. § 2D1.1, Application Note 1, each offense is treated as a separate count of conviction; under U.S.S.G. § 3D1.1(a), because there are multiple underlying offenses, a multi-count analysis must be performed; and under U.S.S.G. § 3D1.2, each underlying offense comprises its own group for analysis.

# GLENN A. GARBER, P.C.

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279

ATTORNEYs AT LAW
GLENN A. GARBER
(ADMITTED IN NY& NJ)

TEL: 212-965-9370   FAX: 212-965-9375
WWW.GLENNGARBER.COM

- - The first group is the crack conspiracy: Under U.S.S.G. § 2D1.1(a)(5) and (c)(5), the base offense level is 30 because the offense involved between 380 and 840 grams of crack cocaine; and under U.S.S.G. § 2D1.1(b)(1) there is an increase of 2 levels because a dangerous weapon was possessed, making the total offense level 32 for this group.

  - The second group is the May 15, 2010 Aggravated Assault: Under U.S.S.G. § 2A2.2(a), the base offense level is 14; under U.S.S.G. § 2A2.2(b)(2) there is a 4 level increase because a dangerous weapon was used; and under U.S.S.G. § 2A2.2(b)(3), there is a 7 level increase because the victim sustained permanent or life-threatening injury, making the total offense level 25 for this group.

  - The combined offense level is 33: Under U.S.S.G. § 3D1.4, the highest offense level is 32, for the crack conspiracy, which is one Unit; under U.S.S.G. § 3D1.4(b), the aggravated assault is five to eight levels lower, which is one-half a Unit; and under § 3D1.4, one-and-a-half Units results in a one level increase, for a total of 33.

- Because Barffour clearly accepted responsibility, the offense level is decreased by 3 under U.S.S.G. § 3E1.1.

- There is no increase under U.S.S.G. § 4B1.1(a), as a career offender, because under U.S.S.G. § 4A1.2(a)(1) and U.S.S.G. 2E1.1, Application Note 4 these convictions are treated as prior sentences and not as part of this instant offense. In addition, to avoid an anomalous result in this case, the parties agree that a downward departure to level 26 is warranted under U.S.S.G. § 2E1.1, Application Note 4.[1]

- Total Offense Level: 26.

Plea Agreement at 2-4.

As to criminal history, Barffour was convicted of robbery in the third degree, a class D felony, on April 25, 2013 and he was convicted of assault in the second degree, a class D felony, on April 25, 2013. Plea Agreement at 4-5. These offenses are not considered relevant conduct under U.S.S.G. § 4A1.2(a)(1) and U.S.S.G. § 2E1.1, Application Note 4. *Id*. Under U.S.S.G. § 4A1.1(a), each of these sentences results in 3 criminal history points, for a total of 6. *Id*. Normally, this would

---

[1] In the Plea Agreement, on page 4, there is a typographical error that states that the downward departure should be to offense level 30, while it states that the downward departure should be to base offense level 26 right above. Similarly, on page 5, there is a typographical error that indicates the downward departure should be to offense level 30, while it states earlier on page 4 that the offense level should be 26. In both cases 26 is correct. This mistake was acknowledged on the record at the Plea Hearing.

# GLENN A. GARBER, P.C.

ATTORNEYs AT LAW
GLENN A. GARBER
(ADMITTED IN NY& NJ)

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279
TEL: 212-965-9370   FAX: 212-965-9375
WWW.GLENNGARBER.COM

result in a Criminal History Category of III, but because the defendant is a career offender, the Criminal History Category is VI under U.S.S.G. § 4B1.1(a). *Id*. In the Plea Agreement, however, the defendant specifically reserved the right to argue for a downward departure to Criminal History Category III because the convictions described above were not "crimes of violence." *Id*.

Based on an Offense Level of 26 and a Criminal History Category of VI, the Stipulated Guidelines Range is 120 to 150 months. Plea Agreement at 5. Barffour, however, has reserved the right to argue for Criminal History Category III, which would result in a sentencing range of 78 to 97 months. *Id*. In addition, all parties agreed that neither an upward nor downward departure is otherwise warranted, but either party may seek a variance based on the factors in 18 U.S.C. 3553(a). *Id*.

The Probation Department mainly agreed with the calculations in the Plea Agreement, with some exceptions. First, under U.S.S.G. § 2A2.2(b)(3), it found that the cumulative adjustments to an aggravated assault group cannot exceed ten, so the offense level for that group is 24, not 25. PSR ¶47. Second, it did not include a downward departure to Offense Level 26, under U.S.S.G. § 2E1.1, Application Note 4. PSR ¶58. Third, it discovered a youthful offender conviction from when Barffour was 17 and caught with a .22 caliber handgun, and notes that Barffour was on probation at the time of the instance offense, which results in 11 criminal history points. PSR ¶¶60, 63-64. Finally, the Probation Department did not find that Barffour was a career offender under U.S.S.G. § 4B1.1(a), so his Criminal History Category is V. PSR ¶64. This results in a sentencing range of 151 to 188 months.

However, the Probation Department recommends a sentence of 100 months, with a downward variance of 51 months below the range in its calculations. Probation based the variance on Barffour's young age and difficult upbringing. PSR at 35 ("is still a young man who appears to have lacked youthful guidance").

### Background

Barffour was born on August 13, 1992, and today he is 24 years old. PSR ¶70. He was raised by his parents John Abeberse and Nana Abeberse, along with his half-brother Eric Adjepong, who is five years older. PSR ¶70-71. Barffour's mother worked as a nurse until approximately 15 or 20 years ago, when she was disabled following a car accident. PSR ¶70. Barffour is close to Eric, but Eric relocated to England when Barffour was ten so he could obtain a better education and to get him away from the troubled neighborhood the family lived in. PSR ¶73. And ten years ago, when Barffour was 14, his father started spending nine months of every year attending to his business in Ghana. PSR ¶73. Barffour has eight or nine half siblings who live in Ghana, where his father is from, but he does not know them well. *Id*.

Those that have known Barffour for many years describe him as friendly and kind. Ms. Tomlinson explains how Barffour would help her unload her car, and help with the groceries. Ex. A. His pastor says that he was well behaved, took his assignments seriously, and was a committed

# GLENN A. GARBER, P.C.

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279

ATTORNEYs AT LAW                            TEL: 212-965-9370   FAX: 212-965-9375
GLENN A. GARBER                              WWW.GLENNGARBER.COM
(ADMITTED IN NY& NJ)

member of the church. Ex. A. Ms. Miranda, the mother of one of Barffour's childhood friends describes Barffour as being respectful and a "great kid." Ex. A. Ms. Tyner describes him the same way: "respectful." Ex. A.

Barffour, however, started to lose his way after his brother left and his father started spending most of the year in Ghana. He quit school in the 11th grade. PSR ¶86. He started using marijuana when he was 16, and was arrested for the first time in 2009, when he was 17. PSR ¶¶83, 86. However, he tried to complete his education and obtain employment. He entered an employment and education program in 2009 and completed his GED in 2010. PSR ¶¶86, 89. He also attended Westchester Community College for a little over a year. PSR ¶87. Most recently, in 2015, he attended a job readiness program at the Center for Employment Opportunity for several months. PSR ¶88. Unfortunately, he struggled to find employment. *See* Ex. A.

### Criminal History Calculation

The Probation Department was correct in finding that Barffour is not a career offender. Under U.S.S.G. § 4B1.1(a), the instant offense must be a "crime of violence" or "controlled substance offense," and at least two of the defendant's prior crimes must fit the same criteria. Barffour has only one, the conviction for assault in the second degree. The 2009 youthful offender charge is only for possession of a weapon, which is not a crime of violence and is also excluded because Barffour was convicted as a youthful offender. *See* U.S.S.G. § 4B1.2, Application Note 1. And the 2011 incident on the subway is not sufficient because, "a conviction for robbery in the third degree under New York Penal Law § 160.05 does not qualify as a crime of violence." *United States v. Johnson*, No. 15-CR-32 (BMC), 2016 WL 6684211, at *7 (E.D.N.Y. Nov. 12, 2016); *see also Ward v. United States*, No. 10-CR-06039 (MAT), 2016 WL 5372459, at *2 (W.D.N.Y. Sept. 26, 2016).[2]

### A Variance Under U.S.S.G. § 2E1.1, and § 4A1.3(b)

The Probation Department did not include the four-level downward departure that both parties agreed upon under § 2E1.1, Application Note 4, although it acknowledged that it may be appropriate: "A downward departure for overstated criminal history may be applicable in this case, pursuant to § 2E1.1 Application Note 4, and § 4A1.3(b)." PSR ¶109. Under § 2E1.1, what might otherwise be relevant conduct in a racketeering case is instead included in criminal history, and

---

[2] *Ward* relies on *United States v. Jones*, which was vacated by the Second Circuit "pending the Supreme Court's disposition in *Beckles v. United States*, No. 15–8544." 838 F.3d 296 (2d Cir. 2016). In *Beckles*, however, the career offender statute was applied because the defendant possessed a "firearm described in 26 U.S.C. § 5845(a)," which was specifically designated as a "crime of violence" in the Sentencing Guidelines. *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009). And in the 2016 Sentencing Guidelines, a sawed-off shotgun is now explicitly a "crime of violence." U.S.S.G. § 4B1.2(a)(2). Therefore, there is a substantial chance that the outcome of *Beckles* will not drastically alter the ruling in *Jones*.

# GLENN A. GARBER, P.C.

ATTORNEYs AT LAW
GLENN A. GARBER
(ADMITTED IN NY& NJ)

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279
TEL: 212-965-9370   FAX: 212-965-9375
WWW.GLENNGARBER.COM

under § 4A1.3(b), a downward departure may be warranted if the criminal history otherwise overstates the seriousness of the criminal history.

Here, six of Barffour's potential criminal history points come from two offenses. The first is a 2009 charge for possessing a .22 caliber handgun when he was a minor. PSR ¶60. Barffour was discovered after the police responded to a 911 call reporting shots being fired. PSR ¶22. The PSR inaccurately states that Barffour claimed that no shots were fired; in truth, Barffour only stated that *he* did not fire the shots and was merely caught with the gun. *Id*. The second is a third-degree robbery conviction. PSR ¶62. Initially in the PSR, it is described as a "stabbing and robbery," but this is not accurate. PSR ¶24. Later on, the Probation Department explains that Barffour was arrested, "for having grabbed and taken a cell phone … causing a laceration to the victim's left hand." PSR ¶62. These two prior convictions result in an approximately 40% increase in his sentence. For example, at offense level 26, six additional criminal history points will push someone from Criminal History Category III to V, moving the sentencing range from 78 to 97 months up to 110 to 137.

Consequently, whether this is treated as a four-level downward departure, as it was in the Plea Agreement, or as a variance under 18 U.S.C. § 3553(a), adding approximately 40% to Barffour's sentence based on a youthful offender adjudication and snatch and grab type robbery, is unduly severe. Moreover, Barffour has served one and a half years and part of a probationary sentence for these offenses. Thus a fair sentence should not include the full Sentencing Guidelines impact for these prior offenses.

### A Variance Based on Barffour's Youth and Likelihood of Rehabilitation

A variance is also warranted under 18 U.S.C. § 3553(a) based on Barffour's age and likelihood of rehabilitation. Barffour, as the Probation Department noted, has largely been without guidance and supervision. His mother has not worked for most of Barffour's life and his brother and father effectively left the family when he entered adolescence. Soon after, Barffour began having trouble in school and with the law; this is not a coincidence.

But Barffour is still young, only 24 years old now, and all his prior offenses were from when he was between 17 and 19 years old. And he has shown a firm capacity to rehabilitate himself. Before his present arrest, he tried to advance his music career. While the Probation Department takes issue with some of his lyrics, these lyrics, like most music, are fiction and stem from the culture and struggles of those in underprivileged communities. The productions, which include audio and music, are professionally produced and polished, and evidence a substantial amount of effort and hard work by Barffour.

During his incarceration at the Metropolitan Correctional Center, Barffour has commenced his rehabilitation and has completed an anger management program called Lead by Example & Reverse the Trend, a program for at risk youth. The founder was so impressed by Barffour that he wants him to work with the program: "We are willing to receive [Barffour] into our organization as

# GLENN A. GARBER, P.C.

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279

ATTORNEYs AT LAW  TEL: 212-965-9370  FAX: 212-965-9375
GLENN A. GARBER  WWW.GLENNGARBER.COM
(ADMITTED IN NY& NJ)

a credible messenger to help with the violence prevention and social emotional learning part of our program." Ex. A. He believes Barffour "will be very instrumental with the progress of the program and willingly assist where he's needed." In addition, Barffour earned a certificate for completing a 40-hour drug abuse education course, and has completed a course in business and entrepreneurship, but has not yet received his certificate. Ex. A.

\*\*\*

In sum, taking into account Barffour's background, his age, his likely prospects for rehabilitation, and the overstatement of the criminal history calculation under the Sentencing Guidelines, 78 months is a proper sentence. This is the bottom of the 78 to 97 month sentencing range under Offense Level 26, which was stipulated to in the Plea Agreement, with a Criminal History Category III (which accounts for six criminal history points, as stipulated in the Plea Agreement, but without the career offender status).

Respectfully,

_____/s/_____
Glenn A. Garber, Esq.
Glenn A. Garber, P.C.
*Attorney for Defendant Barffour Abeberse*
The Woolworth Building
233 Broadway, Suite 2370
New York, New York 10279
Tel: (212) 965-9370
Fax: (212) 965-9375
Email: ggarber@glenngarber.com

cc:    AUSA Rachel Maiman via ECF