UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                     :
UNITED STATES OF AMERICA                      :
                     :      S2 15 Cr. 95 (AJN)
          - v. -                  :
                     :
ROBERT HAUGHTON,                    :
                     :
             Defendant.      :
                     :
------------------------------------------------------------------------X

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

                                                   JOON H. KIM
                                                   Acting United States Attorney
                                                   Southern District of New York
                                                   One St. Andrew's Plaza
                                                 New York, New York 10007

RACHEL MAIMIN
HAGAN SCOTTEN
JESSICA FEINSTEIN
DREW JOHNSON-SKINNER
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
      :
UNITED STATES OF AMERICA                    :
      :    S2 15 Cr. 95 (AJN)
             - v. -                         :
      :
ROBERT HAUGHTON,                       :
      :
            Defendant.           :
      :
------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

The defendant in this case, Robert Haughton, is scheduled to be sentenced on April 4, 2017. The Government respectfully submits this memorandum in advance of that sentencing and in response to Haughton's sentencing memorandum, which requests a sentence within the stipulated United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 46 to 57 months' imprisonment set forth in the parties' Plea Agreement.[1] For the reasons that follow, the Government agrees with Haughton that a sentence within the stipulated range is appropriate and sets forth below relevant facts to guide the Court in determining where within the range the particularly appropriate sentence lies. Haughton was an associate of a violent street gang—the Big Money Bosses ("BMB" or the "Gang")—with which he sold crack. In addition to his drug

---

[1] As detailed below, this range differs from the range set forth in the Presentence Report ("PSR") prepared by the Probation Office because of certain juvenile offenses about which the Government and defense counsel were not aware. The Government is prepared to address the discrepancy with the PSR upon inquiry of the Court. *See United States* v. *Kilpatrick*, -- Fed. App'x --, 2016 WL 6518802, at *3 (2d Cir. Nov. 1, 2016) (holding that Government breached plea agreement by bringing an error in the parties' Guidelines calculation to the attention of the Court).

dealing with BMB, however, Haughton also committed gunpoint robberies that the Government has not specifically linked to the racketeering conspiracy. Nevertheless, these acts of violence counsel in favor of a more substantial sentence, as detailed below.

## I.     Procedural History

On April 27, 2016, the S2 Indictment in this case was unsealed, charging 63 members and associates of BMB with: (1) racketeering conspiracy, in violation of Title 18, United States Code Section 1962; (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution, in violation of Title 21, United States Code, Section 860; and/or (4) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

On September 23, 2016, Haughton pled guilty to Count One of the S2 Indictment in this case, which charged him with racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d). (PSR ¶ 7.)

## II.     Offense Conduct

### A. Background

Beginning in December 2014, the New York City Police Department, the Drug Enforcement Administration, Homeland Security Investigations, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation into two rival street gangs— BMB and the 2Fly YGz ("2Fly")—that were operating in the Bronx, New York. The investigation revealed that since at least in or about 2007, up until in or about 2016, members of BMB and 2Fly were involved in a variety of racketeering acts, including murders, attempted murders, robberies, narcotics trafficking, bank fraud, and counterfeit currency offenses.

**B. BMB**

The structure of BMB is described accurately in the PSR.

BMB was a subset of the "Young Bosses," or "YBz" street gang, which operates throughout the New York City area. BMB—whose members also sometimes refer to themselves as the "Money Making Mafia" or "Triple M"—operated primarily on White Plains Road from 215th Street to 233rd Street in the Bronx, which is a long stretch of road under a subway train overpass that is hedged on each side by single-family homes and local commercial establishments. BMB's narcotics trafficking activity was based principally in the vicinity of White Plains Road and 224th Street, an open-air drug spot that was referred to by gang members as the "Forts." BMB members sold drugs and down White Plains Road, however, including at a spot on 219th Street and a house on 230th Street. BMB members sold crack cocaine, marijuana, and prescription pills, including Percocet pills (i.e., oxycodone). BMB members kept firearms at each of these White Plains Road locations. BMB members also operated a drug spot on Boston Road and Eastchester Road in the Bronx, which they refer to as "B Road." BMB members who worked principally at the B Road spot typically refer to themselves as "Blamma." Generally speaking, BMB members were encouraged to continue openly "jacking," or proclaiming their membership in the gang, and many did so not only in person but also through social media websites such as Facebook.

In addition to its narcotics trafficking, BMB members and associates engaged in acts of violence, including shootings, stabbings, and gang assaults; these acts of violence protected the power of the gang, deterred attacks from rivals, and secured the gang's territories and drug spots. Moreover, members who engaged in a sufficient amount of violence could earn a leadership position, which was referred to as a "Big Suit." Members with "Big Suit" status were further

subcategorized as, among other things, "Burberry Suits," "Louis Suits," "Gucci Suits," "Ferragamo Suits," and "Sean John Suits," in order to signify their relative rank in the gang. Among other things, a BMB member with "Big Suit" status had the authority to recruit other individuals into the gang. Two of the highest-ranking "Big Suits" in BMB were NICO BURRELL, a/k/a "Zico Nico," and DOUGLAS MCLARTY, a/k/a "Q Don." Both BURRELL and MCLARTY enhanced their status in the gang, in part, by committing attempted murders when they were each juveniles.

Members of BMB rose in status and rank within the gang not only by engaging in acts of violence, but also by maintaining their membership in the gang for a long period of time. Members who were loyal associates for a substantial amount of time are referred to as "Day One Niggas," meaning that they have been associating with the gang since its earliest days. For example, in a posting on Facebook on July 7, 2013, BMB member RASHEID BUTLER, a/k/a "Rah," wrote: "i love my Day1 Niggas that was here since this #TripleM Shit 1ST STARTED." Similarly, BMB leader NICO BURRELL, a/k/a "Zico Nico," discusses the "Day One" concept in a rap video posted on YouTube in December 2015 and entitled "Live From Gutter." In the video, BURRELL raps, "No new niggas, only day one / I know they ain't tellin' if that day come," after which another rapper repeats in the background, "no snitchin.'"

BMB has, more generally, developed a gang norm against "snitchin,'" or cooperating with law enforcement. For example, a BMB associate posted on Facebook on July 20, 2011, "Like QuDOn Said 'No Snitchin Policy'"; the reference to "QuDOn" is a reference to MCLARTY, who is one of BMB's leaders and whose alias is "Q Don." BMB's norm against "snitchin'" was fostered through YouTube videos and social media postings, including postings in which gang members are praised for their refusals to cooperate with law enforcement in

4

particular instances.  The norm is also enforced through disparagement of and threats of violence against BMB members who are suspected of having violated the norm by cooperating.  During the course of this investigation, law enforcement learned of at least one instance in which a BMB member's home was fired upon because he made a statement to law enforcement about individuals with whom he had committed a robbery.  During another instance, the child of a suspected cooperator in this case was threatened and spat upon in the street.  The norm against cooperation facilitates the gang's criminal enterprise and is one of the reasons why members of BMB tend to commit their robberies and fraud offenses with other members of BMB.

Many of the specific acts of violence committed by BMB members related to its longstanding rivalry with 2Fly, which is based principally in the nearby Eastchester Gardens public housing development ("Eastchester Gardens"), but which also has members who live in the "Valley" area just east of BMB's "B Road" spot on Boston Road and Eastchester Road.  BMB also has developed rivalries with other street gangs in the northern Bronx, including the "Young Shooter Gang," or "YSGz," which is based in the Edenwald public housing development ("Edenwald"), and the "Slut Gang," which is based in the Boston-Secor public housing development ("Boston-Secor").  In connection with these rivalries, BMB members developed a practice of "mobbing," meaning to gather in large groups and travel to the base of operations of a rival gang to engage in violence there.  Members of rival gangs also sometimes went "mobbing" and attack or attempt to attack BMB at its bases of operations.  Videos of "mobbing" incidents were posted on YouTube.  The close proximity of the BMB, 2Fly, YSGz, and Slut Gang bases of operations—all of which are in or on the border of the New York City Police Department's 47th Precinct—contributed to the frequency of acts of violence.

In addition to acts of violence, members and associates of BMB promoted their gang and disparaged rival gang members by highlighting a distinguishing feature of BMB: it is not based in a housing development, as are its principal rivals 2Fly (in the Eastchester Gardens), YSGz (in Edenwald), and the Slut Gang (in Boston-Secor). As noted above, BMB principally operated along White Plains Road, a long stretch of road hedged on each side by single-family homes and local commercial establishments. The name of the gang ("Big Money Bosses") and the other allusions to wealth that the gang employs (for example, the brand-name clothing retailers used to identify leadership positions) all serve to underscore this difference. In addition, members and associates of BMB have publicly mocked the living conditions of the housing developments in which many of their rivals live. For example, in a Facebook post on July 10, 2014, BMB member DONQUE TYRELL, a/k/a "Polo Rell," posted a photograph of a young child laying on a bed and covered with cockroaches, with the caption "MEANWHILE IN EDENWALD." In connection with the posting of this picture, TYRELL wrote, "Dirty ass project," followed by six smiley-face "emoticons." Similarly, in a Facebook posting on May 28, 2014, BMB member MASHUD YODA, a/k/a "Papa Ola," writes, "No Lie ECG [*i.e.,* the Eastchester Gardens] The Dirtiest PROJECTS UPTOWN . . . . Like OBAMA Said CHANGE But I Guess He forgot Bout ECG !!"

Consistent with this feature of BMB, members and associates of the gang engaged not only in narcotics distribution and robberies to enrich and distinguish its members from rivals, but also engaged in a variety of frauds, including bank fraud and counterfeit currency offenses. To perpetrate some of these fraud offenses, BMB members and associates often employed their girlfriends and female acquaintances.

### C. Haughton's Role

Haughton was an associate of BMB. He sold crack at BMB's "Forts" location on White Plains Road and 224th Street. He bragged about his crack sales on Facebook; on October 24, 2014, Haughton wrote: "Real dope boy n***a I ain't frontin I turn nothing into something," followed by two emoticons of cash. Haughton's Facebook activity also generally reflects his strong allegiance to BMB, including a leader of the Gang—Nico Burrell—and his embrace of BMB's culture of violence. On August 28, 2014, Haughton wrote "Welcome home zico," a reference to Burrell, who had just finished serving his sentence for attempted murder of a 2Fly member. In addition, on August 31, 2014, Haughton wrote, "U want a problem start it up," followed by an emoticon of a gun. That same day, Haughton posted a photograph of himself with an as-yet unidentified individual, with the message, "Dats my dog I let it blow fa him," followed by an emoticon of a gun and the phrase, "#dayunonigga." The reference to letting it "blow fa him," reflects a willingness to fire a gun on behalf of one's associates. The reference to "dayunonigga" is a reference to the "Day One" concept that longstanding members of BMB are less likely to cooperate with law enforcement if arrested.

On June 15, 2014, Haughton and BMB associate and co-defendant Hakeem Campbell, a/k/a "Ocky," a/k/a "Ackee," were arrested at the "Forts" after they were seen with a bag of crack cocaine in an amount more than half a gram. On July 10, 2013, Haughton was arrested in the vicinity of Bronxwood Avenue and 221st Street after selling controlled substances to an undercover police officer. On June 26, 2013, Haughton was arrested in the vicinity of White Plains Road and 227th Street because he was observed cursing and threatening a store owner over a misplaced jacket. After being brought to the station house, a patdown revealed that Haughton had crack cocaine hidden in his right-side crotch area.

1. **Other Conduct**

Haughton has also been involved in acts of violence that the Government has not been able to prove by a preponderance of the evidence are linked to the racketeering conspiracy. Thus, while these acts of violence are important to the Court's analysis of the 3553(a) factors, they are not factored into Haughton's Guidelines range.

In particular, cooperator eyewitness testimony would establish that Haughton participated in gunpoint robberies, including a gunpoint robbery in 2012, during which Haughton robbed the victim of his jacket, as well as an armed home invasion of co-defendant Fabion Morrison. The home invasion was in retaliation for a perceived theft by Morrison of a gun of Haughton's. Haughton stole marijuana from Morrison.

**III.    The Defendant's Criminal History**

Haughton has a serious criminal history beginning at the age of 16, in 2011. His criminal history paints the picture of an individual who is continuously unwilling or unable to follow the law.

In 2011, he was adjudicated a youthful offender and was sentenced to 3 years' probation after stealing from an Apple Store at the Westchester Mall in White Plains. (PSR ¶ 37.) He violated probation after being arrested, as discussed below. (PSR ¶ 37.)

Again in 2011, he was adjudicated a youthful offender after giving a false name and date of birth to the police. (PSR ¶ 38.)

In 2014, Haughton was sentenced to one year of imprisonment after threatening a store owner and being found with crack, as discussed above. (PSR ¶ 39.)

Again in 2014, Haughton was sentenced to a year of imprisonment—presumably to run concurrently with the foregoing term of imprisonment—after being adjudicated a youthful offender in connection with a burglary charge.  (PSR ¶ 40.)

Again in 2014, Haughton pled guilty and was sentenced to 30 days' imprisonment for possessing a marijuana cigarette in public—on BMB territory.  (PSR ¶ 41.)

Again in 2014, Haughton was adjudicated a youthful offender and sentenced to a year in prison—again, presumably concurrent to the previously discussed term of imprisonment—after forcing himself into a woman's home without permission.  (PSR ¶ 42.)

Again in 2014, Haughton was arrested with Campbell in BMB territory with crack, as discussed above. This led to a conditional discharge and 3 days in jail.  (PSR ¶ 43.)

Again in 2014, Haughton was sentenced to 30 days jail after pleading guilty to reckless driving; during this offense, Haughton sped on a motorcycle from the police, wrecked the motorcycle, and was found without a driver's license.  (PSR ¶ 44.)

## IV.     The PSR and Guidelines Calculation

The PSR calculates Haughton to be in Criminal History Category V, with offense level 21.  The Plea Agreement calculated the same offense level, but designated Haughton in Criminal History Category III.  Again, the Government is prepared to address this discrepancy upon inquiry of the Court.

### 3553(a) ARGUMENT

For the reasons that follow, a substantial sentence within the stipulated Guidelines range is necessary to meet the statutory sentencing factors, in particular to provide just punishment and afford adequate deterrence to criminal conduct.

Haughton was a crack dealer with BMB, which is a serious offense meriting substantial punishment in itself. But it is his history and characteristics that are of most concern to the Government, and which make specific deterrence a particularly important factor in his sentencing. Haughton did not merely sell crack with a violent gang, he was violent himself—committing armed robberies and burglarizing homes. Participating in a high speed chase with the police creates danger not only to the police, but also to passerby. Haughton also threatened a store owner, which is anti-social, dangerous behavior inconsistent with leading a law-abiding life. Past sanctions have also had no effect on him. His criminal history is essentially a series of second chances, all of which he squandered by continuing to commit crimes. He does not deserve any leniency here because he has not given the Court hope that anything other than a significant prison term will force him to change his ways. Accordingly, a harsh sentence is necessary to meet the statutory sentencing factors in this case.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the stipulated Guidelines range.

Dated: New York, New York
       March 30, 2017

>                     Respectfully submitted,
>
>                     JOON H. KIM,
>                     Acting United States Attorney for the
>                     Southern District of New York,
>
> By:   __/s/_____
>                     Rachel Maimin
>                     Hagan Scotten
>                     Jessica Feinstein
>                     Drew Johnson-Skinner
>                     Assistant United States Attorneys
>                     (212) 637-2460

11