

May 11, 2017

**J. Bruce Maffeo**
Direct Phone   212-883-4951
Direct Fax      917-521-5866
jbmaffeo@cozen.com

**DELIVERED BY ECF AND FEDEX**

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:   United States v. Mark Williams
       0208 1:S2 15 CR 95-12 (AJN)

Dear Judge Nathan:

I represent Mark Williams whose sentencing is scheduled to occur on Tuesday, May 23 at 12:00 pm. For the reasons set forth below, the defense respectfully submits that a variance from the stipulated guidelines range is appropriate in this case.

Background

As Your Honor is aware, Williams is one of approximately 60 defendants arrested last year in the above-referenced case, charging them with racketeering conspiracy and related offenses arising out of the government's investigation of a Bronx street gang called Big Money Bosses ("BMB"). Although a number of other defendants are charged in the indictment with violent crimes ranging from robbery to murder, Williams was charged only with narcotics offenses. After extensive discussions with the government, on January 9, 2017 Williams pleaded guilty before the Hon. Kevin Fox to the racketeering conspiracy, admitting his participation in the sale of narcotics, specifically crack and marijuana. Pre-sentence Report ("PSR") ¶¶ 10, 6.

Williams entered his plea pursuant to a plea agreement with the government that included a stipulation between the parties as to the drug quantity of between 280 but less than 840 grams of cocaine base. Because of the absence of any other enhancements or any criminal record for Williams, the plea agreement resulted in an adjusted offense level of 27, which carries an advisory sentencing range of 70-87 months. The Probation Office reached the same conclusion based on its independent calculation of the guidelines. PSR ¶¶ 6, 35-45.[1]

In the government's description of the offense, Williams is characterized as a "significant distributor of crack for BMB." PSR ¶ 20. While Williams readily concedes that he was engaged in the sale of illegal narcotics over a sustained period of time, the defense respectfully suggests that the government's description is somewhat overdrawn. As noted in the PSR, Williams was

---

[1] I have reviewed the pre-sentence report with Williams, and with the exception of two minor corrections regarding the level of his education and number of disciplinary infractions, both of which are discussed *infra*, we have no other objections to the report.

LEGAL\30351831\3

May 11, 2017
Page 2

---

intercepted over two different court-authorized wiretaps, one of them directed to his phone. *Id.* ¶ 23. And while a review of the line-sheets confirms Williams' involvement in multiple sales of crack, the picture that emerges is less that of a large-scale distributor and more of a street-level hustler. For example, on October 19, 2015 at 10:58, Williams was intercepted calling another individual, telling him: "Nigga, I need some work piece." BMB_00017256, at 1. Similarly, on November 14, 2015 at 11:42, Williams was intercepted calling another individual, asking "You have works?" BMB_00017395. Finally, on November 6, 2015 at 10:55 pm, Williams was again intercepted complaining, "I don't have nothing, I'm at least trying to get a Blizzy…for the night or something." BMB_00017416.

This perhaps semantic quibble aside, what is undisputed, however, is that Williams shares with many of his co-defendants a familiar, but no less depressing, personal history of being reared in a single-parent home with marginal education or employment prospects. As noted in the PSR, Williams, age 25, was born in the Bronx and is one of three children, one of whom, Ricardo Stewart, is a co-defendant in this case. Williams' father was deported when Williams was six years old, and Williams was raised by his mother, who subsequently moved to Connecticut. Williams briefly attended, but did not graduate from, high school and was briefly employed at Macy's in 2012.[2] Williams reported using marijuana on a daily basis since he was 16, but never has attended any treatment for substance abuse. PSR ¶¶ 52-53, 64, 66, 68.

These bleak facts are partly illuminated by the concern and devotion of Williams' mother, who has had the unenviable experience of witnessing two of her three children incarcerated on serious federal crimes. In her letter to the Court, Mrs. Stewart writes:

> Giving birth to Mark was one of the most happy and memorable day of my life. I did my utmost best to nurture and care for him and guide him in the most positive lifestyle to contribute to a healthy society.
>
> Mark is only25 yrs and has a bright future ahead of him. I am begging you to be lenient in sentencing so he will have a second chance at life and accomplishing his dreams and aspirations when he comes back to integrate with the outside world.

Exhibit A, letter from Racquel Stewart to the Honorable Alison J. Nathan (undated). (A copy of Ms. Stewart's letter and the others submitted on Williams' behalf are annexed collectively as Exhibit A to this submission in the order they are referenced.)

Williams reciprocates Ms. Stewart's affection for him, and indeed this provides some basis for a belief that he is capable of turning his life around once he has completed his sentence. In his letter to Your Honor, Williams writes the following:

> My name is Mark Williams born and raised in the bronx Ny (sic). I have a wonderful mother name[d] Racquel Stewart also a father by the name of Mark Williams. I have two brothers and three lovely nephew and niese (sic) who are my support system and is (sic) one

---

[2] The pre-sentence report variously describes Williams as having completed the 9th and 10th grades. PSR, at 2 and ¶ 66. Williams advises that he left high school in the 11th grade.

> of the reasons I wake up proud every day (<u>family</u>) is the most important thing to me in this world . . .
>
> \*\*\*
>
> . . . I have a strong support system that guides me also pushes me to do right in this world. No Im not perfect but then again who is in this world. I made a mistake that I truly wish I can take back everyday as I sit here at M.C.C. for my actions. I'm 25 years old and have a long life to live ahead of me. Which I woke up to realize and to cherish clearly because life is short and the path I was following is not how I want to live my life, not at all what so ever.

Ex. A, letter from Mark Williams to the Honorable Alison J. Nathan (undated).

Williams' girlfriend Nashae Henry's letter underscores the importance of family to Williams, discussing first Williams' relationship with Henry's son, then his relationship with Williams' chronically ill younger brother and Williams' grandmother:

> Mark doesn't have any children at the moment but the bond he developed with my son is unexplainable. From picking him up from school, helping with homework, reading bed time stories, talking about being a big kid and doing chores around [the] house to spending quality time with him at the park. Father figure I must say but it's his passionate ways and how family oriented he is that makes him a special person. . . .
>
> Mark has a younger brother name[d] Imani who is ill that I've seen touching moments with. Mark would always assist with his at home medications and doctor appointments. . . . Mark has a grandmother who's extremely worried about him and also uses to have assistance by him. He would take her to her doctor appointments, assist with her medications and spend genuine quality time with her.

Ex. A, letter from Nashae Henry to the Honorable Alison J. Nathan (Mar. 23, 2017). Williams' devotion to his family and friends, and their reliance on him, is a running theme in the letters to the Court. Former co-workers from several years ago, with whom Williams formed lasting friendships, have also submitted letters on his behalf, noting both his kindness and his strong work ethic. Ex. A.

Waking up every day in MCC, generally acknowledged as one of the toughest federal prison environments, is a sobering experience for even hardened criminals, much less a 25-year-old young man with no significant experience with incarceration. Alan Feuer and Joseph Goldstein, *El Chapo Complains About Conditions at Manhattan Jail*, N.Y. Times, Apr. 24, 2017, https://www.nytimes.com/2017/04/24/nyregion/el-chapo-complains-about-conditions-at-manhattan-jail.html?_r=0. The PSR notes that early on his incarceration he was disciplined on three separate occasions. *See* PSR ¶¶ 7-9. In fact, the two listed as occurring on May 19 and 24, 2016 arose out of the same incident and resulted in one punishment. Significantly, since then Williams has not committed any other infractions and to the contrary has received two

May 11, 2017
Page 4

_____

commendations for his exemplary conduct. These documents evaluate Williams' work as outstanding across the board and include this description:

> Mr. Williams, has expressed interest in participating and facilitating the Lead by Example group . . . he has worked hard to prepare for the classes by begin proactive with reading and formulating written material to be used in the group. His leadership abilities have served him well, and [he] faces the challenges with such grace, which he has grown into a model individual.

Ex. B.

While there is no certain way of predicting whether Williams will succeed in realizing his and his mother's shared hopes that he will successfully "integrate with the outside world," Exhibit A, the clear closeness of their relationship provides some basis to expect he will. Drawing on the various factors enumerated in 18 U.S.C. § 3553(a), we ask that the Court impose a sentence that takes into account the seriousness of his crimes as well as his comparatively young age and acceptance of responsibility.

Sincerely,

COZEN O'CONNOR

/s/

By:   J. Bruce Maffeo

JBM
Attachments

cc:   AUSA Rachel Maimin (*via ECF*)
      USPO James Mullen (*via e-mail*)