# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

---

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number
+1-212-455-2310

E-mail Address
mstein@stblaw.com

**SENTENCING MEMORANDUM**

BY ECF

July 12, 2017

Re:   *United States v. Burrell, et al. (Shavon Wright)*, No. 15-cr-95 (AJN)

The Honorable Alison J. Nathan
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Dear Judge Nathan:

  I respectfully submit this sentencing memorandum on behalf of my client, Shavon Wright, a defendant in the above-referenced matter.

  On April 4, 2017, Mr. Wright pleaded guilty to Count One of the Superseding Indictment (the "Indictment"). Pursuant to Count One of the Indictment, Mr. Wright pleaded guilty to participating in a racketeering conspiracy from 2007 through 2016, in violation of 18 U.S.C. § 1962(d). There is no statutory mandatory minimum term of imprisonment for this offense. Mr. Wright pleaded guilty pursuant to a plea agreement in which the Parties stipulated to a United States Sentencing Guidelines ("Guidelines") range of 21 to 27 months ("Guidelines Range"), which is based on a total adjusted offense level of 15[1] and a Criminal History Category of II. Under the

---

[1] In the plea agreement, the Parties agreed that a departure to base offense level 15 (from level 19) was warranted because certain of Mr. Wright's prior convictions were treated as prior sentences and not as part of the instant offense, pursuant to U.S.S.G. § 4A1.2(a)(1) and § 2E1.1, Application Note 4. The Parties agreed that this treatment would produce an anomalous result, thereby warranting a Guidelines departure, pursuant to U.S.S.G. § 2E1.1, Application Note 4.

July 12, 2017                                                                                              The Honorable Alison J. Nathan

terms of the agreement, the Parties stipulated that the underlying racketeering activity (the narcotics conspiracy), involved at least 40 kg but less than 60 kg of marijuana.

As the Court is aware, after the Supreme Court's decision in *Booker*, the Guidelines are but one of several factors that the Court must consider in determining a defendant's sentence.  *See United States v. Booker*, 543 U.S. 220 (2005).  Indeed, a district court "may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense."  *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).  The Second Circuit has recognized that in the post-*Booker* regime, a sentencing judge "has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime," and is "generally free to impose sentences outside the recommended range."  *Id.* at 188-89; *see also United States v. Thavaraja*, 740 F.3d 253 (2d Cir. 2014) (affirming a 108 month sentence where the Guidelines range was 360 months to life and the statutory maximum sentence was 240 months).

For the reasons set forth in this memorandum and the 18 letters submitted by Mr. Wright, his family, and his friends, I respectfully request that the Court impose a below-Guidelines sentence of time served.  This sentence is fair, just, and reasonable in light of the evidence of Mr. Wright's character and history, including (i) his perseverance in the face of a challenging upbringing; (ii) his devotion and positive contributions to his family and friends, including his son, siblings and mother; and (iii) his efforts and determination to work and be a productive member of society.  In addition, Mr. Wright has demonstrated a clear acceptance of responsibility.  Taken together, these factors demonstrate a lack of potential recidivism, and the proposed sentence is sufficient, but not greater than necessary, to effectuate the purposes of the criminal law.  *See* 18 U.S.C. § 3553(a).

### I.     Mr. Wright's Upbringing, Devotion to his Family, and Character Warrant Leniency

#### A.     Mr. Wright Had a Challenging Upbringing

Mr. Wright, age 25, was born in 1992 in the Bronx, NY.  His mother, Marilyn Wright, and his father, Rohan Valentine, never married and were not living together at the time of Mr. Wright's birth.  Mr. Wright has six siblings.  On his mother's side, Mr. Wright has two sisters, T.L. and E.L., age 17 and 14, respectively, and a 22-year old brother, Michael Kelly.  Mr. Wright also has three brothers on his father's side: Marquis and Lavar Valentine, 23 and 24, and Lamar Harris, age 30.  Mr. Wright spent his early years in a Bronx home with his mother, grandmother, brother and uncles.  When he was 8, his mother was able save enough money to move with her children into a new apartment.  *Letter from Shavon Wright (Ex. 1).*

Simpson Thacher & Bartlett LLP

July 12, 2017                                                                                                    The Honorable Alison J. Nathan

      Mr. Wright's father was not present in his youth and did not provide Mr. Wright's mother with financial support.  *See Letter from Shavon Wright (Ex. 1)* ("I used to be so mad at times because my father was never around.  When he did come around he would say 'I'm coming back to get you.'  But, days would turn into weeks, weeks into months and months into years.").  The impact on Mr. Wright of his father's absence remains evident today.  *Letter from Shavon Wright (Ex. 1)* ("However, no matter what [I] did our relationship never progressed to where [I] desired.  I wanted a father and son relationship, [I] wanted him to be present in my life like he was for my three brothers . . . .  But things didn't work out so [I] gave him space and loved him from a distance.  I will always be hurt there are no positive memories with my father as a child.").

      As a single mother trying to support her four children, Marilyn Wright worked long hours as a nurse's aide at Jacobi Hospital.  Ms. Wright's demanding work schedule often prevented her from spending time with her children, including Mr. Wright.  This, combined with his father's general absence from his life, effectively denied Mr. Wright a consistent parental presence in his formative years.  *Letter from Michael Kelly (Ex. 2)* ("Though my mom meant well, she would never be able to fill the void in [Mr. Wright's] life for a male role model.").  Even though Ms. Wright did her best to care for her children, providing even basic necessities was a constant struggle.  *Letter from Donna Wynder (Ex. 6)* ("[T]here were times when she was unable to secure adequate employment to provide basic needs such as food.").  Mr. Wright's memories of his mother's uphill battle to provide for her children remain poignant today.  *Letter from Mr. Wright (Ex. 1)* ("It hurt to[] see my mom cry some nights because there was no money to[] put food on the table, or nights that [s]he would go to sleep hungry but satisfied that she had fed us.").

      Mr. Wright was determined, even from a young age, to help provide for his family.  At the age of 12, he started working in order to help his family pay for essentials, "just to try and take a little pressure of[f] [his] mom."  *Letter from Shavon Wright (Ex. 1)*.  Mr. Wright worked various jobs—bagging groceries for elderly neighbors, shoveling snow, and working as a handy man—to help his family pay the bills.  *Letter from Shavon Wright (Ex. 1)*; *see also Letter from Towauna Cawley (Ex. 10)* ("Even as a little kid he always wanted to provide for everyone.  He picked up the role as the man in his house with his mom and little sisters and brothers . . . was always protecting everyone and putting his needs behind and others forward.").

      But Mr. Wright's role went far beyond financial assistance.  Mr. Wright also became a de facto father figure to his two sisters and brother.  *Letter from Shavon Wright (Ex. 1)* ("Me not having my dad around to help my mom, always had me thinking of ways to help my mom and younger siblings.").  By way of example, Mr. Wright would take his brother to school, pick his sisters up from daycare, and help them with their homework.  *See Letter from Shavon Wright (Ex. 1)*.  Mr. Wright's mother further notes that he always encouraged his sisters and brother to do their

school work and participate in athletics. *See Letter from Marilyn Wright (Ex. 5)*. Mr. Wright strived to be a positive role model for his siblings. Michael Kelly, his brother, credits Mr. Wright's guidance in his formative years as a major contributing factor to his academic and athletic success:

> Growing up, my brother has always been a positive role model in my life pushing me to succeed and work hard. No matter what, he has always encouraged me to excel in school and in basketball. I now attend Rochester College on a full basketball scholarship and I definitely can attribute my success because of [Mr. Wright].
>
> . . . Being the oldest of four [Mr. Wright] has always carried a lot of responsibility. Our mom was a single mom who worked long hours and nights to ensure my siblings and I had everything we needed. While she worked, Shavon stood with our two younger sisters and myself teaching us about life and how to be contributing members to society. He made sure to teach us the importance of school, hard work and even loyalty.

*Letter from Michael Kelly (Ex. 2)*.

Nevertheless, the immense burden of supporting his family from such a young age, compounded by the lack of a father figure, made "[g]rowing up . . . rough" for Mr. Wright. *Letter from Shavon Wright (Ex. 1)*; *see also id.* ("At the time as a young kid [I] felt that there was [a lot] of pressure on my shoulders."); *Letter from Donna Wynder (Ex. 6)* ("His father was not present in his life and [he] did not have a positive male role model to influence his mindset to achieve success."); *Letter from Marie Powell (Ex. 14)* ("He has a nice personality despite having a hard time growing up."). Adding to the weight of this burden, Mr. Wright's environment—outside of his mother's home—was rife with negative influences.[2] *Letter from Michael Kelly (Ex. 2)* ("We grew up around drug dealers and ex criminals, who served not only as neighbors but influencers in our life. Not having a father raise him, Shavon had to learn how to be a man from these men.").

### B. Mr. Wright Is Devoted to His Family and Friends

Despite his difficult childhood, Mr. Wright has always been dedicated to his family. As discussed above, from a young age, Mr. Wright has served as a support

---

[2]   Mr. Kelly notes that while Mr. Wright's environment may have contributed to his legal troubles, "it is essential to note that he never once let me fall with him." Mr. Kelly insists "Shavon is the reason why I am alive and doing well today," and that but for Mr. Wright's "guidance, love or concern for me I may have fell into the same trap." *Letter from Michael Kelly (Ex. 2)*.

Simpson Thacher & Bartlett LLP

July 12, 2017                                                                                           The Honorable Alison J. Nathan

system and father figure for his family members in times of need.  Indeed, Mr. Wright takes great pride in his siblings' success in life, and notes with joy that Michael is in college, T.L. is graduating high school, and his youngest sister E.L. is on her way to graduating high school as well.  *Letter from Shavon Wright (Ex. 1)* ("I do feel so good about that because me being on their backs plays a big role in [t]heir life and they still thank me for that.").  Nor was Mr. Wright's positive influence limited to his mother's children.  Marquis Valentine, Mr. Wright's younger brother on his father's side, describes him as "somebody I always looked up to growing up."  *Letter from Marquis Valentine (Ex. 7)* ("If I ever needed advice or somebody to talk to, he was always around to guide me in the right direction.").  Even Mr. Wright's *older brother*, Lamar Harris, describes his admiration for Mr. Wright, "because even though he was younger," he was "a natural leader" who "always acted like the big one to all of our siblings."  *Letter from Lamar Harris (Ex. 16)*.

   Mr. Wright's commitment and selflessness are exemplified by his relationship with his son.  Mr. Wright experienced what he calls "one of the happiest moments of my life" when, at the age of 20, his son D.W. was born.  *Letter from Shavon Wright (Ex. 1)*.  From day one, Mr. Wright has been invested in his son's life, providing him with financial and emotional support, even though Mr. Wright and D.W.'s mother, Acura Gardner, are no longer together.  More importantly, recognizing the void his father's absence left in his life, Mr. Wright is determined to succeed where his own father did not.  *Letter from Shavon Wright (Ex. 1)* ("Times were getting harder for me, and [I] did not have all the money, but [I] always invested my time into my boy.  I told myself that [I] would never make my son grow angry and mad at me, like [I] was with my father.").  Not surprisingly, Mr. Wright's dedication as a father is a prevalent theme in the letters submitted on his behalf.  *Letter from Donovan McIntosh (Ex. 12)* ("Through the years of my friendship with [Mr. Wright] the one thing that has truly stood out to me about his character is how much he loves and truly cares about his child."); *Letter from Jasmine James (Ex. 11)* ("He is a loving father to his son . . . He wants to be able to raise his son and be in his son['s] life due to the fact that he didn't get this opportunity when he was a young boy."); *Letter from Marie Powell (Ex. 14)* ("He is a loving father to his three year old son [D.W.] and would like to provide for him."); *Letter from Towauna Cawley (Ex. 10)* ("As an adult he has been very active in his son's life."); *Letter from Sheldon Todd (Ex. 9)* (describing Mr. Wright as a "great father"); *Letter from Kayante Woodburn (Ex. 15)* ("I also know that he's a very good father to his son."); *Letter from T.L. (Ex. 3)* ("One very important person that he has to live for is his son, [D.W.].").  Shatora Gardner, Ms. Gardner's sister and one of D.W.'s primary caretakers, confirms that Mr. Wright "loves his son."  *See* Pre-Sentence Investigation Report ("PSR") at ¶ 74, *United States v. Burrell (Shavon Wright)*, No. 15-cr-95, June 29, 2017, ECF No. 1484.  As his friend Donovan McIntosh observes, D.W.'s birth and the experience of being a father, has made Mr. Wright become a better man.  *Letter from Donovan McIntosh (Ex. 12)*.

Simpson Thacher & Bartlett LLP

July 12, 2017                                                                                      The Honorable Alison J. Nathan

      Mr. Wright's generous and caring nature is further exemplified by his relationship with Ms. Gardner, with whom he has strived to have a good relationship, despite their estrangement.  *Letter from Shavon Wright (Ex. 1)* ("My son's mother got sick really bad with cancer and even though we had our differences my love for her never changed.").  Mr. Wright recognizes the difficulties Ms. Gardner faces and his desire to help her care for his son is unwavering.  *Letter from Shavon Wright (Ex. 1)* ("I know [I] put more pressure on her because my son is not the only child she has to look after.  I want to pay her back with respect and time and the fruits of maturity that [I] have grown into.").

      The letters from Mr. Wright's friends and family consistently portray Mr. Wright as a positive influence who has always endeavored to help those around him.  *See, e.g.*, *Letter from T.L. (Ex. 3)* ("My brother is my role model.  Friends and family, including me, look up to him."); *Letter from Marilyn Wright (Ex. 5)* ("There [are] a lot of kids that look up to him because he always giving good advi[c]e and always playing basketball with kids in the park.").  Marquis Valentine, Mr. Wright's younger brother, acknowledges that his brother "made some wrong decisions in life that he will not make again," but nevertheless extols his brother's virtues as someone others look up to.  *Letter from Marquis Valentine (Ex. 7)* ("I honestly think he's a good role model for more than just me and a positive person[.]").

      Mr. Wright's encouragement and support of others extends beyond just his immediate family.  Sheldon Todd, a friend, describes the "positive impact" that Mr. Wright has had on him and others in the community: "From little children playing basketball in the park, transitioning to young men, and now adults; he has always been the one to think ahead and let us know what is right from wrong."  *Letter from Sheldon Todd (Ex. 9)*.  Towauna Cawley, a cousin, remembers how Mr. Wright "was always there to push [her] and keep [her] motivated," as she was working her way towards completing college.  *Letter from Towauna Cawley (Ex. 10)* ("Many times I wanted to give up but he was always there to keep me grounded, pushing and cheering me on when I needed someone to do so.").

      Mr. Wright's friends and family also depend on him as a source of emotional support.  *See, e.g.*, *Letter from T.L. (Ex. 3)* ("Anytime you needed someone to talk to, he always had a shoulder that you can lean on."); *Letter from Crystal Smith (Ex. 13)* ("Whenever I needed a[n] ear or a shoulder I could count on him.  No matter what."); *Letter from Towauna Cawley (Ex. 10)* ("He has always been dependable, someone that I can always count on to be there for me."); *Letter from Santi Long (Ex. 17)* ("I could always count on him for a helping hand, a shoulder to lean on, or just a simple escape from my own problems.").

      Furthermore, Mr. Wright has always exhibited a genuine concern for the elderly in his community.  Donna Wynder, Mr. Wright's godmother, reminisces how

6

Simpson Thacher & Bartlett LLP

July 12, 2017                                                                                             The Honorable Alison J. Nathan

Mr. Wright "always exhibited respect for elders," and remembers Mr. Wright's efforts to assist her late mother:

> My late mother and I lived on 219th Street, Bronx County New York; Shavon worked as a "bagger" earning tips from bagging customer's groceries; even delivered to their homes. He pushed a heavy shopping cart with bulk groceries from East Gunhill Road and White Plains Road to our home . . . His sweet demeanor and hard work was deeply inspiring. I begin to gain his trust which resulted to that of a mentoring and love.

*Letter from Donna Wynder (Ex. 6)*. Mr. Wright's mother also emphasizes Mr. Wright's respect and care for the elderly:

> If he sees a[n] elderly woman or man crossing the street he is the first on[e] to help them accross [sic] the street. Even if he is on the bus or train and the e[l]derly comes on and there is no seat he will get up and give up his seat.

*Letter from Marilyn Wright (Ex. 5)*. These actions are emblematic of Mr. Wright's caring attitude towards others in his community, the elderly in particular, and his generally positive perspective in life. *Letter from Shavon Wright (Ex. 1)* ("The one lesson learned was to respect my elders . . . . [I] learned that you should respect and have love and mo[s]t likely you will get it back in return. [I] know that this will get me far in life.").

      Finally, Mr. Wright is known for his jovial nature, and a good sense of humor—qualities that portend successful reintegration into society and adaptability in the work place. His younger sister, E.L., describes Mr. Wright as "the life of the party" at family functions, prompting "laughs and smiles when we're around him." *Letter from E.L. (Ex. 4)*; *see also Letter from Jasmine James (Ex. 11)* ("Shavon is a very funny and outgoing person. He loves to keep the people around him smiling at all times and is a big comedian when it comes to telling jokes."); *Letter from Marquis Valentine (Ex. 7)* ("He's really good with people and brings a joy when he comes around. Always laughing and telling jokes."); *Letter from Lennis Powell (Ex. 8)* ("[H]e is also very funny when you get to know him.").

      Despite Mr. Wright's incarceration, he has made every effort to remain involved in the lives of his friends and family. He emails his family every day and speaks with them by phone multiple times a month.

Simpson Thacher & Bartlett LLP

July 12, 2017                                                                 The Honorable Alison J. Nathan

### C.    Mr. Wright Is Determined to Work Hard and Become a Productive Member of Society

Mr. Wright has demonstrated a commendable and consistent work ethic.  As mentioned above, beginning from the age of 12, he seized any opportunities to work, including bagging groceries and shoveling snow, to help provide for his family.  *See, e.g.*, *Letters from Shavon Wright, Donna Wynder, and Towauna Cawley (Exs. 1, 6, 10)*.  When he grew older, despite their estranged relationship, Mr. Wright worked at his father's business (a West Indian restaurant), both out of a desire to see his father succeed, and in hope that it would build the relationship with his father that he so longed for.  *See Letter from Shavon Wright (Ex. 1)* ("I was going around and handing out promotional flyers and introducing him to online marketing and social media.  [I] was just happy to assist his dream of expanding his west Indian restaurant.").  Mr. Wright's efforts at his father's restaurant made a powerful impression on his younger brother, Marquis Valentine, who explains:

> All he ever wanted was for our fathers Jamaican restaurant to grow and make it on a bigger level.  We've worked with my dad since we were teens.  Shavon was real customer friendly, neat and on our down time went out handing out flyers or prepping just in case we got a rush.  I admired that and it always made me want to work harder no matter what career path I chose.

*Letter from Marquis Valentine (Ex. 7)*.  Following Mr. Wright's employment at his father's restaurant, he worked as a handyman, where he discovered a passion for working with his hands.  *See Letter from Shavon Wright (Ex. 1)* ("Growing up working with my hands was the type of job [I] liked.  I was in the wood shop program before and my time in the program showed me that building was the type of job [I] liked."); *Letter from Donna Wynder (Ex. 6)* ("He would solicit his 'handyman' abilities to local businesses and residents.").

Since his incarceration, Mr. Wright has displayed the same characteristic drive to work and improve himself when given the opportunities.  While at MCC, Mr. Wright has completed (i) the 6-month Non-Residential Drug Treatment Program, (ii) the Threshold Program, a non-residential, faith-based course, (iii) the 3-month Anger Management Program; and is currently enrolled in (iv) the Lead by Example Program.  *See Non-Residential Drug Treatment Program, Certificate of Achievement (4/28/17) (Ex. 23)*; *Threshold Program, Certificate of Achievement (1/27/17) (Ex. 22)*; *Anger Management Program, Certificate of Achievement (11/9/16) (Ex. 19)*.  Mr. Wright received a glowing work performance report for his Anger Management program, where he "took advantage of the opportunity to spend his time productively," and was "a good example for his peers." *MCC Work Performance Rating – Anger Management (12/9/16) (Ex. 21)*.

Simpson Thacher & Bartlett LLP

July 12, 2017                                                                                  The Honorable Alison J. Nathan

  Mr. Wright is also furthering his education with a GED prep course, following the same advice regarding the importance of education that he has often imparted to his family and friends. *See Transcript of GED Prep Course (12/6/16) (Ex. 20)*. Finally, Mr. Wright works in the Commissary at MCC, where his work ethic has been noticed by his supervisor, who says "[h]e consistently displays superior work ethics in his work assignments" and "communicates well with others." *MCC Work Performance Rating – Commissary Worker (5/18/17) (Ex. 24)*. Mr. Wright has thus made maximal use of his time at MCC, which has "provided [him] with the tools on how to be a productive role model in the community." *Letter from Shavon Wright (Ex. 1)*.

  Mr. Wright is focused on being a productive member of society and making a positive impact in the community upon his release. *See Letter from Shavon Wright (Ex. 1)* ("I also know that [I] need to be a participant in the solution."). Mr. Wright aspires "to live an honest and productive life so that [he] can be a blessing to [his] family and community . . . ." *Letter from Shavon Wright (Ex. 1)*. He hopes to earn a living by using the skills he has developed working with his hands. He also expresses a desire to focus on his education and his art when he is released. *See Letter from Shavon Wright (Ex. 1)*. Moreover, Mr. Wright has the persistence and determination necessary to meet these aspirations, no matter what obstacles he encounters after his release. *Letter from Lamar Harris (Ex. 16)* ("No goal was ever set to[o] high because he always told himself he could do anything and would always be the best at it. If he failed, he would do it over and over until he mastered what he was doing.").

  Crucially, Mr. Wright's rehabilitation will be aided by his friends and family, who, as demonstrated by their letters, have shown him unwavering support and believe he has skills that will aid him in pursuing a career. Donna Wynder insists that Mr. Wright "has the tools to succeed as a productive citizen," specifically noting he is "an excellent motorbike mechanic" and has "remarkable skills in woodworking." *Letter from Donna Wynder (Ex. 6)*. Mr. Wright's mother, similarly, is determined to "help[] him find a school to further his carpent[ry] skill." *Letter from Marilyn Wright (Ex. 5)*. Likewise, his friend Donovan McIntosh is eager to help Mr. Wright attain the necessary OSHA certifications in order to start a career in construction. *Letter from Donovan McIntosh (Ex. 12)* ("[W]ith my assistance [Mr. Wright] will obtain the certifications needed to obtain employment with [my] company" and "become a taxpaying citizen who provides for his family in a respectable and honorable way.").

  Mr. Wright's loved ones want to help him find work not merely because they care for him, but because they know their efforts will come to fruition. Mr. Wright values hard, honest work, and his experience over the last two years has only reinvigorated his work ethic. As Donna Wynder observes, Mr. Wright has "come to [the] full realization that he is his own man who can make positive choices in his life for greater good." *Letter from Donna Wynder (Ex. 6)*.

Mr. Wright's strength of character, and his ironclad support system, will ensure that he puts his mistakes behind him and leads a law-abiding life in the future.

## II.  A Sentence of Time Served Sufficiently Addresses the Needs for Deterrence and Punishment

Section 3553(a) provides that, in sentencing a defendant, a court should consider the need to impose a sentence sufficient, but not greater than necessary to "afford adequate deterrence" and "provide punishment for the offense."  18 U.S.C. § 3553(a)(2).  I respectfully submit that a below-guidelines sentence of time served is sufficient punishment for Mr. Wright.  This sentence comports with the sentencing recommendation in Mr. Wright's PSR.  PSR at 38, 40, *United States v. Burrell (Shavon Wright)*, No. 15-cr-95, June 29, 2017, ECF No. 1484 (recommending a sentence of time served and noting that Mr. Wright was "not involved in any acts of violence for the criminal enterprise").  Mr. Wright has already served over 13 months in prison since his incarceration for the instant offense on June 5, 2016.

A sentence of time served would be consistent with this Court's sentencing of Co-Defendants in this action, some of whom are similarly situated to Mr. Wright.  By way of example, the Court recently sentenced Richard Montague to time served.  Mr. Montague pled guilty under Count 2 of the Indictment to participating in a conspiracy to distribute 50 kilograms of marijuana.  Plea Hr'g Tr. 18:24-19:5, *United States v. Burrell (Richard Montague)*, No. 15-cr-95, Oct. 19, 2016, ECF No. 761.[3]  At the time of sentencing, Mr. Montague had only spent five months in MCC and his plea agreement stipulated a guidelines range of 18-24 months, based on an offense level of 15 and Criminal History Category of I.  At his sentencing hearing, the Court noted, *inter alia*, Mr. Montague's low level of culpability relative to other Defendants.  Sentencing Tr. 16:9-22, *United States v. Burrell (Richard Montague)*, No. 15-cr-95, Feb. 3, 2017, ECF No. 1072; *see also id.* at 8:19-9:9 (noting Mr. Montague was a "low-level" dealer who dealt only marijuana).  In addition, Joel Hargrove received a sentence of 366 days after he pled guilty to Count 1 of the Indictment for distribution of 20-40 kg of marijuana.  Mr. Hargrove had a stipulated guidelines range of 21-27 months.[4]  Similar to Mr. Hargrove and Mr. Montague, Mr. Wright pled to conduct involving only street-

---

[3]  With respect to plea and sentencing hearing transcripts, the dates cited refer to the hearing dates.

[4]  Mr. Hargrove has a base offense level of 16 and Criminal History Category I.  Sentencing Tr. 13:3-8, 31:7-9, *United States v. Burrell (Joel Hargrove)*, No. 15-cr-95, Jan. 26, 2017, ECF No. 1037; *see also* Plea Hr'g Tr. 27:17-21, *United States v. Burrell (Joel Hargrove)*, No. 15-cr-95, July 25, 2016, ECF No. 575.

July 12, 2017                                                                                    The Honorable Alison J. Nathan

level marijuana sales[5] and has a low level of culpability relative to certain other Co-Defendants.  Accordingly, a sentence of time served is sufficient punishment.

Even putting aside consideration of other sentences in this matter, it is clear that Mr. Wright does not require a lengthy prison sentence to appreciate the significance of his crime or to deter him from committing another crime in the future. He has accepted responsibility for his actions and spent the last year in jail reflecting on his past behavior and the devastating impact it has had on his family.  *See Letter from Shavon Wright (Ex. 1)* ("[I] have made some poor choices which had a massive impact on my family and my life. . . . Even though [I] have had a difficult life, [I] do accept responsibility for my wrong actions.  Because, [I] do know that it was wrong and [I] should have gone about things in a different way."); *see also Letter from Kayante Woodburn (Ex. 15)* ("Shavon deeply regrets his actions and has learned from the experience of being arrested and in jail."); *Letter from Santi Long (Ex. 17)* ("[S]peaking with Shavon he is very merciful and apologetic.").  Mr. Wright's remorse is particularly evident when he reflects on the impact his incarceration has had on his mother, who endured two surgeries this year.  It pains Mr. Wright that he was unable to come to her aid, as he has for so much of his life.  Mr. Wright feels "a tremendous amount of guilt that [he] was not present to" to comfort her and vows he will never "place [himself] in the position to be separated" from his mother or family again. *Letter from Shavon Wright (Ex. 1)*.

Perhaps most importantly, Mr. Wright's motivation to return to his son, and to be a source of support and positive influence in his life, is more than enough to deter him from committing another crime.  Mr. Wright's letter reflects his steadfast determination to excel in his role as a father:

> I miss my son so much and [I] want to show him how to grow into a young man, so that he could fulfill his potential.  I want to be there to tie shoe laces, bring him to school and coach him in athletics. I want to lead by example . . . to provide my son the life [I]never had. [A]nd [I] cannot show him any of the fatherly attention if [I] am incarcerated. This is why my focus is on making mindful choices.  Choices have consequences and [I] own my present circumstance, however [I] am learning from my errors.

*Letter from Shavon Wright (Ex. 1)*.

---

[5]     Mr. Wright did not plead to membership in the BMB gang.  Plea Hr'g Tr. 12:17-14:15, *United States v. Burrell (Shavon Wright)*, No. 15-cr-95, Apr. 5, 2017, ECF No. 1219.

Simpson Thacher & Bartlett LLP

July 12, 2017                                                               The Honorable Alison J. Nathan

      Mr. Wright's acceptance of responsibility, together with his resolve to support his family and his demonstrated ability to do so, confirm he is unlikely to commit another crime upon his release from prison.

### III.   Conclusion

      For all the foregoing reasons, I respectfully ask that the Court impose a sentence of time served. Should the Court determine, however, that additional imprisonment is warranted, I respectfully request that the Court recommend to the Bureau of Prisons that Mr. Wright be allowed to serve his sentence in a prison near Manhattan, New York, where most of Mr. Wright's family resides.

Respectfully submitted,

*/s/ M.J. Stein K.N.G*

Mark J. Stein

cc:   Rachel Maimin, Esq. (*By E-mail*)