UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA

                                                      15 Cr. 95 (AJN)

          -against-

LAMAR FRANCIS,

                                       Defendant.

------------------------------------------------------------------------ x

**SENTENCING MEMORANDUM FOR
DEFENDANT LAMAR FRANCIS**

                                    MICHAEL HUESTON, ESQ.
                                    *Attorney for Defendant Lamar Francis*
                                    16 Court Street, Suite 3301
                                    Brooklyn, New York 11241
                                    (718) 246-2900

Dated:      Brooklyn, New York
                 July 13, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA

                                                                    15 Cr. 95 (AJN)

          -against-

LAMAR FRANCIS,

                                                         Defendant.

------------------------------------------------------------------------ x

**SENTENCING MEMORANDUM FOR
DEFENDANT LAMAR FRANCIS**

**A.**     **Introduction**

       Defendant Lamar Francis places before the Court the following issues relating to his appropriate sentence pursuant to Fed. R. Crim. P. 32.

       On March 20, 2017, Mr. Francis pled guilty to Count One of a four-count indictment. Count One charges that Mr. Francis was a member of the Big Money Bosses ("BMB") street gang which constituted an enterprise as defined in 18 U.S.C. § 1961(4). *See* Presentence Investigation Report ("PSR") at ¶¶ 2 and 8. Mr. Francis' total offense level is 27; he has a Criminal History Category of I; and his advisory Guidelines range is 70 to 87 months. *See* PSR at ¶¶ 31-44, 75. The Probation Department recommends that Mr. Francis be sentenced to a period of 30 months of incarceration followed by two years supervised release. *See* PSR, Recommendation.

       While Mr. Francis appreciates the Probation Department's recommendation, he respectfully requests that the Court impose a non-Guidelines sentence of time served followed by two years supervised release. This would be reasonable considering the objectives of 18 U.S.C. § 3553(a), including Mr. Francis' history and characteristics, the

nature of the offense, the need for general and specific deterrence, the need to provide educational or vocational training, and to avoid sentencing disparities. In particular, Mr. Francis asks the Court to focus on his drug dependency and lack of youthful guidance, which converged to have a powerful influence on him. Inclusion of these factors in the calculation is consistent with Congress' mandate that sentencing courts take into consideration all relevant facts related to a defendant's background and history. The imposition of a sentence based upon a sentencing regime that fails to include critical information related to a defendant's background circumvents the intent of Congress.

**B.      Comments and Objections to the Presentence Report**

By letter dated May 26, 2017, counsel submitted a letter to the Probation Department detailing the defense's objections and comments to portions of the Pre-Sentence Report. *See* Docket, Document 1424. A copy of that letter is attached as Exhibit A.

**C.      Mr. Francis' History and Characteristics**

Information relating to Mr. Francis' background and characteristics is detailed in the PSR at ¶¶ 48-68, his letter to the Court, and his letters of support at Exhibits B and C respectively. The following discussion draws from this source material, and other material where noted.

Mr. Francis is a 26-year old citizen of the United States, and African American. He was born to the consensual union of LeFord Francis and Clover Picart. Mr. Francis attended the Bronx School of Law, Government and Justice until the 11th grade. He took GED preparation courses, but did not pass the actual exam.

Mr. Francis has a history of mental illness. In the third grade, Mr. Francis was diagnosed with bipolar disorder and his treatment was discontinued by his mother in the

6th grade.  Since his arrest and detention in this case, Mr. Francis has received mental health care.  Mr. Francis began smoking marijuana when he was 12.  At age 15, he participated in a drug treatment program but relapsed 18 months later.  Since his incarceration in this case, he has completed a Drug Abuse Education Course and Non-Residential Drug Treatment program, and is amenable to continued treatment.

Mr. Francis has a brother, a sister, a maternal half brother, and two paternal half-siblings.  He was reared solely by his mother in a very poor section of the Wakefield community in the Bronx.  His mother relied on public assistance to support their family.  Mr. Francis has lived his entire life in Wakefield.  According to the United States Census Bureau, the area of Wakefield where Mr. Francis grew up has a per capita income of $15,383, which is about half the amount in New York State, and a median household income of $33,708, which is about three-fifths of the amount in New York.[1]  His community is 64% African American; 31.7% percent of the population lives below the poverty level, which is 1.5 times the rate in New York; and 49% of children live in poverty.  *Id.*  Single mothers lead 49% of households, which is nearly double the rate in New York, while 31% percent of the adult population has not graduated high school.  *Id.*  Such condensed poverty results in psychological trauma during childhood development, leading to: hopelessness, depression, aggression, impulsivity, delinquency and a reliance on gangs to counteract feelings of despair and powerlessness.[2]

In his letter to the Court, Mr. Francis remembers being "brought up in a community where I had seen countless violence and drugs."  He remembers, "seeing my

---

[1] CENSUS REPORTER, *https://censusreporter.org/profiles/14000US36005039400-census-tract-394-bronx-ny/*.

[2] *See* articles at *www.justice.gov/defendingchildhood/pub-research.html* under "general" heading.

mother struggle to take care of my sisters and me.  We had to depend on welfare to survive.  It was hard growing up living in a one bedroom apartment with my mother, and two sisters."  As a child, Mr. Francis worked to help his family.  Mr. Francis' father was not in his life and provided no support.  This affected Mr. Francis deeply, and he shares in his letter, "I believe if I had a father figure around I wouldn't make the choices I made that led me to the streets.  I didn't have a father figure who could have sustained me with strength and guidance."

In his letter of support, Mr. Francis' half-brother, Omar Earlington, offers the following observation about how his younger brother came to this point in his life:

> Lamar and I are woven from the same fabric, but we were dealt remarkably different circumstances in life.  I was fortunate enough to have estranged myself from the environment in which Lamar was raised.  I believe that is why I am writing this letter on his behalf on not vice versa.  This by no means excuses the reason my brother stands before you today, because others have elevated from lower stations in life.  I do believe though that my brother possesses the natural intellectual capabilities to become more than a stati[stic] in our pen[]al system.  My little brother just lost his way and fe[l]l victim to the wrong crowd. I know that he has learn[ed] a great deal by being separate from his family for this extended period of time.

In his letter to the Court, Mr. Francis reflects on his own actions and choices, stating, "I lacked understanding that led to my wrong decisions.  I realize I was hurting myself, my community, and my family."

In their letters of support, Mr. Francis' family recounts Mr. Francis' role as a dedicated and devoted uncle who makes time for his family.  Mr. Francis' sister states, "Lamar's nieces and nephew really love their uncle.  Barring this instance he has play[ed] a positive role in their lives.  He has spent time teaching them to read, and trying to

4

[steer] them in the right directions." Mr. Francis' brother, Kamar Francis, shares with the Court that "Lamar is my children's favorite uncle…. Whenever, he comes over to visit them, he plays with them, even helps my son with his homework which requires a lot of [patience]…. He is such a wonderful uncle." Omar also describes his brother's importance to their family, stating "my little brother is one of the pillars of our family. [His] nieces and nephew really love him and wish he would be home to be a part of their lives." Omar adds, "my mother is very distraught at this time, because Lamar is there for her way more than I am. He is the glue that holds the family together."

Mr. Francis' friends describe him as a positive influence and solid friend. Lanel Smith writes that Mr. Francis encouraged him to go back to school and finish his degree, and described how, "[Lamar] has never left my side from the birth of my child until this very moment he has been there for me." Other friends write that Mr. Francis is an "affectionate and loving individual" and "a great guy with great abilities to prosper."

Mr. Francis had promise as a student, and wishes to become an electrician. In 2015 and 2016, Mr. Francis was employed by SLG Construction as a general laborer. His sister "recall[s] when Lamar was attending school he was recognized by his teacher as one of the smartest in his class" and that he had "a natural talent" and was "passionate" about engineering. She implores the Court to understand, "Given the opportunity I know Lamar will pursue a degree…. All Lamar's older siblings have attained at least our bachelor's degree, and I know that he has the natural ability to achieve the same." Omar wholeheartedly echoes his sister's belief. Mr. Francis' friend, Djamilah Diallo, remembers that "before Lamar was arrested . . . he got a job doing construction although he was working hard, and really long hours, he loved it."

5

On his own behalf, Mr. Francis writes, "I plan on going back to school, and furthering my knowledge in the construction field. I want to go home and start a trade as an electrician…. I felt like I was doing something fulfilling with my life. I am going to accomplish my G.E.D. then pursue my goal of becoming an electrician because I always have a passion for it."

Mr. Francis' family and friends know the affect this arrest and incarceration has had on him, and in their letters express their thoughts to the Court. His sister explains, "In speaking with Lamar since his incarceration I know that he has learn[ed] a lot. He now understands that surrounding himself with a better peer group is what he really needs. … He has a pure heart and given a second chance he would become an exceptional asset to our community and [to] society [as] a whole." Djamilah adds, "[Lamar] understands what he did was wrong and if he could change the past he would[]" and that "he has so much potential…." While, Mr. Francis' mother states, "I truly believe that Lamar can be an asset to [his] community if given another chance."

Most importantly, Mr. Francis is learning and growing from this experience. In his letter to the Court, he writes:

> I truly regret participating in drug activities. …
> Dealing drugs hurt the community, because people
> are stealing, selling their bodies, and doing
> whatever it takes to get the drugs. It hurts families
> when their loved ones take drugs, or is in jail for
> selling it. Selling drugs also hurt kids through birth
> defects, or when they see someone selling it, and
> think that's the right thing to do.

Mr. Francis further writes, he has been reading and has admitted to himself, "all the productive things I should have been doing, like furthering my education, and learning a trade in the electrician field." He states that being incarcerated has given him a sense of

improvement, and he is learning to be patient and not take life for granted. Finally, he wants the Court to know, "I plan on making my family proud, and to help others by showing them that the legal way of life will never land them in prison. I made bad choices by associating with the wrong people, and selling drugs…. I'm asking for another chance, this will be my first and last time in jail."

**D.      Offense Conduct and Adjustment to Incarceration**

Mr. Francis acknowledges that he was an associate of BMB, and agreed with members of BMB to sell cocaine base. He is best described as a non-violent offender.

Mr. Francis has been incarcerated at the Metropolitan Correctional Center since his April 27, 2016 arrest. He has no disciplinary infractions. His work supervisor describes him as a man who "has worked hard" with "leadership abilities" who has "grown" into "an outstanding worker, [who he] would recommend for community employment." *See* Metropolitan Correctional Center ("MCC") Work Performance Ratings, and Federal Bureau of Prisons Certificates attached at Exhibit D.

**E.      Mr. Francis' Sentence Must Not Be Greater Than Necessary to Achieve the Goals of 18 U.S.C. § 3553(a) and Should Take into Account His History and Characteristics**

Mr. Francis' offense of conviction results in a maximum sentence of 20 years imprisonment. The Court may impose a term of supervised release of no more than three years. Mr. Francis faces an advisory Guidelines range of 70 to 87 months imprisonment. The Probation Department recommends that Mr. Francis be sentenced to a period of 30 months of incarceration followed by two years' supervised release. Mr. Francis has been incarcerated nearly 15 months. He respectfully requests that the court impose a non-Guidelines sentence of time served followed by two years supervised release.

Even in the post-Booker era, the Sentencing Guidelines remain the Probation Department and Government's sentencing regime of choice in virtually every case. However, this Court is not required to impose a sentence based on the advisory Guidelines or based on any policy of the Sentencing Commission that circumvents the specific intent of Congress. *Pepper v. United States*, 562 U.S. 476, 501 (2011). In this case, a sentence at variance with the advisory Guidelines is appropriate because the Guidelines fail to include critical factors about Mr. Francis' background, which Congress mandated must be included in arriving at the sentence to be imposed. 18 U.S.C. § 3553(a).

Congress mandates that sentencing courts must consider the background and history of the offender in arriving at a sentence that is sufficient but not greater than necessary to reach the goals set forth in 18 U.S.C. § 3553(a)(2). The advisory Guidelines, on the other hand, say an individual's history and characteristics, such as his socio-economic status, lack of guidance as a youth, and drug and alcohol dependency are not relevant at sentencing, thus disregarding critical parts of a person's life. *See* Guidelines §§ 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction), 5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status), and 5H1.12 (Lack of Guidance as a Youth and Similar Circumstances). When a defendant's background and characteristics are ignored, marginalized, or reduced to second-class status, the goal of informative, individualized sentencing is not achieved and the objectives of Congress are subverted.

Understanding and acknowledging a defendant's background is critical because such knowledge assists courts in determining sentences that are sufficient but not greater

than necessary to reach the sentencing goals of Congress. Without such knowledge regarding the factors that influenced a defendant towards the commission of the offense, the defendant is left to the mercy of mathematical numbers that arrive at terms of incarceration with zero empirical relationship to either punishment or the causes that brought the offender before the court for sentencing. *See United States v. Diaz*, No. 11 Cr. 00821 (JG) 2013 WL 322243, at 4-11 (E.D.N.Y. Jan. 28, 2013).

The illogic of this is shown by the fact that the advisory Guidelines arrive at sentencing ranges that include an offender's criminal history – to aggravate their sentences – but fail to include any relevant mitigating circumstances in an offender's background. This lopsided formula fails to balance the important interplay between aggravating and mitigating sentencing factors, which must be considered in order to arrive at a sentence that complies with the Congressional mandate requiring an accurate and complete consideration of an offender's background.

In this case, a sentence at variance with the Guidelines is appropriate because a Guidelines sentence fails to take into account critical factors, here Mr. Francis' socio-economic status, mental health, lack of youthful guidance, and drug dependency, which Congress mandated must be included in arriving at the sentence to be imposed. 18 U.S.C. § 3553(a). Congress makes no exception.

Mr. Francis is not responsible for the circumstances he was born into, but he is, of course, not blameless. His sentence must balance the circumstances relevant to his life history and provide rehabilitation. Judge Jack B. Weinstein candidly observed how adverse socio-economic conditions affect children and their relationship with the criminal justice system:

9

> Had the defendants been raised by cohesive, adequate families, most of the difficulties they encountered would probably never have come to pass.  Well-resourced, attentive parents would have had the knowledge, ability, and insight to protect their children from many of the difficulties that befell these defendants in their youth, to obtain assistance to deal with their psychological and physical problems, and to obtain crucial opportunities for education, work, and personal growth.  Even those with learning disabilities would likely have been provided available resources to overcome their impairments at public expense.  That the defendants were born into circumstances without such support is at the center of this tragedy.

*United States v. Bannister*, 786 F. Supp. 2d 617, 688-89 (E.D.N.Y. 2011).  Mr. Francis grew up in a single parent household, where he had no relationship with his father and his mother relied on public assistance benefits to provide for her children.  Mr. Francis never had the opportunity to attend well-resourced, much less elite schools.  Mr. Francis' sentence should reflect his history and a variance from the advisory Guidelines should be applied.

Furthermore, to cope, Mr. Francis began to smoke marijuana at the age of 12.  While drug or alcohol dependence or abuse is not considered relevant under the Guidelines, *see* Guideline § 5H1.4, an effort to end drug or alcohol dependence through rehabilitation may be.  *United States v. Maier*, 975 F.2d 944, 948 (2d Cir. 1992) (the Second Circuit held that the awareness of one's drug dependence "and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society," is a reason for an adjustment).  Mr. Francis expressed at his presentence interview his willingness to participate in drug treatment, and the Court should consider this factor.

Mr. Francis is in twenties, while age alone is not ordinarily relevant in determining whether a defendant should receive a variance, *see* Guideline § 5H1.1, Mr. Francis' age should be viewed in the context of the other factors that make up his

offender characteristics.  While not a child, he was still vulnerable to the impulsivity associated with youth.  This youthful impulsivity and lack of ability to make good decisions was compounded by a caustic environment that presented highly negative influences during his adolescence.  Mr. Francis has matured since he committed the offense and through sustained and monitored effort, there is a more constructive alternative to further incarceration.  *See e.g. United States v. Smith*, 909 F.2d 1164 (8th Cir. 1980) (downward departure justified based on age where the defendant was sentenced as a career offender for crimes committed shortly after his nineteenth birthday).

Mr. Francis' mental health is another basis for a non-Guidelines sentence, pursuant to 18 U.S.C. § 3553(a)'s mandate that sentencing courts consider the need to provide medical care, or other treatment.  Even under the Guidelines regime, a defendant's physical condition "may be relevant in determining whether a departure is warranted, if, individually or in combination with other offender characteristics, it is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." *See*, Guideline § 5H1.4; *see also*, *United States v. Rioux*, 97 F.3d at 663 (2d Cir. 1996) (upholding district court's conclusion that, in combination, defendant's medical condition and charitable and civic good deeds warranted downward departure).

Mr. Francis continues to reflect on how his actions have hurt his community, family, and loved ones, which serves as a deterrent.  The imposition of a sentence of time served followed by supervised release, in itself, is highly likely to deter Mr. Francis, and, under Guideline § 4A1.3, the likelihood that a defendant will commit further offenses is an issue the Sentencing Commission views as important.

After *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts must consider "the need to avoid unwarranted sentencing disparities among defendants with similar conduct." 18 U.S.C. § 3553(a)(6).  Thus, sentencing disparities are now properly considered by sentencing courts in their exercise of sentencing discretion.  *United States v. Florez*, 447 F.3d 145, 157 (2d Cir. 2006); and *United States v. Wills*, 476 F.3d 103, 110 (2007).  Here, the Court has already sentenced Mr. Francis' co-defendants Michael Francis, Joel Hargrove, Michelle Jemison, Richard Montague, Dante Plummer, and Bradley Wilson to periods of incarceration of less than two years.  And although each individual's circumstances have unique factors, these sentences demonstrate that there is a segment of defendants in this case whose circumstances warrant such consideration, and the defense respectfully suggests that Mr. Francis is among this group.

Finally, as noted, Mr. Francis has been incarcerated at the Metropolitan Correctional Center for almost 15 months.  His confinement conditions may be considered in determining his appropriate sentence.  *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) ("pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures.")  *See e.g. United States v. Hernandez-Santiago*, 92 F.3d 97, 101 (2d. Cir. 1996) ("harsher incarceration" in state facility as compared to federal facility justified sentencing adjustment; the government did not challenge adjustment on appeal); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (pre-sentence conditions "effectively enhanced, to a disproportionate degree, the level of punishment contemplated to be experienced by inmates in the typical case during the period of incarceration prescribed by the Guidelines.")

**F.     Conclusion**

We respectfully urge the Court to vary from the advisory Guidelines range based on the 18 U.S.C. § 3553(a) factors set forth in this memorandum and impose a sentence of time served followed by two years of supervised release. That is a significant life-changing penalty that amply punishes Mr. Francis for his offense conduct, maintains and encourages respect for the administration of justice, and serves as individual and general deterrents. It is, in short, a sufficient, but not greater than necessary sentence.

Mr. Francis respectfully reserves the right to raise additional issues, if necessary, at the time of sentencing.

Dated:     Brooklyn, New York
           July 13, 2017

                              Respectfully submitted,

                              _____s/_____
                              MICHAEL HUESTON, ESQ.
                              *Attorney for Defendant Lamar Francis*
                              16 Court Street, Suite 3301
                              Brooklyn, New York 11241
                              (718) 246-2900

## DECLARATION OF SERVICE

Michael Hueston, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

On July 13, 2017, I served the annexed Sentencing Memorandum and Exhibits on:

> Rachel Maimin, Drew Johnson-Skinner
> Hagan Scotten, and Jessica Feinstein
> Assistant United States Attorneys
> United States Attorney for
> Southern District of New York
> *The Silvio J. Mollo Building*
> One Saint Andrew's Plaza
> New York, New York 10007

    [X]    BY ELECTRONIC CASE FILING
    [ ]    BY EMAIL
    [ ]    BY HAND
    [ ]    BY FIRST CLASS MAIL
    [ ]    BY FACSIMILE WITH PERMISSION


Dated:    Brooklyn, New York
          July 13, 2017

                            ___s/_____
                            MICHAEL HUESTON, ESQ.
                            *Attorney for Defendant*
                            16 Court Street, Suite 3301
                            Brooklyn, New York 11241
                            (718) 246-2900