UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ABDULLAH YODA,

           Defendant.

---

No. S2 15-cr-95-017 (AJN)

## SENTENCING MEMORANDUM
## ON BEHALF OF DEFENDANT ABDULLAH YODA

Roberto Finzi
Paul, Weiss, Rifkind, Wharton &
   Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
rfinzi@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3311

WRITER'S DIRECT FACSIMILE
212-492-0311

WRITER'S DIRECT E-MAIL ADDRESS
rfinzi@paulweiss.com

July 13, 2017

**BY ECF AND HAND DELIVERY**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

                Re: *United States* v. *Abdullah Yoda*
                    S2 15-cr-95-017 (AJN)

Dear Judge Nathan:

        As CJA counsel to Abdullah Yoda, I write in aid of his sentencing, which is currently scheduled for July 20, 2017 at 10:00 a.m. For the reasons set out below, and recognizing the seriousness of Mr. Yoda's offense, we respectfully request that the Court impose a sentence of time served, or slightly less than 13 months' imprisonment. We make this request understanding that a straightforward application of the United States Sentencing Guidelines would suggest a slightly higher sentence, but believing that an examination of the relevant sentencing factors under 18 U.S.C. § 3553 justifies the below-Guidelines sentence being sought.

The Honorable Alison J. Nathan
July 13, 2017
Page 2

        Mr. Yoda is 21 years old. He made a series of poor decisions that led to his selling marijuana as part of the charged racketeering conspiracy. Having literally turned 21 in prison, he has had a real opportunity—the first in his life—to reflect on his future. On the one hand, he is disappointed with himself and the choices he has made. In particular, he regrets the decisions that have kept him from his family for the last year, and in particular from his father, Hamado Yoda, ████████████████████████████████████████████████. On the other hand, he is—for the first time in his life—quietly optimistic about his future. As demonstrated below, Abdullah has thrown himself into virtually every self-improvement program the MCC has to offer, making the conscious decision to use his time in prison as an opportunity to learn and grow. We believe that his "record" of development over the last year reflects Abdullah's first steps toward becoming the man he wishes to be.

        Accordingly, and for all of the reasons set out below, we respectfully submit that a sentence of time served (just under 13 months) is appropriate on the unique facts of this case.[1]

## I. A Sentence of Time Served Is Supported by Certain Unique Characteristics of Mr. Yoda's Personal Background

        The history and characteristics of Mr. Yoda—including his particularly difficult childhood, his unique role within his family, and the absence of a significant criminal history (including in particular the lack of any prior felony convictions)—weigh in favor of a sentence of time served.

### A. Mr. Yoda's Difficult Upbringing

        Mr. Yoda was born on ███████ 1996, in the Bronx. (Yoda Pre-Sentence Investigation Report (hereinafter "PSR") ¶ 61.) He is the youngest of five siblings, and his older brother, Mashud Yoda—whom Abdullah inevitably looked up to as a young man—is a defendant in this case. (Id.) Mr. Yoda's childhood and adolescence reflect almost no time spent in anything approaching a traditional family setting. When he was six years old, and while his father remained in the United States, he moved with his mother and siblings to Accra, Ghana. Several years later, the family moved again (and again without their father) to Ouagadougou, Burkina Faso. (Id. ¶ 62.) As a young child in Africa, Mr. Yoda experienced poverty of a kind largely unknown in the United States. His mother and his four siblings lived in a home without running water and electricity, and he slept on a dirt floor under a metal-sheeted roof that leaked when it rained. (Id.

---

[1] We note that, based on our calculation under relevant Bureau of Prisons guidelines, Mr. Yoda is currently entitled to 56 days of good time credit. *See* Bureau of Prisons, Sentence Computation Manual, Program Statement No. 5880.28, at 40 (1999). This would make a sentence of time served the equivalent of a sentence of 14½ months.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Alison J. Nathan
July 13, 2017
Page 3

¶ 63.) He lacked adequate food and clothing.[2] (*Id.*) In light of the severity of the conditions, Mr. Yoda and his brother—both U.S. citizens by birth—eventually sought assistance at the U.S. Embassy in Ouagadougou, and the embassy subsequently arranged for Mr. Yoda (who by then was 12 years old and had lived in Africa from ages 6 to 12) to return to the United States with his brother, where they would live with Mr. Yoda's father and his sister, Zybaida Yoda (who herself had previously returned to the U.S.). The rest of the family remained behind. (*Id.* ¶¶ 64, 67.)

While life in the Bronx was in many respects an improvement over the deprivations he suffered in Africa, his new environment also proved challenging, financially and emotionally. Mr. Yoda's father—███████████████—lost his job as a taxi driver. ███████████████████████████████████████████████████████████ Again, Mr. Yoda found himself going to sleep hungry. (*See* Ex. A, at 3.) To do what he could to support the family, Mr. Yoda shoveled snow and washed cars in the neighborhood. (*Id.*) While he strove to make the best of his new life, those closest to him saw that he was deeply affected by the absence of his mother. (PSR ¶ 67.)

Unfortunately, life in Mr. Yoda's neighborhood left him exposed to (and eventually the victim of) regular street crimes and violence. (Ex. A, at 4.) On January 12, 2012, at age 15, Mr. Yoda and his friend had picked up pizza for his friend's mom and were walking through a park when they were chased by a group of boys. (*Id.*) ████████████████████████████████████████████████████████████████████████████████

### B. Mr. Yoda's Role in His Family and Community

Despite growing up with limited means in a series of difficult environments, Mr. Yoda's cheerful (if sometimes child-like) disposition and willingness to lend a hand made him well-liked both within his family and within the larger community. A consistent theme in the letters submitted to the Court is his kindness and his consistent willingness to devote his time to assist others.

---

[2] ████████████████████████████████████████████████████████████████████████████████

The Honorable Alison J. Nathan
July 13, 2017
Page 4

The letter written by Mr. Yoda's father describes Abdullah's role as extending beyond everyday chores to helping his father cope with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Yoda's father notes that Mr. Yoda frequently ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B.) Mr. Yoda's father also describes the profound emotional void he has suffered as a result of Mr. Yoda's incarceration, explaining that he is "very depressed now that Abdullah is not home because I have no one to talk to every night like I used to." He writes: "[L]ife ha[s] no longer had the same meaning to me. . . . When Abdullah was home he gave me vision as he was my eyes and light." In fashioning a sentence, this Court can and should consider the significant positive impact Mr. Yoda has had on his father. *See United States* v. *Charman*, No. 08 Cr. 1154-01 (RWS), 2009 WL 4858047, at *4 (S.D.N.Y. Dec. 9, 2009) (granting a below-Guidelines sentence of time served, based, in part, on defendant's family situation); *see also United States* v. *Davis*, No. 07 Cr. 727 (HB), 2008 WL 2329290, at *1, 5 (S.D.N.Y. June 5, 2008) (granting a below-Guidelines sentence based on the "significant positive impact" defendant had on his family).

Abdullah Yoda is not just a good son. He is also loved by his broader community. The many people who submitted letters on Mr. Yoda's behalf are remarkably consistent not only in the affection they have for Mr. Yoda, but also in how they describe him: quiet, easygoing, thoughtful, dependable, kind, respectful, sweet, and friendly. Several of the letters describe him as someone who loves elders and children, and who is always willing to lend a hand. Mr. Yoda's friend Lamar Carr, for example, writes that Mr. Yoda routinely helps elderly neighbors shovel snow and carry groceries from the supermarket. (Ex. D.) Several other letters indicate that Mr. Yoda is also a reliable babysitter. Christina Binns, who considers Mr. Yoda to be like a brother to her, writes that Mr. Yoda is "always willing to help me out with anything I ask him for, from picking up my kids to babysitting while [I] run a quick errand." (Ex. E.) As she puts it, "Everyone loves having Abdullah around, especially my kids. He is always in a great mood, [which] is why the kids love when he comes around." (*Id.*) As family friend Kaswella Anderson notes: "If Abdullah can help you[,] he will[,] as he has always displayed to my family and [me]." (Ex. C.)

Many of the letters also highlight the positive impact that Mr. Yoda has had on the kids in his neighborhood, even in the face of his own struggles. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, Mr. Yoda serves as a big-brother figure to many younger children in his neighborhood. Myasia Moody notes that Mr. Yoda "has always been a great role model to my young children by taking them to the park [and] encouraging them to go to school and stay[] out of trouble." (Ex. G.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Friend Isaiah Goodson discusses how Mr. Yoda helped him transition into a foreign environment:

> Growing up in foster care was tough[,] especially in a new place[,] but Abdullah Yoda really made me feel comfortable. . . . He was basically family. . . . Not only was he a friend, he was my brother. He was an all around good person[,] very generous and caring. Whenever I needed something[,] he was right there.

(Ex. I.) Despite facing adversity, Mr. Yoda has never wavered in encouraging the people that look up to him to live productive and law-abiding lives. Not surprisingly, the letters also demonstrate the tremendous impact of Mr. Yoda's absence on his community. As Kaswella Anderson notes:

> [Mr. Yoda's] incarceration feels as if one of my family members is incarcerated. He is viewed by my family as one [of] our own. My brother in law and children no longer have their friend to play with and grow with. His incarceration affects me as well because my children are sad they can no longer see him often, and play with him.

(Ex. C.) Like Mr. Yoda's father, members of Mr. Yoda's community have been tangibly affected by his incarceration. We thus echo the sentiment set out in Ms. Binns' letter, which asks that Your Honor "consider how important Abdullah's presence is to [Ms. Binns] and those he cares about." (Ex. E.)

### C. Mr. Yoda Has a Limited Criminal History

Unlike many who grew up under similar circumstances, and unlike many of his co-defendants, Mr. Yoda has a relatively limited criminal history. As summarized in the PSR, Mr. Yoda has three prior misdemeanor convictions and no felony convictions.  The nearly thirteen months that Mr. Yoda has already spent in confinement in connection with the instant offense thus represent his first real term of imprisonment.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Alison J. Nathan
July 13, 2017
Page 6

Accordingly, and while we do not object to the PSR's mechanical calculation of Mr. Yoda's criminal history score, we respectfully submit that his score (and the resulting sentencing range) overstate his criminal record. Without minimizing the gravity of any of his misdemeanor offenses, we note that Mr. Yoda's three previous infractions result in only two criminal history points under the Guidelines. Mr. Yoda's criminal history score, however, was effectively doubled because he committed the instant offense while on conditional discharge. Although Mr. Yoda's Criminal History category of III is thus technically correct, we note the substantial impact of the two additional points added to Mr. Yoda's total score.

## II. A Sentence of Time Served Is Appropriate Given Mr. Yoda's More Limited Involvement in the Conspiracy, and the Need to Avoid Sentencing Disparities

As discussed further below, Mr. Yoda's underlying offense involved selling marijuana. Without in any way minimizing this offense, particularly in the context in which it took place, selling marijuana is among the least serious conduct attributed to the BMB conspiracy. After setting aside several allegations that the government concedes cannot be proven by a preponderance of the evidence and therefore should not be considered at sentencing (and indeed should not have been included in the PSR at all),[3] the record in this case shows that the time Mr. Yoda has already spent in prison represents a sentence sufficient to meet the needs of § 3553.

### A. Offense Conduct

On March 7, 2017, Mr. Yoda appeared before Magistrate Judge Ronald L. Ellis and pleaded guilty, pursuant to a plea agreement, to one count of participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Mr. Yoda's underlying offense for this racketeering count is a conspiracy to distribute and possess, with intent to distribute, between 60 kilograms and 80 kilograms of marijuana. The parties stipulated to an advisory Guidelines range of 27 to 33 months and an applicable fine of between $10,000 and $95,000. Mr. Yoda's PSR determined the applicable guidelines to be 30 to 37 months as a result of an additional criminal history point having been added for a juvenile misdemeanor conviction that took place less than five years prior to the instant offense.[4] The Probation Department recommended a below-Guidelines sentence of 24 months.

---

[3] As noted in the PSR, the defense respectfully objects to (and intends to ask the Court to strike) those portions of paragraphs 31, 33 and 34 of the PSR that the government, by its own admission, "cannot prove . . . beyond the preponderance of the evidence.").

[4] We do not object to the Probation Department's calculation of Mr. Yoda's criminal history score.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Alison J. Nathan
July 13, 2017
Page 7

We respectfully submit that the Guidelines range stipulated in the plea agreement, and even more so the Guidelines range calculated by the Probation Department, leads to a sentence longer than necessary in Mr. Yoda's case. Although the Indictment alleges that BMB's racketeering activity began in at least 2007 and lasted until 2016, Mr. Yoda's participation was limited to selling marijuana (Yoda Plea Hearing, Dkt. 1142, at 13), and he was not involved in the most dangerous aspects of the racketeering conspiracy, including acts of violence, use of firearms, or dealing crack cocaine.



### B. Relative Culpability

In determining a fair sentence for a defendant, a court may consider the sentences given to his or her co-defendants. *See United States* v. *Florez*, 447 F.3d 145, 158 (2d Cir. 2006) ("[I]f sentencing disparities between co-defendants are properly considered, the weight to be given such disparities, like the weight to be given any § 3553(a) factor, is a matter firmly committed to the discretion of the sentencing judge . . . ." (internal quotation marks omitted)). As Your Honor is aware, this case involves sixty-four defendants, approximately twenty-seven of whom have already been sentenced. As the respective culpability and characteristics of the previously sentenced defendants vary significantly, it may be useful to "benchmark" (however imprecisely) Mr. Yoda's conduct against the conduct of co-defendants sentenced to date.

Mr. Yoda is one of only a handful of defendants in this case for whom the underlying offense in the racketeering conspiracy relates primarily to selling marijuana. Each of the other defendants who fall into this category received significantly below-Guidelines sentences.



---

5

The Honorable Alison J. Nathan
July 13, 2017
Page 8



### III. The Remaining § 3553(a) Factors Support a Sentence of Time Served or Are Otherwise Neutral

The remaining § 3553(a) factors either weigh in favor of a sentence of a year and a day or are inapplicable here. Specifically, the "need for the sentence imposed" under § 3553(a)(2) weighs in favor of a sentence of time served. In analyzing § 3553(a)(2), courts may consider the need for the sentence to: (a) provide just punishment; (b) afford adequate deterrence; and (c) provide the defendant with education, training or care. For Mr. Yoda, his period of incarceration in connection with this case represents the only meaningful amount of time he has spent in jail. We respectfully submit that this time has effectively served as his own personal "wake-up" call. He understands that he is at a critical juncture in his life, and that for all intents and purposes he will come out of prison a man, not a boy. While he regrets that he will go through life with the unfortunate stigma of a felony conviction—itself a tremendous burden for a young black man—he understands that upon coming out of jail, he will get a second chance that not everyone is granted.

For this reason, and since being incarcerated, Mr. Yoda has availed himself of nearly every educational opportunity made available to him by the MCC, including the Focus Forward Project and Toastmasters International, as well as GED

classes and various other short-term programs, including a project for Women's History Month. (*See* Ex. L; Ex. K.) Mr. Yoda has also worked as a Unit Group Facilitator and Sanitation Orderly, and his performance has been rated "outstanding" in almost every category. (Ex. J.) His responsibilities include facilitating a study group in his unit at MCC, and Mr. Yoda's performance review notes the "positive atmosphere" that Mr. Yoda creates. (*Id.* at 1.) The review also comments on Mr. Yoda's "superior work ethics," communication skills, and ability to "face[] the challenges of his environment with such grace, which has united the unit." (*Id.*)

The letter submitted by Megan Burns and Brett Niebling—who are, respectively, the Executive Director and Volunteer Class Facilitator of the Focus Forward Project—echoes many of the sentiments contained in the letters submitted by family and friends. Ms. Burns and Mr. Niebling describe Mr. Yoda as "respectful and deferential," one of their "most consistent and enthusiastic students" (one who never missed a single class), and "easily the most positive and cheerful student" they had. (Ex. M, at 1.) But perhaps more importantly, they note Mr. Yoda's relentless positive attitude and his determination to move forward even in the face of adversity. They note that although Mr. Yoda is "torn by his mistakes, he would focus [his] thoughts on the future and ways he could improve." (*Id.* at 2.) At the end of the program's goal-setting workshop, Mr. Yoda conveyed his desire, upon reentry, to take care of his family, find a steady job, and invest in a home where all of his family members can live in together.

While simply communicating positive goals is a significant first step, Ms. Burns' and Ms. Nieblings's letter contains an example of how Mr. Yoda is ready to put words into action:

> The best example of [Mr. Yoda's optimism and determination] was during our public speaking lesson where each student had to write a speech and present in front of the class. Clearly nervous, Abdullah stumbled through it. . . . We could tell Abdullah was a bit embarrassed and not happy with his performance. So during the final class when there was discussion around who should speak during the graduation ceremony to represent the students, Abdullah did not shy away from the challenge. He took the responsibility of speaking on behalf of his classmates. Many were excited and even nervous to see how he would perform this time around, given the stage and responsibility was much bigger. But Abdullah put all nerves to rest when he began. Speaking confidently, he detailed everything he and his classmates learned, and had a smile on his face throughout. . . . The speech ended with a standing ovation from his classmates, class facilitators, and MCC staff.

(*Id.* at 2.)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Alison J. Nathan
July 13, 2017
Page 10

### IV.    Conclusion

   Mr. Yoda has made mistakes in his life. He has suffered tremendously, at times based on events beyond his control, and at times based on bad decisions he must own. And while he clearly disappointed the many people that look up to him as a role model, we respectfully submit that he will take advantage of opportunities to make up for his wrongs. Indeed, the record suggests that he has already begun that process. Accordingly, and for all the reasons set forth above, we respectfully request that Your Honor impose a sentence of time served.

Respectfully submitted,

Roberto Finzi

cc: AUSA Rachel Maimin (via email and U.S. Mail)