UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :     Case No. 15 Cr. 95 (AJN) |
| | : |
| RAI THOMAS, | : |
| | : |
| Defendant. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM ON BEHALF
## OF DEFENDANT RAI THOMAS

Glen G. McGorty
Arlen Pyenson
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 895-4246

*Attorneys for Mr. Thomas*

## <u>TABLE OF CONTENTS</u>

I.     Procedural History .................................................................................................1

II.    Mr. Thomas' Personal Background and Characteristics......................................3

    A.  Childhood and Family Life .......................................................................3

    B.  Mr. Thomas' Education and Work Experience .........................................4

    C.  Substance Abuse History .........................................................................5

III.   Sentencing .........................................................................................................5

    A.  Overview of Sentencing Factors .............................................................5

    B.  The Section 3553(a) Factors ....................................................................7

        1.   Nature and Circumstances of the Offense and History and
            Characteristics of Mr. Thomas.......................................................7

        2.   Applicable United States Sentencing Guidelines Range .........................9

        3.   The Need to Avoid Unwarranted Sentencing Disparities.....................11

        4.   Purposes of Sentencing ........................................................................12

IV.   Conclusion .......................................................................................................12

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Gall v. United States,*
    552 U.S. 38 (2007)...........................................................................................5, 6

*Kimbrough v. United States,*
    552 U.S. 85 (2007)................................................................................................5

*Nelson v. United States,*
    555 U.S. 350 (2009) .............................................................................................6

*Rita v. United States,*
    551 U.S. 338 (2007)..............................................................................................6

*United States v. Adelson,*
    441 F. Supp. 2d. 506 (S.D.N.Y. 2006)................................................................6

*United States v. Booker,*
    543 U.S. 220 (2005) .........................................................................................5, 11

**Codes and Statutes**

18 U.S.C. § 3553(a) ................................................................................. *passim*

21 U.S.C. § 846(b)(1)(C) .................................................................................1

**Other Authorities**

U.S.S.G. § 1B1.1 (Nov. 2016) ......................................................................11

U.S.S.G. § 2D1.1 (Nov. 2016).........................................................................9

U.S.S.G. § 3E1.1 (Nov. 2016) ......................................................................10

U.S.S.G § 5C1.2 (Nov. 2016) .........................................................................9

Defendant Rai Thomas, through his appointed counsel, respectfully submits this Sentencing Memorandum to assist the Court in determining an appropriate sentence in this matter.

In April 2016, Mr. Thomas was charged as part of a major takedown of 120 members and associates of two Bronx-based street gangs engaged in racketeering, narcotics, and firearms offenses.[1]  As sometimes occurs in such substantial law enforcement operations, some individuals who were not engaged in the most serious, core offenses of the case and who were not gang members were swept up in this prosecution.  After further investigation and a meeting with Mr. Thomas, the Government recognized that Mr. Thomas was uninvolved in the significant criminal activities and enterprises of these gangs and most of his co-defendants. Accordingly, the Government justly made Mr. Thomas an appropriate plea offer which required him to plead to his limited criminal conduct: a (b)(1)(C) marijuana sales conspiracy. On April 5, 2017, Mr. Thomas pleaded guilty to Count Two of S2 15 Cr. 95 (AJN) (the "Indictment"), pursuant to a plea agreement with the Government.  Given the nature and level of Mr. Thomas' criminal conduct in this matter, his safety valve eligibility, his full acceptance of responsibility, his young age, his personal history, and his good behavior both when incarcerated (approximately 45 days) and since his release, Mr. Thomas should receive a sentence of time served.

## I.      Procedural History

In April 2016, a law enforcement investigation culminated in the dismantlement of two violent Bronx-based street gangs – 2Fly YGz ("2Fly") and Big Money Bosses ("BMB") – which

---

[1] *See* Press Release, U.S. Dep't of Justice, 120 Members And Associates Of Two Rival Street Gangs In The Bronx Charged In Federal Court With Racketeering, Narcotics, And Firearms Offenses (April 27, 2016) https://www.justice.gov/usao-sdny/pr/120-members-and-associates-two-rival-street-gangs-bronx-charged-federal-court.

1

engaged in acts of violence, narcotics trafficking, and other crimes.  Mr. Thomas was charged alongside members of these gangs and was arrested on April 27, 2016.  He eventually met the required conditions set for bail and was released on June 10, 2017, after having spent 45 days incarcerated in the Metropolitan Correctional Center in Manhattan.

Not long after his release, Mr. Thomas met with the Government for the purposes of a safety valve proffer and an assessment of whether Mr. Thomas was engaged in the significant criminal conduct of these Bronx gangs.  As sometimes occurs in such prosecutions, individuals from the same neighborhood who know or are related to gang members, and who are engaged in low-level criminal activity, are swept up in large take-downs when, in fact, they are not actually gang members nor are they involved in the gang's serious and violent criminal conduct or substantial drug dealing.  Here, Mr. Thomas is one such person – a low-level marijuana dealer from the same neighborhood as many of these gang members and who knew several of them. The Government quickly agreed with this assessment, and in its effort to find a just resolution to Mr. Thomas' prosecution, offered a plea agreement in this case commensurate with his limited conduct in this case.

On April 5, 2017, pursuant to that plea agreement, Mr. Thomas pleaded guilty to the lesser included charge of Count Two of the Indictment – a marijuana distribution conspiracy related to his sales of small quantities of marijuana over a multi-year period.  The plea agreement included the parties' stipulation that the Sentencing Guidelines range is 8 to 14 months, with no mandatory minimum.[2]  The plea agreement also specifically permitted the parties to seek

---

[2] As discussed herein, the U.S. Probation Office's Pre-Sentencing Investigation report ("PSR") calculated Mr. Thomas' offense level at one level higher, resulting in a range of 10 to 16 months' imprisonment.  As described below, even if the PSR's Sentencing Guidelines range is correct, the discrepancy is of no moment, as the defense respectfully submits a sentence of time served is appropriate even under the slightly higher Guidelines range.

sentences outside the Stipulated Guidelines Range, based on the factors contained in Title 18, United States Code, Section 3553(a).

On June 28, 2017, the U.S. Probation Office issued its sentencing recommendation for Mr. Thomas, and recommended that Mr. Thomas be sentenced to time served.  As described in the PSR:

> Our recommendation of time served is in consideration of the defendant's overall limited role in the offense. We do not see any benefit from re-incarcerating the defendant after he has been at liberty without incident for over one year. It is hoped that the recommended sentence will serve as sufficient punishment and the time already served will act as a deterrent to Thomas.

(PSR at 31).

Mr. Thomas' sentencing is scheduled for August 21, 2017, at 10:00 a.m.

## II.   Mr. Thomas' Personal Background and Characteristics[3]

### A.   Childhood and Family Life

Mr. Thomas was born on October 5, 1994, in the Bronx, New York.  Mr. Thomas was raised by his mother, Jelvor Joseph, but never knew his biological father.  (PSR ¶ 49).  Mr. Thomas' mother was his sole caretaker and financial provider, but at times she lacked the financial resources to provide for him and his sisters with even the most basic necessities.  (PSR ¶ 52).  His mother worked multiple jobs, but Mr. Thomas recalled instances when he did not have enough food to eat and, because of past-due bills, the electricity was often turned off.  (*Id.*).  Mr. Thomas grew up in a violent and drug-infested area and often witnessed fights, shootings, acts of extortion, drug dealing, and prostitution.  (*Id.*).  When Mr. Thomas was about nine years old, they were evicted from their home, and he and his mother went to a homeless shelter.  (*Id.*).

---

[3] The PSR contains an overview of Mr. Thomas' history and personal characteristics (*See* PSR ¶¶ 49-78).

It was during this time period that he recalls contemplating suicide.  (PSR ¶ 59).  Despite that

impulse, Mr. Thomas has no history of mental or emotional problems.  (*Id.*).

From 2003 until 2005, Mr. Thomas reported that he and his mother lived at a homeless

shelter, before moving to an apartment in the Bronx where lived until 2010.  (PSR ¶ 53).  He and

his mother returned to a homeless shelter again in 2010.  (PSR ¶ 54).  They lived at that shelter

for two more years, before they moved in with his sister in the Bronx, with whom Mr. Thomas

and his mother currently live.  (PSR ¶¶ 54-55).

Mr. Thomas has never been married nor does he have any children. (PSR ¶ 56).

### B.   Mr. Thomas' Education and Work Experience

Despite these great difficulties, and effectively being homeless for much of his youth, Mr.

Thomas did manage to attend and even graduate from high school.  He attended and graduated

from Public School/Middle School 4, Crotona Park West in the Bronx, KIPP Academy Charter

Middle School in the Bronx, and then KIPP NYC College Prep High School in the Bronx,

completing 12th grade and receiving his high school diploma. (PSR ¶¶ 66-68).

From August 2013 until May 2014, Mr. Thomas was able to study business

administration for two semesters at Borough of Manhattan Community College.  Because of the

limitations on financial aid, he could not afford to continue attending school.  (PSR ¶ 65).

As he described to the Probation Office in the PSR, Mr. Thomas hopes to return to school

at some day, and either continue studying business administration or architecture. (PSR ¶ 69).

Since February 18, 2017, Mr. Thomas has been working part-time as a deli clerk at Shop-

Rite in Thornwood, New York, and as of May 24, 2017, Mr. Thomas has been working part-time

as a sales clerk at Foot Locker in New York City.  (PSR ¶ 70).  Prior to these jobs, Mr. Thomas

worked as a seasonal stock clerk at Macy's Herald Square and Abercrombie & Fitch.  (PSR ¶¶

71-72).

### C.      Substance Abuse History

Unsurprisingly, considering the environment in which he was raised, Mr. Thomas has at times struggled with drugs and alcohol.  He first began consuming alcohol as a teenager, but upon reaching his 20s, he began drinking more frequently.  (PSR ¶ 61).  He first tried marijuana at the age of 17, and soon thereafter began smoking marijuana on a daily basis until the time of his arrest. (PSR ¶ 62).  He has never been treated for substance abuse in the past. (PSR ¶ 63).

## III.      Sentencing

### A.      Overview of Sentencing Factors

In determining Mr. Thomas' sentence, the Court considers a broad range of statutory sentencing considerations, along with the advisory Sentencing Guidelines.  *United States v. Booker,* 543 U.S. 220, 245-46 (2005);  18 U.S.C. § 3553(a) (2010).  The Court must impose a sentence sufficient, but not greater than necessary, to achieve the objectives of sentencing. 18 U.S.C. § 3553(a); *see Kimbrough* v. *United States,* 552 U.S. 85, 89 (2007); *Gall* v. *United States,* 552 U.S. 38, 55-57 (2007).  The goals of sentencing as set forth in Section 3553(a)(2) are:

> (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)      to afford adequate deterrence to criminal conduct;
>
> (C)      to protect the public from further crimes of the defendant; and
>
> (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In making an individualized assessment necessary to meet the goals of sentencing, the District Court must contemplate, consider, and give appropriate weight to the following

factors, pursuant to Section 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (4-5) the applicable sentencing guidelines range and Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(l)-(7).

After determining the advisory Guidelines range, the Court must next independently determine whether an appropriate sentence meets the goals of sentencing in light of the Section 3553(a) factors and must consider arguments that the advisory Guidelines should not apply on various policy or case-specific grounds. *See Rita* v. *United States,* 551 U.S. 338, 347-51 (2007). While the Court is required to take account of the advisory Guidelines, together with other sentencing factors, it may not presume that the advisory Guidelines range is reasonable. *See Gall,* 552 U.S. at 50; *Nelson v. United States,* 555 U.S. 350, 351-52 (2009) (per curiam) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in original); *United States v. Adelson,* 441 F. Supp. 2d. 506, 515 (S.D.N.Y. 2006) (holding that "where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences.").

It is clear the Court will carefully evaluate all of the 3553(a) factors and, consistent with that approach, individually apply all the factors to Mr. Thomas.  These factors in concert mandate sentencing Mr. Thomas to a sentence of time served (taking into consideration the 45

days he has already spent in custody).  Such a sentence is sufficient, but not greater than necessary to meet all the sentencing goals of Section 3553(a)(2).

**B.      The Section 3553(a) Factors**

  **1.      Nature and Circumstances of the Offense and History and Characteristics of Mr. Thomas**

    **a.      History and Characteristics of Mr. Thomas**

The defense submits that all federal narcotics crimes are serious – as certainly are the racketeering and violent crimes faced by many of Mr. Thomas' co-defendants.  But relatively speaking, it is important that the Court properly consider that as far as Mr. Thomas' specific criminal conduct is concerned, his participation here was limited to the selling of marijuana to local customers in the Bronx.  He has not engaged in violent criminal activity or racketeering, nor was he engaged in crack sales or the trafficking of any other drug beyond marijuana.  The Government does not accuse him of engaging in any of these more serious transgressions.  Thus, a number of factors regarding the nature and circumstances of the offense warrant important consideration by the Court.

First and foremost, despite violent crime serving as a backdrop to his entire childhood, Mr. Thomas' involvement with law enforcement before this incident involved local arrests for the possession of marijuana in the 5th and 6th degree respectively (the former of which was dismissed, and the latter sealed).  Other than these instances, there is no accusation that he acted outside of the law, and it is undisputed that he has no criminal history points.  This is important context for considering his instant offense and the role he played in the broader criminal conduct of the gangs charged in this case (that is, no role at all).

Mr. Thomas' involvement in this criminal activity is in stark contrast to his family-focused and law-abiding life.  Mr. Thomas has been a caring and devoted member of his family,

and while he has never married nor had children, Mr. Thomas still resides with and cares for his mother. It is clear from their history, as Mr. Thomas and his mother shifted in and out of homeless shelters for the better part of his youth, that they relied heavily upon each other for survival. Notably, his mother and oldest sister continue to offer emotional support to Mr. Thomas through this prosecution. (*See* PSR ¶ 51).

Also worthy of note is that, despite the circumstances of his upbringing – being surrounded by violent crime and serious drug trafficking, and living in multiple homeless shelters, often for years on end – Mr. Thomas managed to stay in school and even complete high school and attend some college. As the Court is well aware, this is incredibly unusual in such cases, and perhaps it is a testament to both the support his mother has always tried to offer Mr. Thomas as well as his own tenacity and hard work needed to achieve often difficult goals. The defense respectfully submits that these qualities – both the support of his loved ones and a personal strength to better his circumstances – will serve Mr. Thomas well going forward. He is a bright and articulate young man and, if given the opportunity, will hopefully surpass the obstacles of his youth and achieve success either through additional schooling, which is what he hopes for, or at a minimum, finding appropriate employment and applying principles of hard work and dedication to success in that regard.

Mr. Thomas has resolved to never again make such a mistake and engage in illegal activity again and, absent a mandatory minimum in this case, the Court has full discretion to sentence Mr. Thomas in a fashion which gives him the opportunity to prove that the Court's leniency was well-founded.

### b.      Nature and Characteristics of the Offense

As described above, Mr. Thomas' criminal conduct in this matter was limited to the sale of marijuana in the Bronx. He did not partake in the more serious drug trafficking, violent

crimes, or racketeering of many if not most of his co-defendants, but rather was caught up in the

massive take-down in this case.

As he described to the Government in his successful safety valve proffer on November

14, 2016, he first sold marijuana in February 2015.  He described where he was able to find

marijuana to sell, what he paid for it, and how much he sold it for.  Mr. Thomas candidly told the

Government that he sold marijuana "too many times to count" all the way up to the day before

his arrest.  He advised that he sold the marijuana to people in his neighborhood, though he did

not develop personal relationships with them and in most instances never even knew their names.

He never sold crack, like many of his co-defendants, nor did he ever rob or attempt to rob

individuals of drugs or drug proceeds in his neighborhood.  He told the Government that he

never owned or possessed a gun, nor has he ever held one.  He denied ever being a member of

the BMB gang, or any gang for that matter, but did acknowledge that he knew who the BMB

gang was and that it operated in his neighborhood.

Subsequent to the meeting, the Government agreed that Mr. Thomas' "safety valve"

proffer was successful and, even though the proposed charges carried no mandatory minimum

sentence, that he would receive the benefit of its two-level offense level reduction.

### 2.    Applicable United States Sentencing Guidelines Range

Because the advisory Sentencing Guidelines must still be calculated, the parties have

entered into a stipulated Guidelines calculation.  According to the plea agreement, the

Guideline applicable to the offense of conviction (Count Two of the indictment), is U.S.S.G. §

2D1.1(a)(5) and 2D1.1(c)(12), and the base offense level is 16, corresponding to 20 to 40

kilograms of marijuana – the amount which Mr. Thomas admitted to selling during the safety

valve proffer.  Pursuant to U.S.S.G. § 2D1.1(b)(17), a decrease of two levels is warranted

because the defendant met the "safety valve" criteria set forth in U.S.S.G. § 5C1.2.  Specifically,

the parties agreed that: (1) Mr. Thomas had no more than one criminal history point (in fact, he has zero criminal history points); (2) he never used violence or credible threats of violence, nor did he possess a firearm or other dangerous weapon in connection with the offense (in fact, he has never touched a firearm in his life); (3) the offense did not result in death or serious bodily injury to any person (despite that potentially being the case with respect to the broader group of Mr. Thomas' co-defendants); and (4) he was not an organizer, leader, manager, or supervisor of others in the offense.  Both the Government and the U.S. Probation Office concur in the assessment that Mr. Thomas meets all these criteria of the "safety valve" provision.

  Where the plea agreement and the PSR diverge, however, is the extent of the reduction for acceptance of responsibility.  Both acknowledge the appropriateness of a two-level reduction for Mr. Thomas' acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), but the plea agreement goes further to add an additional point reduction under § 3E1.1(b) because Mr. Thomas provided complete information to the Government concerning his own involvement in the offense and gave timely notice of his intent to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources more efficiently.  While this is undoubtedly true – Mr. Thomas indicated his intention to plead guilty early in this prosecution and entered a plea accordingly – the Guidelines only permit the additional third point reduction where the offense level *prior to the operation* of subsection § 3E1.1(a) is 16 or greater.  Here, the parties seemed to have erred in that the original base offense level is 16, but it is reduced by two in light of the safety valve provision, and accordingly the offense level is 14 prior to assessing acceptance of responsibility points under § 3E1.1(a).  The PSR caught this error and denied the third point.

Both the plea agreement and PSR concur in Mr. Thomas' lack of criminal history points and resulting Criminal History Category I.  But in light of the one-level difference in the offense level calculation, the plea agreement stipulates Mr. Thomas' Guidelines range is 8 to 14 months while the PSR states that it is 10 to 16 months.  The defense respectfully submits that irrespective of which range the Court adopts, a sentence of time served – below either Guidelines range – is appropriate, as recommended by the U.S. Probation Office.

As the case law prescribes, the Guidelines are not to be given undue weight or to be presumed reasonable and they *must* be discounted when appropriate to do so.  Since *Booker,* the district courts have regained the ability to depart or vary from the mathematical strictures of the Guidelines where the facts of a case justify such action. *See* U.S.S.G. § 1B1.1. Accordingly, such a variance to a time-served sentence (which would be approximately one-and-a-half months, or 45 days in custody which Mr. Thomas spent at the MCC after his arrest) is permissible and wholly justified in this case.

### 3.   The Need to Avoid Unwarranted Sentencing Disparities

There is always a need to avoid unwarranted sentencing disparities with similarly-situated defendants.  Most of the individuals sentenced in this prosecution faced and received far more serious sentences than that contemplated here because those defendants were engaged in far more egregious conduct.  The Government candidly acknowledged since the beginning of this prosecution, however, that some of the charged individuals were, like Mr. Thomas, merely marijuana dealers and did not engage in the broader and more serious criminal conduct.

Based on the record, it appears that co-defendant Richard Montague was one such individual.  According to the sentencing submissions filed in that matter, Mr. Montague was a marijuana dealer who sold marijuana with members and associates of the BMB gang and was intercepted on wiretapped phone calls discussing sales with one such member.  Mr. Thomas was

not engaged in the breadth of Mr. Montague's conduct with the BMB gang at all, but like him, was found in possession of a quantity of marijuana which he intended to sell.  Mr. Montague's Sentencing Guidelines range was much higher than Mr. Thomas' – 18 to 24 months – and the U.S. Probation Office recommended a sentence of 18 months' imprisonment.  Having served five months in prison already, Mr. Montague was sentenced to time served.

While Mr. Thomas did not serve as much time as Mr. Montague prior to sentencing, it is worth noting that Mr. Thomas' Guidelines are almost half that of Mr. Montague's and, unlike the Probation Office's recommendation of the low end of Mr. Montague's range of 18 months' imprisonment, the Probation Office here recommends that a time-served sentence for Mr. Thomas is appropriate.  The defense respectfully submits, accordingly, that a sentence of time served for Mr. Thomas would avoid an unwarranted sentencing disparity with Mr. Montague, who received a time-served sentence despite having a more significant role in the criminal conduct in this case.

### 4.    Purposes of Sentencing

The Court must ensure that Mr. Thomas' sentence meets certain purposes of sentencing, as set forth in 18 U.S.C. § 3553(a)(2)(A)-(D). In particular, § 3553(a)(2)(B) provides that the sentence should afford adequate deterrence to criminal conduct, and § 3553(a)(2)(C) provides that the sentence should protect the public from further crimes of the defendant.

## IV.    Conclusion

For the foregoing reasons, the defense respectfully requests that the Court consider the factors set forth under 18 U.S.C. § 3553(a) and impose a sentence of time served, consistent with the recommendation of the U.S. Probation Office.  Unlike most of his co-defendants, Mr. Thomas was a low-level marijuana dealer who was not engaged in the violent

12

activities of the gangs dismantled through this prosecution.  As the Probation Office

acknowledged, time served would be a "sufficient punishment" for Mr. Thomas, who has been

"at liberty without incident for over one year."  In light of Mr. Thomas' personal characteristics,

the nature of his limited role in the offense, his complete lack of criminal history, and his good

behavior both while incarcerated and since his release, a sentence of time served is appropriate

here.

Respectfully submitted,

 /s Arlen Pyenson_____
Glen G. McGorty
Arlen Pyenson
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 895-4246
*Attorneys for Rai Thomas*

Dated:  August 14, 2017
        New York, New York