UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                             Ind. No. 15-CR-95 (AJN)

    -against-


NICO BURRELL, et al.,
(Dominick Sherland)

                    Defendant.
-------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOMINICK SHERLAND'S SUPPLEMENTAL PRETRIAL MOTIONS

Edward V. Sapone, Esq.
Sapone & Petrillo, LLP
*Attorneys for Defendant*
*Dominick Sherland*
One Penn Plaza, Suite 5315
New York, New York 10038
Telephone: (212) 349-9000
E-mail: edward@saponelaw.com

Todd Bussert, Esq.
Frost Bussert LLC
*Attorneys for Defendant*
*Dominick Sherland*
129 Church Street, Suite 226
New Haven, Connecticut 06510
Telephone: (203) 495-9790
Email: tab@frostbussert.com

**PRELIMINARY STATEMENT**

On April 12, 2016, the grand jury returned an indictment charging Mr. Sherland, and 63 co-defendants with RICO, narcotics offenses, and use of a firearm in furtherance of the racketeering enterprise and narcotics conspiracy. (*See* S2 indictment at ECF, Docket Entry "DE" 97).

According to the government, the defendants were members and associates of the Big Money Bosses street gang ("BMB") operating in the northeast Bronx. The government alleges that BMB members and their associates engaged in shootings and other acts of violence against rival gangs, including: (a) the "2Fly YGz," a gang based in the Eastchester Gardens projects in the Bronx; (b) the "Slut Gang," based in the Boston Sector projects; and (c) the "YSGz," based in the Edenwald Houses.

On July 6, 2017, the grand jury returned a superseding indictment (S6-15 Cr. 95) charging Mr. Sherland with additional crimes including murder in aid of racketeering and an additional firearm offense. Count One charges him with racketeering conspiracy, in violation of 18 U.S.C. §1962(d). Count Two charges murder in aid of racketeering, in violation of 18 U.S.C. §1951(a)(1), (2). Count Three charges narcotics conspiracy, in violation of 21 U.S.C. §§841(b)(1)(A), (b)(1)(B). Count Four charges distribution of narcotics within 1,000 feet of playgrounds and schools, in violation of 21 U.S.C. §§846 and 860. Count Five charges use of a firearm in furtherance of Count One (racketeering) and Count Six charges use of a firearm in furtherance of Count Three (narcotics), in violation of 18 U.S.C. §924(c).

Counts Two, Three, Five and Six all carry mandatory minimums. Count Two would normally carry a mandatory minimum sentence of either life or death but the government concedes it cannot seek the death penalty for Mr. Sherland because he was 17 years old at the time of the alleged offense and such punishment is prohibited by the United States Constitution. *See Roper v. Simmons*, 543 U.S. 551 (2005).

Count Three carries a mandatory minimum of 10 years (21 U.S.C. §841(b)(1)(A)). The first gun count (Count Five or Six) carries a statutory minimum of 5, 7 or 10 years (depending on whether it was possessed, brandished or discharged) and proof of a second gun (Count Five or Six) carries a mandatory

minimum of 25 years (18 U.S.C. §924(c)(1)(C)). Combined, Counts Three, Five and Six carry a mandatory minimum of 40[1] years to run consecutively to any other sentence imposed upon Mr. Sherland.

Unless the government can prove that Mr. Sherland was using gun(s) in furtherance of the alleged racketeering conspiracy *after* he turned eighteen, Count Five should be dismissed because the statutory penalty of a 25 year-mandatory-minimum (plus an additional 5-10 year mandatory minimum for the first gun constitutes cruel and unusual punishment. *See* U.S. Const. VIII.

**POINT ONE**

**THE COURT SHOULD DISMISS COUNT FIVE
AGAINST MR. SHERLAND BECAUSE IT TRIGGERS A MANDATORY MINIMUM THAT
CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT**

Imposing a 25-year mandatory minimum upon Mr. Sherland for acts he committed while a juvenile constitutes cruel and unusual punishment. Therefore, Count Five should be dismissed against him.

APPLICABLE LAW

Mandatory minimums, in some cases, should not be applicable to juvenile offenders, as it is a violation of the Eighth Amendment's cruel and unusual punishment clause.  This notion "'flows from the basic precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense," and emphasizes "that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller v. Alabama*, 567 U.S. 460, 464 (2012).

In *Miller v. Alabama,* the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment "forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders" because such a penalty scheme prevents a sentencing judge

---

[1] The mandatory minimum for Counts Three, Five and Six will be 40 years if Mr. Sherland possessed the first gun. If the government is able to prove that the gun was discharged, he will be facing a mandatory minimum sentence of 45 years.

"from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Miller,* 567 U.S. at 464.

In reaching this decision, the Court turned to two previously decided cases that struck down mandatory punishments for juveniles. *Roper v. Simmons,* 543 U.S. 551 (2005) held that the Eighth Amendment bars capital punishment for children, and *Graham v. Florida,* 560 U.S. 48 (2010) concluded that the Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a non-homicide offense.

*Roper* and *Graham* establish that children are constitutionally different from adults for sentencing purposes. Their " 'lack of maturity' " and " 'underdeveloped sense of responsibility' " lead to recklessness, impulsivity, and heedless risk-taking. *Roper,* 543 U.S., at 569. They "are more vulnerable ... to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And, because a child's character is not as "well formed" as an adult's, his traits are "less fixed" and his actions are less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.* at 570. *Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes.

Collectively, this trilogy of cases establishes that children are different than adults in significant ways and that a sentencing judge must take into account a juvenile's age, particular characteristics, and the circumstances of the offense in fashioning the appropriate sentence. The Supreme Court recognizes that mandatory sentencing schemes for adults pass constitutional muster. *See e.g. Harmelin v. Michigan*, 501 U.S. 957 (1991) (holding that a sentencing scheme mandating life imprisonment did not constitutional cruel and unusual punishment even though it precluded individualized sentencing consideration). However, as *Roper*, *Graham*, and *Miller* make clear, a sentence that is constitutionally appropriate for an adult may very well be constitutionally infirm as applied to a juvenile offender.

DISCUSSION

Count Five should be dismissed against Mr. Sherland because the statutory penalty of a 25-year mandatory minimum for acts committed while under the age of 18 violates *Miller* and its progeny, as well as the Eighth Amendment prohibition against cruel and unusual punishment.

The government intends to prove at trial that Mr. Sherland was a member of the Big Money Bosses ("BMB") street gang and that he carried out various acts of violence in furtherance of BMB's affairs; specifically that Mr. Sherland used, brandished and discharged firearms on multiple occasions in furtherance of the racketeering and narcotics conspiracy.

If the government is successful in proving both gun counts, Mr. Sherland is subject a minimum of 5 years for the first gun and subject to a 25-year mandatory minimum for the second gun. *See* 18 U.S.C. §924(c). He is also subject to a mandatory 10-year minimum for the narcotics conspiracy. Together, Mr. Sherland is subject to a 40-year mandatory minimum to run consecutively with any sentence imposed.

> 18 U.S.C. §924(c) provides:
>
> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> In the case of a **second or subsequent conviction** under this subsection, the person shall be sentenced to a term of imprisonment of **not less than 25 years**;

Based upon defense counsel's thorough review of the discovery and discussions with the government, we believe the government intends to introduce evidence of the following three instances in which Mr. Sherland allegedly used a firearm in furtherance of the racketeering and narcotics conspiracies:

> (1) On August 26, 2015, Mr. Sherland and another individual were occupants of a car that was pulled over by police in the Bronx pursuant to a car stop. Law enforcement recovered a firearm in Mr. Sherland's possession. The firearm was a SCCY CPX 1 9mm pistol with eight

live rounds. He was subsequently arrested and charged with possession of the firearm. Later, Mr. Sherland told the arresting officers that he carried the firearm "for personal protection." (*See* Discovery Production I).

(2) On a date unknown to defense counsel, Mr. Sherland traveled to the Edenwald Housing Projects with a firearm for the purpose of threatening a rival gang that was responsible for shooting and paralyzing his brother.

(3) On February 11, 2009, Mr. Sherland and a co-defendant traveled to the vicinity of Eastchester Gardens Projects, where the co-defendant fired approximately three gunshots at an associate of a rival gang, striking the victim in the chest and striking a bystander in the arm.

The government alleges Mr. Sherland was a member of BMB from 2007 until his arrest in 2016. This time period is significant because he was a juvenile for some of those years. From 2007 until May 19, 2010, Mr. Sherland was under the age of 18.

Evidence of Mr. Sherland's involvement in the February 11, 2009, shooting will be used to prove Count Five. With respect to this shooting, the government potentially should be permitted to proffer evidence of this alleged shooting as it relates to the RICO but the underlying substantive §924(c) count should be dismissed; otherwise, as the second gun proven, it would trigger the mandatory 25-year minimum sentencing provision of §924(c).

The trilogy of cases mentioned above specifically emphasize that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. Mr. Sherland, if convicted of all charged counts, is facing a five-year mandatory minimum for the first gun (could be up to 10 years if the government proves that the gun was discharged), 10-year minimum for the crack conspiracy, plus any sentence the court deems appropriate for racketeering, murder in aid of racketeering, and the distribution of narcotics within 1,000 feet of a school. The imposition of additional 25-year mandatory minimum for the use of a second firearm when Mr. Sherland was under the age of 18 constitutes cruel and unusual punishment. Additionally, the court loses its ability to factor his age, lack of brain development and immaturity when fashioning the appropriate sentence.

Therefore, in order to avoid an Eighth Amendment violation and the triggering of draconian 25 year-mandatory minimums for acts committed by Mr. Sherland while he was a juvenile, Count Five should be dismissed.

## POINT TWO

### THE GOVERNMENT SHOULD PROVIDE MR. SHERLAND WITH A BILL OF PARTICULARS

Dominick Sherland, by and through undersigned counsel and pursuant to Fed. R. Crim. P. 7(f) and 12(b)(2) and the Due Process Clause of the Fifth Amendment to the United States Constitution, respectfully moves this Honorable Court to order the government to provide a bill of particulars, in the alternative, that the Court dismiss Counts One, Three, Five and Six of the Superseding Indictment returned in the above-captioned matter on or about July 6, 2017.  In support of this motion, Mr. Sherland submits:

1. Mr. Sherland was initially charged by an indictment returned on or about April 12, 2016.  Doc. 97.  On or about July 6, 2017, the instant indictment was returned.  Doc. 1510.  Jury selection is scheduled for November 6, 2017.

2. Count One charges Mr. Sherland with a RICO conspiracy in violation of 18 U.S.C. § 1962(d), a predicate to which is a conspiracy to possession with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  Count Three charges a narcotics conspiracy 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  Count Five charges use of a firearm in furtherance of Count One in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2.  Count Six charges use of a firearm in furtherance of Count Three in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2.

3. With respect to the several conspiracies charged in Counts One and Three, Mr. Sherland asks the Court to direct the government to provide the following particulars:

   a. The place(s) where the alleged conspiracies were initially formed, and the place or places where each defendant and coconspirator presently known to the government joined the respective alleged conspiracies.

7

  b. The date(s) and the time(s) when each defendant and each coconspirator presently known to the Government joined or entered into the respective alleged conspiracies.

  c. The period(s) during which each defendant and coconspirator joined the respective alleged conspiracies, and the time during which each defendant or coconspirator remained in the respective alleged conspiracies.

  d. With respect to each defendant and coconspirator, each and every overt act which the government claims was committed in furtherance of the respective alleged conspiracies, concerning which the government intends to offer evidence at trial, and with respect to each such over act:

   (1) Which defendant(s) committed the act;
   (2) Which defendant(s) were present at the time of the commission of the act; and
   (3) The location, including address, where each such act was committed.

  e. The names and addresses of all coconspirators whose names are presently known to the government but who are not named in the indictment.

  f. The names and addresses of all other persons who in any way participated in the respective alleged conspiracies, and all other persons present at the time or times any of the defendants or coconspirators joined the respective alleged conspiracies.

  g. Whether any defendant or coconspirator was acting on behalf of the United States at any time during the period of the respective alleged conspiracies.

  h. Whether any defendant or coconspirator has furnished information to either the United States, or to any state or local law enforcement agency, with respect to the respective alleged conspiracies.

4. With respect to Counts Five and Six, Mr. Sherland asks the Court to direct the government to provide the following particulars:

  a. The make and model of any firearm allegedly possessed or used.

  b. The date(s) on which the defendant alleged possessed the charged firearm(s).

  c. Whether the defendant possessed, brandished and/or discharged a firearm(s).

5. These requests are neither designed nor intended to discover the government's evidence, to engage in a fishing expedition, or to curtail in any respect the government's proof at trial. Rather, pursuant to his rights under the Sixth Amendment, Mr. Sherland is attempting to ascertain the true "nature and cause," scope and extent of the charges that the government intends to prove in this case so as to, *inter alia*, prevent surprise at trial *See United States v. Miller*, 471 U.S. 130, 134-35 (1985); *Bartell v. United States*, 227 U.S. 427, 431 (1913) (charging document must provide notice of the charges in

8

sufficient detail to prepare a defense and to permit evaluation of a claim of double jeopardy); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (*per curiam*).

6. Where the government has provided volumes of discovery with respect to the 60-plus defendants charged by the April 2016 indictment, it has provided little-to-any evidence establishing Mr. Sherland's involvement with the possession or distribution of crack cocaine. Similarly, where the government has provided discovery indicating that Mr. Sherland possessed a 9MM handgun (and ten baggies of marijuana) in or about August 2015, it has offered no evidence that he otherwise used this firearm or that he possessed a second firearm, in connection with a drug conspiracy or otherwise.

7. The Indictment does not provide the requisite protections to Mr. Sherland. Under Fed. R. Crim. P. 7(c)(1), the Indictment must provide a "plain, concise and definite written statement of the essential facts constituting the offense charged." It must "transcend to particulars." *Russell v. United States,* 369 U.S. 749, 65 (1962). This requirement of specificity also serves the purpose, *inter alia*, of "informing the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Id*. at 768.

8. With respect to Counts One and Three:

(a) "It is well settled that the essential elements of the crime of conspiracy are: (1) that the defendant agreed with at least one other person to commit an offense; (2) the defendant knowingly participated in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and (3) that during the existence of the conspiracy, at least one of the overt acts set forth in the indictment was committed by one or more of the members of the conspiracy in furtherance of the objectives of the conspiracy." *United States v. Salameh*, 152 F.3d 88, 145 -146 (2nd Cir. 1998). The discovery thus far provided offers no evidence of agreement between Mr. Sherland and any of the named co-defendants, or others, as to the alleged narcotics conspiracies, specifically as to crack distribution.

(b) Although there is no requirement that a defendant conspire directly with all coconspirators, that he be aware of all of the acts committed by coconspirators or that he even know the

    identities of all coconspirators, *United States v. VanWort*, 887 F.2d 375 (2d Cir. 1989), absent from the discovery is any information that Mr. Sherland knew and/or had direct dealings involving crack cocaine with any of those with whom he stands accused, and vice versa. Such knowledge or relationships is relevant here since Mr. Sherland could potentially be held liable for substantive crimes of the conspiracy committed by others while he was allegedly a member, *United States v. Bruno*, 873 F.2d 555 (2d Cir. 1989), and he can be bound by the others' declarations made while they were members. Fed.R.Evid. 801(d)(2)(E). Additionally, if Mr. Sherland is convicted, his sentence can be enhanced on the basis of acts or omissions committed by coconspirators. U.S.S.G. § 1B1.3(a)(l)(B).

(c) Conspiracy charges are notoriously difficult to defend against because of the uncertainty in determining who is (or is not) a member, or who was (or was not) a member at a particular time. Because of the potential adverse consequences attendant upon membership in a conspiracy, courts generally require the government to provide a bill of particulars identifying those persons who are claimed to be coconspirators, to the extent they are known to the government. *See e.g., United States v. White*, 753 F. Supp. 432, 433-34 (D. Conn. 1990).

9. The information in the indictment is insufficient to determine the basis upon which the government asserts that Mr. Sherland acted in violation of the laws of the United States. In particular, neither the indictment, nor the discovery disclosed to date, indicate into what agreement(s) Mr. Sherland entered as part, or in furtherance, of the alleged conspiracy; what acts he committed and/or aided and abetted (possessing an unspecified principal's alleged intent); or what items he used (*e.g.,* a second firearm) or possessed (*e.g.,* crack cocaine). The Government should be required to specify what (1) acts Mr. Sherland (or others) committed that establish Mr. Sherland's potential criminal liability, and (2) facts showing that what allegedly transpired was foreseeable to Mr. Sherland to the extent the government seeks to hold him accountable for others' actions.

10. With respect to Count Three, the government alleges a narcotics offense, namely a narcotics conspiracy, crack cocaine, marijuana and oxycodone. Marijuana, however, is not a narcotic. Title 21

Section 802(17) of the United States Code identifies "narcotic drug" as including opium, opiates, derivatives of opium and opiates; poppy straw and concentrate of poppy straw; coca leaves; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine and its derivatives; and any compound, mixture, or preparation which contains any quantity of any of the substances mentioned above.  Where the government maintains that marijuana was a drug at-issue, it is unclear what evidence was submitted to the Grand Jury to support this aspect of the charge.  *See Sanabria v. United States*, 437 U.S. 54, 65-66 (1978) ("the precise manner in which an indictment is drawn cannot be ignored"); *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("[T]he indictment must be considered as it was actually drawn, not as it might have been drawn.").  The Fifth Amendment to the United States Constitution, following centuries-old common law principles, forbids courts from amending indictments; changes must be re-submitted to a grand jury.  *Ex parte Bain,* 121 U.S. 1, 8 (1887), *overruled on other grounds, United States v. Cotton*, 535 U.S. 625, 629-31 (2002).

11.  The Court must review a challenge to an indictment in light of the safeguards that it is designed to provide a criminal defendant.  *Russell v. U.S.*, *supra*; see *Wong Tai v. United States*, 273 U.S. 77, 82 (1927) (grant or denial of bill of particulars rests in trial court's sound discretion).  If an indictment does not satisfy the protections set forth by these criteria, the accused may object to it by motion before a trial.  *See* Fed. R. Crim. P. 12(b)(2).

12.  Mr. Sherland seeks the requested information both because it is essential to the preparation of his defense and because it has an impact on his ability to make choices in this matter.  Sentencing issues related to the nature and extent of Mr. Sherland's alleged actions, the actions of others for which the government will seek to hold him accountable, and "relevant conduct" for which he may be held responsible are also implicated.  Mr. Sherland is entitled to the requested information to aid in his understanding of the potential sanctions he is facing.

13.  Sufficient detail in the notice of charges is necessary to deny a prosecuting authority "free hand on appeal to fill in the gaps of proof by surmise or conjecture." *Russell v. United States*, 369 U.S. at 736-65.

WHEREFORE, and notwithstanding the government's stated intention to file a supplemental enterprise letter on or about October 9, 2017, Dominick Sherland, who remains detained at the MCC New York pending resolution of this matter, prays that the Court grant this motion and order the government to provide a bill of particulars or, in the alternative, that the Court dismiss Counts One, Three, Five and Six of the instant indictment.

## CONCLUSION

We respectfully request that the Court issue an order granting the relief sought in Mr. Sherland's supplemental pre-trial motions, and any additional relief that the Court deems proper.

Dated:	New York, New York
	August 28, 2017

							Respectfully submitted,

							*/s/ Edward V. Sapone*
							Edward V. Sapone, Esq.
							Attorney for Defendant
							Dominick Sherland

							*/s/ Todd Bussert*
							Todd Bussert, Esq.
							Attorney for Defendant
							Dominick Sherland