UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                           :

UNITED STATES OF AMERICA           :       S2 15 Cr. 95 (AJN)
                           :       S6 15 Cr. 95 (AJN)

               – v. –         :

                           :

DONQUE TYRELL,               :
      a/k/a "Polo Rell," and   :
DOMINICK SHERLAND,       :
      a/k/a "D-Nick,"         :

               Defendants.     :

------------------------------------------------------------------------X

## THE GOVERNMENT'S OPPOSITION TO THE PRETRIAL MOTIONS OF DEFENDANTS DONQUE TYRELL AND DOMINICK SHERLAND

JOON H. KIM
Acting United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Rachel Maimin
Jessica Feinstein
Micah W.J. Smith
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

I.      Preliminary Statement ........................................................................................ 1

II.      Background .......................................................................................................... 2

III.      The Moving Defendants' Motions for Immediate Disclosure of Identities of Government Witnesses and for *Brady* and *Giglio* Material Should be Denied ................. 4

IV.      The Moving Defendants' Motions for a Bill of Particulars Should Be Denied ................. 7

         A.      Applicable Law ...................................................................................... 7

         B.      Discussion ............................................................................................. 9

V.      The Moving Defendants' Motions for Disclosure of Rule 404(b) Evidence Should Be Denied ...................................................................................................... 11

VI.      Tyrell's Motion to Suppress Physical Evidence Should Be Denied Without A Hearing .............................................................................................................. 13

         A.      Factual Background ............................................................................. 13

         B.      Applicable Law .................................................................................... 13

         C.      Discussion ........................................................................................... 15

VII.      Tyrell's Motion for a Pretrial Hearing as to the Existence of a Conspiracy Should be Denied .......................................................................................................... 15

VIII.      The Possible 25-Year Mandatory Minimum Sentence Applicable to Sherland Does Not Violate the Eighth Amendment ............................................................... 18

IX.      Sherland Lacks Standing to Suppress the Cellphone ...................................... 20

         A.      Factual Background ............................................................................. 20

         B.      Applicable Law .................................................................................... 21

         C.      Discussion ........................................................................................... 22

X.      Conclusion ........................................................................................................ 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                      :

UNITED STATES OF AMERICA               :

                                              :       S2 15 Cr. 95 (AJN)
                                            :       S6 15 Cr. 95 (AJN)

                   – v. –              :

                                            :

DONQUE TYRELL,                       :
      a/k/a "Polo Rell," and
DOMINICK SHERLAND,              :
      a/k/a "D-Nick,"
                                            :

                           Defendants.    :

-------------------------------------------------------------------X

**THE GOVERNMENT'S OPPOSITION TO THE PRETRIAL MOTIONS OF
DEFENDANTS DONQUE TYRELL AND DOMINICK SHERLAND**

## I.      Preliminary Statement

Trial in this case is scheduled for November 6, 2017.  The Government respectfully

submits this memorandum of law in opposition to the motions submitted by the defendants

Donque Tyrell, a/k/a "Polo Rell," and Dominick Sherland, a/k/a "D-Nick," (together, the

"Moving Defendants").  For the reasons that follow, all of the Moving Defendants' motions

should be denied without a hearing.

The motions filed were as follows:

(1)    Tyrell and Sherland move to compel the immediate production of identifying
information about Government informants;

(2)    Tyrell and Sherland move to compel the immediate production of *Brady* and
impeachment material;

(3)    Tyrell and Sherland move for a bill of particulars;

(4)    Tyrell and Sherland move to compel disclosure of evidence the Government seeks
to introduce pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure
("Rule 404(b)");

(5)    Tyrell moves to compel immediate production of a witness list;

    (6)    Tyrell moves to suppress evidence seized pursuant to an arrest on March 28, 2014;

    (7)    Tyrell moves for a pretrial hearing on the existence of a conspiracy;

    (8)    Sherland moves for disclosure of individuals interviewed by the Government;

    (9)    Sherland moves to dismiss Count Five on the basis that the attendant mandatory minimum sentence constitutes cruel and unusual punishment; and

    (10)    Sherland moves to suppress evidence seized from a cellphone obtained during an arrest on August 26, 2015.[1]

Because some of the motions are duplicative, the Government addresses them by topic.

## II.    Background

Tyrell is charged in all four counts of indictment S2 15 Cr. 95 (the "S2 Indictment"): (1) racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution within one thousand feed of playgrounds and schools, in violation of Title 21, United States Code, Sections 846 and 860; and (4) possession, brandishing, and discharge of firearms in furtherance of the racketeering and narcotics conspiracies charged in Count One and Count Two, in violation of Title 18, United States Code, Section 924(c)(1)(a)(iii).

Sherland is charged in all six counts of indictment S6 15 Cr. 95 (the "S6 Indictment"): (1) racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); (2) murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), for the murder of Jeffrey Delmore on May 15, 2010; (3) narcotics conspiracy, in

---

[1] Tyrell also moves (1) to compel the production of testimony presented to a state grand jury; and (2) to preclude the Government from impeaching the defendant on cross examination based on prior convictions, bad acts, and uncharged moves. The Government is producing the requested grand jury testimony and this motion is therefore moot. Tyrell's motion to preclude impeachment is premature. The Government will address this issue at the proper time, in motions *in limine* prior to trial.

violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (4)

narcotics distribution within one thousand feed of playgrounds and schools, in violation of Title

21, United States Code, Sections 846 and 860; and (5) possession, brandishing, and discharge of

firearms in furtherance of the racketeering conspiracy charged in Count One, in violation of Title

18, United States Code, Section 924(c)(1)(a)(iii); (6) possession, brandishing, and discharge of

firearms in furtherance of the narcotics conspiracy charged in Count Three, in violation of Title

18, United States Code, Section 924(c)(1)(a)(iii).

 At trial, the Government expects to prove—through the testimony of multiple

cooperating witnesses, victims, law enforcement witnesses, physical evidence, and searches of

Facebook and YouTube, among other evidence—that the Moving Defendants were two of the

most violent members of a Bronx-based street gang known as the Big Money Bosses ("BMB" or

the "Gang").  As alleged, from 2007 to 2016, BMB operated primarily on White Plains Road

from 215th Street to 233rd Street in the Bronx, which is a long stretch of road under a subway

train overpass that is hedged on each side by single-family homes and local commercial

establishments.   Members and associates of BMB engaged in acts of violence including

murders, shootings, stabbings, gang assaults, and robberies, often as part of the Gang's

longstanding rivalries with other street gangs in the northern Bronx.

 Sherland is one of the earliest members of BMB.  Sherland became a leader, or "Big

Suit," in the Gang and enhanced his reputation by engaging in acts of violence. For example, on

May 15, 2010, Sherland stabbed to death 15-year-old Jeffrey Delmore because he thought—

mistakenly—that Delmore was a member of a rival gang. DNA evidence links Sherland to the

knife used to kill Delmore. Sherland also carried guns, accompanied others on shootings,

engaged in brawls, and sold marijuana. As a "Big Suit," Sherland inducted other individuals into the Gang.

Tyrell also participated in the murder of a teenager—Keshon Potterfield—as well as an attempted murder that resulted in the victim's loss of a vital organ, among other crimes. Tyrell acted as a spokesperson of sorts for BMB, starring in rap videos produced by the Gang to further its rivalries with other street gangs.[2] In addition, Tyrell regularly carried guns and sold marijuana.

### III. The Moving Defendants' Motions for Immediate Disclosure of Identities of Government Witnesses and for *Brady* and *Giglio* Material Should be Denied

The Moving Defendants seek an order compelling the Government to produce a list of witnesses and all notes of witness interviews, including identifying information of cooperating witnesses and informants. The Court should deny this request.

"Fed. R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses in general," *United States* v. *Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990), nor does any other rule or statute. Indeed, "the prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him." *United States* v. *Alessi*, 638 F.2d 466, 481 (2d Cir. 1980). While a district court has inherent authority to compel pretrial disclosure of the identity of Government witnesses, see *Bejasa*, 904 F.2d at 139, there is a strong presumption against doing so, especially in cases involving allegations of crimes of violence. *See United States v. Conyers*, No. 13 Cr. 537, 2016 WL 7189850, at *8 (S.D.N.Y. Dec. 9, 2016) ("[E]arly disclosure of witness identities is particularly disfavored in cases involving violent

---

[2] The Government will move *in limine* to introduce particular rap lyrics as admissions of Tyrell or as statements of his co-conspirators.

4

crimes, like the racketeering enterprise charged in this case, because identifying the Government's witnesses substantially in advance of trial may increase the risk of harm to them."); *United States v. Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y. 2005) ("[C]ourts in this circuit are especially reluctant to require the disclosure of witness lists in cases such as this one that involve allegations of crimes of violence.").

A defendant who seeks in advance of trial a list of government fact witnesses bears the burden of making a "specific showing that disclosure [is] both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case." *United States* v. *Cannone*, 528 F.2d 296, 301 (2d Cir. 1975); *see also United States* v. *Fields*, 113 F.3d 313, 324 (2d. Cir. 1997) (in order to overcome qualified privilege against disclosure of informant identity, "the defendant bears the burden of showing the need for a disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial"). An "abstract, conclusory claim that such disclosure [is] necessary to [the defendant's] proper preparation for trial" is insufficient. *Id.* at 301-02.

The Moving Defendants have not met their burden of showing that immediate disclosure of informant and witness identities or notes of interviews is necessary for preparation this far in advance of trial. The parties have agreed to a pre-trial schedule, including the production of all 18 U.S.C. § 3500 and impeachment, or *Giglio*, material for anticipated witnesses on October 27, 2017, ten days before trial, and a witness list on November 3, 2017. As a result, immediate disclosure of this information is not required to ensure the Moving Defendants' right to a fair trial. *See, e.g.*, *United States* v. *Muyet*, 945 F. Supp. 586, 602 n.16 (S.D.N.Y. 1996) (fact that Government would call informants to testify at trial, coupled with Government's production of impeachment material one week prior to testimony of each witness, allowed "the defendants to

conduct a meaningful defense").  Indeed, premature disclosure of the identities of witnesses and

cooperators carries a significant safety risk in this case, which involves allegations of murder and

violent racketeering acts. The Moving Defendants are members of a gang with rules against

"snitching," or cooperating with law enforcement, and revealing the identities of witnesses more

than two months before trial would therefore unnecessarily jeopardize the safety of those

witnesses and their families.

 With respect to *Brady*, the Government recognizes its obligations.  Should the

Government become aware of *Brady* material, it will promptly produce it.  As a result, the

Moving Defendants' requests for an order pertaining to the disclosure of *Brady* material should

be denied, consistent with the well-established practice in such circumstances.  *See, e.g.*, *United

States* v. *Gallo*, No. 98 Cr. 338, 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying

defendant's motion to compel production of *Brady* material based on Government's

representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady*

material to the defense well before trial"); *United States* v. *Gomez*, 199 F. Supp. 3d 728, 751

(S.D.N.Y. 2016) ("The Government has acknowledged its obligation and has indicated that it

will turn over any *Brady* materials it uncovers immediately upon discovery. . . . No more is

required." (internal quotation marks and citations omitted)); *United States* v. *Perez*, 940 F. Supp.

540, 553 (S.D.N.Y. 1996) (same).

 The Government is likewise aware of its obligations under *Giglio* v. *United States*, 405

U.S. 150, 154 (1972), and its progeny, and will provide impeachment and *Giglio* material in a

timely manner prior to trial, as indicated in the parties' joint schedule. Courts in this Circuit have

repeatedly refused to compel disclosure of impeachment or *Giglio* material well in advance of

trial. In *United States* v. *Coppa*, 267 F.3d 132 (2d Cir. 2001), the Second Circuit held that the

Government is not required to produce *Giglio* material until it produces "3500 material" pursuant

to the Jencks Act, so long as the Government provides the Giglio material in time for its effective

use at trial. *Id.* at 145-46; *see also United States* v. *Nixon*, 418 U.S. 683, 701 (1974) ("Generally,

the need for evidence to impeach witnesses is insufficient to require its production in advance of

trial."); *United States* v. *Greyling*, 00 Cr. 631 (RCC), 2002 WL 424655, at *2 (S.D.N.Y. Mar. 18,

2002) (production of *Giglio* material by the Wednesday before the week in which a witness will

testify is appropriate); *Gomez*, 199 F. Supp. 3d at 751-52 (denying defendants' motions to

require early production of *Giglio* and 3500 material based on the Government's representations

that it would provide the information sufficiently in advance of each witness's testimony to allow

adequate time to prepare for cross-examination); *Gallo*, 1999 WL 9848, at *8 (same).

## IV.    The Moving Defendants' Motions for a Bill of Particulars Should Be Denied

The Court should deny the Moving Defendants' request for a bill of particulars because the

Government has already provided more than sufficient notice of the nature of the charges and the

evidence to the Moving Defendants.

### A.    Applicable Law

Federal Rule of Criminal Procedure 7(f) permits the Court to direct the Government to

file a bill of particulars.  A bill of particulars is not a general investigatory tool for the defense,

however.  *See United States* v. *Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973).  Nor is it a

device to compel disclosure of the Government's evidence or its legal theory prior to trial.

*United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974); *see also United States* v. *Fennell*,

496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007).  Rather, the sole purpose of a bill of particulars is to

furnish facts that are necessary to apprise a defendant of the charges against him with sufficient

precision to: (i) enable him to prepare a defense; (ii) avoid unfair surprise at trial; and

7

(iii) preclude a second prosecution for the same offense.  *See Wong Tai* v. *United States*, 273 U.S. 77, 80-82 (1927); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1991).  Indeed, "a bill of particulars should be required only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *Id.* at 234; *accord United States* v. *Chen*, 378 F.3d 151, 163 (2d Cir. 2004).  If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," no bill of particulars is required.  *See United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States* v. *Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).  Ultimately, "[i]n deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'"  *United States* v. *Triana-Mateus*, No. 98 Cr. 958, 2002 WL 562649, *15-16 (S.D.N.Y. Apr. 15, 2002) (citation omitted); *see also United States* v. *Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (same and collecting cases).

Furthermore, where, as here, the defendant is charged with criminal conspiracy, the Government is not required to provide details regarding the conspiracy.  As the Second Circuit has stated, "[t]he Government need not, when charging conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy."  *United States* v. *Cohen*, 518 F.2d 727, 733 (2d Cir. 1975) (citing *Wong Tai* v. *United States*, 273 U.S. 77, 81 (1927)).  Consistent with this principle, courts have routinely recognized that defendants in conspiracy cases "are not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the … conspiracy."  *United States* v. *Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); *see also United States* v. *Ordaz-Gallardo*, 520 F. Supp. 2d 516, 522 (S.D.N.Y. 2007) ("Requests concerning the dates that the Defendants joined the conspiracy, the identity of co-conspirators, and precise dates and locations relating to overt acts, however, are the types of

8

'wheres, whens and with whoms' that have specifically been held to be beyond the scope of a bill of particulars"); *United States* v. *Trippe*, 171 F. Supp.2d 230, 240 (S.D.N.Y. 2001) ("[D]emands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied.").

B.      **Discussion**

In this case, the Government has gone above and beyond the typical notice requirement. The charging instruments, detailed enterprise letters, other filings, and discovery, along with conversations with defense counsel, have provided the defendants with ample notice of the nature of the charges against them and the proof at trial.

The S2 and S6 Indictments, far from being bare-bones accusatory instruments, list exemplary overt acts, including specific murders committed in furtherance of the charged racketeering conspiracy, and provide detailed background regarding the history of BMB, its locations of operation, and its rivalries with other gangs. On September 27, 2016, more than a year before trial, the Government filed a letter setting forth 95 specific violent acts in furtherance of racketeering that the Government anticipated proving at trial, including murders, shootings, robberies, assaults, and brawls; these included multiple acts naming the Moving Defedants as participants. In addition, on October 9, 2017, a month before trial, the Government plans to file an updated enterprise letter tailored to the remaining trial defendants, and adding any additional racketeering acts the Government may prove at trial.   Other filings by the Government have provided further information to the Moving Defendants about the Government's case, including numerous letters filed in opposition to various defendants' bail applications. For example, on June 27, 2017, the Government filed a 10-page letter opposing Tyrell's motion for bail, and setting forth in detail its evidence against Tyrell, including the expected testimony of cooperating and civilian

9

witnesses, social media evidence, and rap lyrics, among other evidence. Together, the Indictments, the September 2016 enterprise letter, the October 2017 enterprise letter, and other filings provide even more information than required to allow the defendants to prepare a defense and avoid unfair surprise at trial.

In addition to the Government's filings, the Moving Defendants have been provided with substantial discovery relating to the allegations and the Government's evidence, by which they are further on notice of the nature of the charges, including state arrests for crimes which are direct proof of their membership in the charged racketeering and narcotics conspiracies. This additional discovery, which goes well beyond the ambit of Rule 16, arrived far in advance of any trial date or associated deadline for the production of witness statements pursuant to 18 U.S.C. § 3500, and ensures that the defendants are well-apprised of the nature of the case against them and there will be little surprise at trial. *See United States* v. *Reinhold*, 994 F. Supp. 194, 201 (S.D.N.Y. 1998) (denying request for bill of particulars where "[t]he . . . indictment is detailed in its allegations" and "[the] defendants have had extensive discovery"); *United States* v. *Conesa*, 899 F. Supp. 172, 176 (S.D.N.Y. 1995) (denying request for bill of particulars because "[t]he Indictment sufficiently advises defendants of the specific acts of which they are accused" and "the Government . . . has made available to defense counsel extensive discovery that supplements the information provided in the . . . Indictment").

The Government has gone further, however. The Government expects that significant evidence against the Moving Defendants will come in the form of testimony from multiple cooperating witnesses. For that reason, at least one of the prosecutors on the case has spoken to the defense attorneys for the Moving Defendants, and gone through in some detail what she expects

the witnesses to say and the evidence to show.[3] For example, the Government spoke with defense counsel for Dominick Sherland on two occasions in the last two weeks regarding the evidence underlying the firearms charges in the Indictment, among other topics. While these conversations necessarily involve some generalities to protect the identities of the witnesses at this stage, the Government has used these conversations to ensure that the Moving Defendants have notice of particular incidents that it presently intends to prove against the Moving Defendants using cooperating witness testimony as well as the nature of those witnesses' expected testimony regarding each defendant's involvement in the conspiracy more generally.

In short, there is no mystery about the charges here, and the defendants have pointed to nothing that renders them unable to prepare for trial based on information already provided, or that will be provided at the appropriate time. Through the filings, the extensive discovery the Government has produced, and conversations with counsel, the Government has "identif[ied] with sufficient particularity the nature of the charge pending against [t]he defendants, thereby enabling the defendant[s] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [they] be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574. Accordingly, the motions for bills of particulars should be denied.

## V.    The Moving Defendants' Motions for Disclosure of Rule 404(b) Evidence Should Be Denied

Due to the nature of the charges in this case—in particular, the racketeering and narcotics trafficking conspiracies—the Government does not presently anticipate seeking to introduce Rule

---

[3]   The Government has repeatedly made itself available for these conversations before and during the process of plea negotiations and has spoken with every defense attorney that has requested to discuss the substance of the cooperating witness statements.

404(b) evidence at this trial.  Rather, almost all prior crimes or bad acts of the Moving Defendants are direct evidence of their involvement in the Gang and its drug dealing. *See United States* v. *Mejia*, 545 F.3d 179, 206 (2d Cir. 2008) ("Where, as here, the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible 'to prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated.'" (quoting *United States* v. *Matera*, 489 F.3d 115, 120 (2d Cir. 2007)); *United States* v. *Diaz*, 176 F.3d 52, 79-80 (2d Cir. 1999) (affirming admission of prior uncharged crimes and bad acts as direct evidence of racketeering conspiracy).

    To the extent that the Government does identify Rule 404(b) evidence, the Government has agreed to provide notice to the defendants on October 9, 2017, a month before trial. Less than four weeks' notice has routinely been held to be adequate under the notice provision of Rule 404(b).  *See United States* v. *Valenti*, 60 F.3d 941, 945 (2d Cir. 1995) (in embezzlement case, four days' notice of evidence of prior wire transfers showing defendant's knowledge sufficient notice of other acts evidence under Rule 404(b)); *Triana-Mateus*, 2002 WL 562649, at *6 (directing Government to provide 404(b) notice two weeks before trial).  Requiring substantially more than four weeks' notice would be inappropriate, moreover, because the "evidence that the Government wishes to offer may well change as the proof and possible defenses crystallize."  *See United States* v. *Matos-Peralta,* 691 F. Supp. 780, 791 (S.D.N.Y. 1988).  In this regard, the Second Circuit has approved disclosure of Rule 404(b) evidence as late as four days before, and even during, trial depending on the circumstances of the particular case.  *See Valenti*, 60 F.3d at 945.

In light of the Government's current belief that it will not seek to admit 404(b) evidence, and the agreed upon date for disclosure of any such evidence a month before trial, the Court should deny the Moving Defendants' motions for earlier disclosure of such evidence.

## VI.   Tyrell's Motion to Suppress Physical Evidence Should Be Denied Without A Hearing

Tyrell moves to suppress evidence seized pursuant to a March 28, 2014 warrantless arrest on the basis that law enforcement officers lacked probable cause to arrest him. This motion should be denied without a hearing because Tyrell has not raised a sufficient factual dispute regarding the underlying probable cause for the arrest.

### A.   Factual Background

On March 28, 2014, Tyrell and two other individuals were arrested by New York City Police Department ("NYPD") officers in the vicinity of White Plains Road and East 224th Street, Bronx, New York for robbery and possession of marijuana. The victim of the robbery reported that the perpetrators brandished a black firearm and forcibly took from the victim a cellphone, approximately $16 dollars, and earplugs. Police canvassed the area around the robbery with the victim who, approximately 35 minutes after the robbery, identified Tyrell as one of the robbers. Incident to Tyrell's arrest, officers seized a cellphone and earplugs matching the victim's description of the victim's belongings, and approximately 39 baggies of marijuana, among other items.

### B.   Applicable Law

It is well-settled in this Circuit that a motion to suppress does not require a hearing unless there is a factual dispute. *United States* v. *Pena*, 961 F.2d 333, 339 (2d Cir. 1992). Specifically, "[a]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that

contested issues of fact going to the validity of the [arrest] are in question." *United States* v. *Odeh*, 552 F.3d 157, 165 (2d Cir. 2008) (quoting *United States* v. *Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted)). "To create a factual dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge." *United States* v. *Urena-Pere*, No. 91 Cr. 964, 1992 WL 17977, at *1 (S.D.N.Y. Jan. 24, 1992). "Courts have made clear that attorney affidavits are insufficient to warrant a suppression hearing." *United States* v. *Cicuto*, No. 10 Cr. 138, 2010 WL 3119471, *4 (S.D.N.Y. August 6, 2010) (citing *United States v. Shaw*, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) (collecting cases).

The burden of showing the existence of a factual dispute is on the defendant. *United States* v. *Cicuto*, No. 10 Cr. 138, 2010 WL 3119471, at *4 (S.D.N.Y. Aug. 6, 2010). In the absence of an affidavit of anyone with personal knowledge, an evidentiary hearing is unnecessary. *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) ("The required showing must be made by an affidavit of someone with personal knowledge of the underlying facts"), *aff'd*, 923 F.2d 842 (2d Cir. 1990). "A hearing is not required if the defendant's statements are general, conclusory or based on conjecture." *Id.* (citing *United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985)).

A warrantless arrest of an individual in a public place is consistent with the Fourth Amendment so long as the arrest is supported by probable cause.  *Atwater* v. *City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").  "Probable cause to arrest exists 'when the [arresting officers] have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an

14

offense has been or is being committed (2) by the person to be arrested.'" *United States* v.

*Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987).  In determining whether probable cause existed, a court

must consider "the facts available to the officer at the time of the arrest," *Ricciuti* v. *N.Y.C.*

*Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), and examine the totality of the circumstances,

*see Illinois* v. *Gates*, 462 U.S. 213, 238 (1983).

> ### C.    Discussion

Tyrell has not met his burden of establishing the existence of a factual dispute that would

warrant an evidentiary hearing regarding the March 28, 2014 arrest.  The affirmation of Tyrell's

attorney acknowledges that the police canvassed the area around the robbery with the victim, who,

within a short period of time, identified Tyrell as one of the robbers. Tyrell argues that the

description over the radio was insufficient to establish probable cause, but does not address the

victim's in-person identification. The identification of Tyrell by the victim alone was enough to

establish probable cause for the arrest, and Tyrell has not offered any facts that would call the

police's reliance on the victim into question.  *See, e.g.*, *Stansbury* v. *Wertman*, 721 F.3d 84, 90-91

(2d Cir. 2013) (internal quotation marks omitted) ("[A]bsent circumstances that raise doubts as to

the victim's veracity, a victim's identification is typically sufficient to provide probable cause.").

Because Tyrell has "failed to challenge the Government's description of the facts through an

affidavit based on personal knowledge," his request for a suppression hearing must be denied.

*Cicuto*, 2010 WL 3119471, at *4. An attorney affirmation is simply insufficient to trigger a

hearing. *Id.*

## VII.    Tyrell's Motion for a Pretrial Hearing as to the Existence of a Conspiracy Should be Denied

Tyrell's motion for a pretrial hearing as to the existence of the charged racketeering

conspiracy, pursuant to *United States* v. *James*, 590 F.2d 575 (5th Cir. 1979), should be denied.

15

Tyrell fails to acknowledge that the Second Circuit has expressly rejected *James*, which required a pretrial hearing to determine whether a conspiracy existed before co-conspirator statements could be offered at trial pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.  *See United States* v. *Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969); *United States* v. *Walker*, 922 F. Supp. 732, 746 (N.D.N.Y. 1996); *United States* v. *Feola*, 651 F. Supp. 1068, 1129-30 (S.D.N.Y. 1987) ("In this Circuit, the functional equivalent of what the Fifth Circuit calls a James hearing and requires before trial is provided by a *Geaney* ruling, which is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case. . . . Defendants who want James hearings should so conduct their business as to be tried in the Fifth or Eleventh Circuits.").

Rather, in the Second Circuit, the procedure for admitting co-conspirator statements is to permit introduction of the statements at trial subject to connection.  "Under the *Geaney* rule, statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" to establish the prerequisites for admission.  *United States* v. *Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993); *see Bourjaily* v. *United States*, 483 U.S. 171 (1987); *United States* v. *Saneaux*, 365 F. Supp. 2d 488 (S.D.N.Y. 2005) (discussing the *Geaney* procedures in light of amendments to Rule 801(d)(2)(E)); *United States* v. *Saneaux*, 365 F. Supp. 2d 493, 503 (S.D.N.Y. 2005) ("[A]dher[ing] to the near uniform practice of district judges in this circuit and refrain[ing] from requiring the government to offer this proof in a pre-trial evidentiary hearing. . . .").  Following admission of the co-conspirator hearsay statements at trial, "[i]f the government succeeds in persuading the court that the conditionally admitted coconspirator statements were made during and in furtherance of a conspiracy of which both the declarant and the defendant were members, the statements are

16

allowed to go to the jury.  If the court is not so persuaded, it either should instruct the jury to disregard the statements, or, if those statements were so large a proportion of the proof as to render a cautionary instruction of doubtful utility, should declare a mistrial." *Tracy*, 12 F.3d at 1199.

Tyrell's motion should therefore be denied because it is contrary to Second Circuit law. Instead, at trial, the Court should conditionally admit statements of co-conspirators made in furtherance of the conspiracy, subject to submission of the necessary evidence to establish the existence of a conspiracy.

Tyrell's motion in the alternative to inspect the grand jury minutes should likewise be denied. In order to protect the secrecy of the grand jury, "a party seeking disclosure of grand jury minutes in this Circuit confronts a stringent standard, namely, he must 'show a particularized need that outweighs the government's strong interest in secrecy.'" *United States v. Brown,* No. 95 Cr. 168, 1995 WL 387698, *7 (S.D.N.Y. June 30, 1995) (quoting *United States v. Moten,* 582 F.2d 654, 662 (2d Cir.1990)); *see also* Fed. R. Crim. P. 6(e)(3)(C)(ii) (prohibiting disclosure of matters occurring before a grand jury, except "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury"). A presumption of regularity applies to grand jury proceedings, and "a review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." *United States* v. *Sullivan*, No. 02 Cr. 1144, 2004 WL 253316, at *6-*7 (S.D.N.Y. Feb. 10, 2004). This standard applies not only to production of grand jury minutes to a defendant, *see United States* v. *Sells Eng'g,* 463 U.S. 418, 443 (1983) (mandating a defendant seeking disclosure of grand jury minutes must demonstrate a "particularized need" for the material sought), but to production to the court for *in camera* inspection as well, *see United States* v. *Nunez,* No. 00 Cr. 121, 2001 WL

17

91708, \*11 (S.D.N.Y.2001) (denying request for production of minutes to defendant and for *in camera* review because defendant only presented a "bald allegation" that a review of the minutes was necessary to ensure that the grand jurors were properly instructed on the controlling law). Tyrell has not met his burden of showing particularized facts that could justify a review of the grand jury proceedings, and his motion should therefore be denied.

## VIII.   The Possible 25-Year Mandatory Minimum Sentence Applicable to Sherland Does Not Violate the Eighth Amendment

Sherland moves to dismiss Count Five of the S6 Indictment on the basis that the applicable mandatory minimum sentence of 25 years' imprisonment for a second conviction under Title 18, United States Code, Section 924(c), violates the Eighth Amendment's prohibition on cruel and unusual punishment when imposed on a statutory juvenile. Sherland asserts, in substance, that the Government will be unable to prove that Sherland used, possessed, brandished or discharged a second firearm after reaching the age of 18.  This is incorrect, both as a matter of law and fact.

As indicated above, the S6 Indictment charges Sherland with two firearms offenses. Count Five charges Sherland with possession, brandishing, and discharge of firearms in furtherance of the racketeering conspiracy charged in Count One, in violation of Title 18, United States Code, Section 924(c)(1)(a)(iii). Count Six charges Sherland with possession, brandishing, and discharge of firearms in furtherance of the narcotics conspiracy charged in Count Three, in violation of Title 18, United States Code, Section 924(c)(1)(a)(iii).  If Sherland is convicted on both Count Five and Count Six, he faces a mandatory minimum sentence of 30 years (5 years on Count Five, with a consecutive 25 years on Count Six) on both counts.[4]

---

[4] As correctly noted by defense counsel, Sherland also faces a possible ten-year mandatory minimum sentence on Count Three, the narcotics charge.

First, the Court should deny Sherland's motion to dismiss as a matter of law. While *Graham* v. *Florida*, 560 U.S. 48 (2010), outlawed life without parole sentences for juveniles as violating the Eighth Amendment, there is no legal precedent extending that decision to shorter mandatory minimum terms of imprisonment.  Indeed, while a life without parole sentence "deprives the convict of the most basic liberties without giving hope of restoration," and is therefore comparable to the death penalty in its severity, *See Graham*, 560 U.S. at 70-71, the same cannot be said for a 25-year (or even 30-year) mandatory minimum sentence which nevertheless offers the likelihood that the defendant will be released during his lifetime.

Second, the Government will prove at trial that Sherland possessed multiple firearms in furtherance of the charged racketeering and narcotics conspiracies after reaching the age of majority.  The timeframe for the alleged conspiracies is 2007 to 2016. Sherland turned 18 in May 2010, and spent another approximately six years leading and participating in the activities of the Gang after he was a legal adult, including activities involving firearms. The Government's proof includes evidence regarding certain specific instances in which Sherland possessed or otherwise used a firearm, including multiple instances after 2010;[5] as well evidence that Sherland had access to firearms that the Gang stored for collective use by its members, and knowledge that the members were engaging in activities using those guns. Thus, even assuming that certain mandatory minimum sentences would be unconstitutional as applied to a juvenile, there is no basis for that claim in this case.

---

[5] For example, of the firearms incidents cited on pages 5 to 6 of Sherland's supplemental memorandum, the Government has previously informed defense counsel that two of those incidents occurred after 2010.

19

Ultimately, Sherland's argument that Count Five should be dismissed because the Government cannot prove he possessed a firearm as an adult is a question of fact, which cannot not form the basis for a pre-trial dismissal of that charge.   *See United States* v. *Piedrahita*, 791 F. Supp. 418, 420 (S.D.N.Y. 1992) ("A district court may not dismiss a facially valid indictment based upon a charge of insufficient evidence." (citing cases)); *see also United States* v. *Critzer,* 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the evidence.").   Since there is no basis either in fact or in law to dismiss the firearms charges, the Court should deny Sherland's motion to dismiss.

## IX.    Sherland Lacks Standing to Suppress the Cellphone

Sherland moves to suppress the contents of a cellphone seized incident to an arrest on August 26, 2015 on the basis that the warrant to search the cellphone lacks probable cause. Sherland's motion should be denied because the cellphone in question belonged to another individual, co-defendant Michael Francis, and Sherland therefore lacks standing to challenge the search.

### A.    Factual Background

As set forth in the affidavit supporting the search warrant at issue (the "Search Warrant")— attached hereto as Exhibit A—on August 26, 2015, Sherland and Francis were arrested following a car stop by the NYPD. The officers recovered a firearm from Sherland, who was driving the vehicle, and ten bags of marijuana from Francis. Three cellphones were recovered from the vehicle in which Sherland and Francis had been riding ("Subject Device-1," "Subject Device-2," and "Subject Device-3"). After the arrest, Sherland claimed that Subject Device-1 belonged to him, and Francis claimed that Subject Device-2 and Subject Device-3 belonged to him.

20

After obtaining the Search Warrant, the Government was unable to conduct a search of Subject Device-1, an iPhone 6, because the phone was locked with a passcode, and in 2015, the technology did not exist to bypass that lock. The content of Subject Device-1, which Sherland claimed as his phone, was therefore never searched.[6] The Government was, however, able to search Subject Device-2, a Kyocera Model 3420, which belonged to Francis. The content of Subject Device-2, including text messages and the phone number, as well as intercepted wiretap conversations, establish that Subject Device-2 belonged to Francis.

### B.    Applicable Law

A defendant seeking to raise a Fourth Amendment claim has the burden of establishing standing to bring such a claim. *See United States* v. *Osorio,* 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). To establish standing to raise a Fourth Amendment claim, a defendant must demonstrate that he had an expectation of privacy in the items seized. *Id.* at 40 ("In evaluating these claims, the court generally considers whether the defendant had any property or possessory interest in the . . . items seized."); *see United States* v. *Salvucci,* 448 U.S. 83, 95 (1980) (remanding on the issue of standing since Petitioners "did not attempt to establish that they had a legitimate expectation of privacy in the areas of ... [the] home where the goods were seized").

---

[6] Due to advances in technology, the Government may now have the technical capability to access the content of Subject Device-1, but will not do so without first seeking a new search warrant. In the event that the Government is able to search Subject Device-1, the Government will promptly produce the renewed search warrant and phone contents to Sherland, and does not object to the later filing of a renewed motion to suppress.

### C.      Discussion

As explained above, the cellphone that Sherland seeks to suppress, Subject Device-2, did not belong to Sherland. Nor has Sherland met his burden of establishing that he had a reasonable expectation of privacy in the content of that cellphone. Sherland's motion to suppress should therefore be denied as a matter of law without a hearing. *See, e.g.*, *United States* v. *Dore*, 586 F. App'x 42 (2d Cir. 2014) (affirming denial of suppression motion for cell-site records where defendant did not submit affidavit establishing that cellphones belonged to him).

## X.      Conclusion

The Court should deny the Moving Defendants' motions in their entirety without a hearing.

Dated:  New York, New York
         September 1, 2017

                                        Respectfully submitted,

                                        JOON H. KIM
                                        Acting United States Attorney
                                        for the Southern District of New York

                    By:    _____/s/_____
                                        Jessica Feinstein
                                        Rachel Maimin
                                        Micah W.J. Smith
                                        Assistant United States Attorneys
                                        Tel.:  (212) 637-2460

# EXHIBIT A

AO 93  (SDNY Rev. 05/10) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

<table>
<tr><td>In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Subject Device-1, Subject Device-2, and Subject<br>Device-3</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>15 MAG   3051<br><br>Case No.   15 Mag.</td></tr>
</table>

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Southern_____ District of _____New York_____ *(identify the person or describe the property to be searched and give its location)*:
   See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

  See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____
                                                                    *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Clerk of the Court.
   ☑ Upon its return, this warrant and inventory should be filed under seal by the Clerk of the Court. _____
                                                                                                    *USMJ Initials*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐for _____ days *(not to exceed 30)*.
   ☑until, the facts justifying, the later specific date of ____02/23/2016____ .

Date and time issued:    AUG 2 7 2015
                          12:05 PM                          s/ James L. Cott
                                                            _____
                                                                      *Judge's signature*

City and state:   New York, NY                              Honorable James L. Cott
                  _____                  _____
                                                                   *Printed name and title*

BMB010403

AO 93  (Rev. 01/09) Search and Seizure Warrant (Page 2)

## Return

| Case No.: 15 Mag. | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the Court.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

BMB010404

## Attachment A

### I. Devices to be Searched (collectively, the "Subject Devices")

Subject Device-1 is particularly described as a silver iPhone 6 cellular telephone with IMEI number 54410067757347. Subject Device-1 has been vouchered under New York City Police Department ("NYPD") Property Clerk Invoice number 2000461871.

Subject Device-2 is particularly described as a black Kyocera Model E4210 cellular telephone with FCC ID number V65E4210. Subject Device-2 has been vouchered under NYPD Property Clerk Invoice number 2000461871.

Subject Device-3 is particularly described as a black iPhone with Model A1349 and FCC ID BCG-E2422B. Subject Device-3 has been vouchered under NYPD Property Clerk Invoice number 2000461871.

### II. Review of ESI on the Subject Devices

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Devices for the following evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 846 (the "Subject Offenses"):

1.  Any subscriber or caller identification information; as well as location information for Subject Device-1 and Subject Device-2;

2.  Any call log information;

3.  Any missed, incoming, and outgoing calls and any information associated with those numbers;

4.  Any telephone numbers, address information, photographs or other identification information;

5.  Any voice mail, text messages, emails, videos, and/or photographs, which reflect or contain discussions, conversations, or images that constitute evidence of, or property designed for use, intended for use, or used in committing violations of, Title 21, United States Code, Section 846; and

6.  Assigned Telephone number(s).

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Subject Device-1, Subject Device-2, and Subject
Device-3

)
)
)
)
)
)

## 15 MAG 3051

Case No. 15 Mag.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____Southern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized)*:

PLEASE SEE ATTACHED AFFIDAVIT AND RIDER.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Narcotics Trafficking |
| 18 U.S.C. 924(c) | Possession of a Firearm in furtherance of Narcotics Trafficking |

The application is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT AND RIDER.

☑ Continued on the attached sheet.

☑ Delayed notice of __180__ days (give exact ending date if more than 30 days: __02/23/2015__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Det. Paul O'Connor
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____08/27/2015_____

_____
*Judge's signature*

City and state: New York, New York

Honorable James L. Cott
*Printed name and title*

BMB010406

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of the United
States Of America for a Search Warrant for (i) a
Silver iPhone 6, Vouchered under New York City
Police Department Property Clerk Invoice
Number 2000461871; (ii) a Black Kyocera
Model E4210 Cellular Telephone, Vouchered
under New York City Police Department
Property Clerk Invoice Number 2000461871; and
(iii) a Black iPhone Model A1349, Vouchered
Under New York City Police Department
Property Clerk Invoice Number 2000461871,
USAO Reference Number 2014R01698.

**TO BE FILED UNDER SEAL**

**Agent Affidavit in Support of
Application for Search Warrant**

SOUTHERN DISTRICT OF NEW YORK) ss.:

 PAUL O'CONNOR, being duly sworn, deposes and says:

# I. Introduction

## A. Affiant

 1. I am a Detective with the Bronx Gang Squad of the New York City Police Department (the "NYPD"). During my tenure with the NYPD, I have participated in numerous investigations of violent street gangs and drug dealers. In connection with such investigations, I have also participated in the execution of numerous search warrants involving electronic evidence, such as cellular and smart phones.

 2. I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for warrant to search the electronic devices specified below for the items and information described in Attachment A. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis of electronically stored information

("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### B. Subject Device-1

3.      Subject Device-1 is a silver iPhone 6 cellular telephone with IMEI number 54410067757347. Subject Device-1 has been vouchered under New York City Police Department ("NYPD") Property Clerk Invoice number 2000461871. For the reasons described below, I believe that Subject Device-1 belongs to DOMINICK SHERLAND, who I believe is involved in, among other things, narcotics and firearms trafficking.

4.      Based on my training, experience, and research, I know that Subject Device-1 has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.

5.      Subject Device-1 is presently located in the Southern District of New York.

### C. Subject Device-2

6.      Subject Device-2 is a black Kyocera Model E4210 cellular telephone with FCC ID number V65E4210. Subject Device-2 has been vouchered under NYPD Property Clerk Invoice number 2000461871. For the reasons described below, I believe that Subject Device-2 belongs to MICHAEL FRANCIS, who I believe is involved in, among other things, narcotics trafficking.

7.      Based on my training, experience, and research, I know that Subject Device-2 has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.

BMB010408

8.      Subject Device-2 is presently located in the Southern District of New York.

**D.   Subject Device-3**

9.      Subject Device-3 is a black iPhone with Model A1349 and FCC ID BCG-E2422B.  Subject Device-3 has been vouchered under NYPD Property Clerk Invoice number 2000461871.  For the reasons described below, I believe that Subject Device-2 belongs to MICHAEL FRANCIS, who I believe is involved in, among other things, narcotics trafficking.

10.     Based on my training, experience, and research, I know that Subject Device-3 has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.

11.     Subject Device-3 is presently located in the Southern District of New York.

**E.   The Subject Offenses**

12.     For the reasons detailed below, I believe that there is probable cause to believe that Subject Device-1, Subject Device-2, and Subject Device-3 (collectively, the "Subject Devices") contain evidence, fruits, and instrumentalities of narcotics trafficking, in violation of Title 21, United States Code, Section 846 (the "Subject Offenses").

**II.  Probable Cause**

**A.   Probable Cause Regarding Commission of the Subject Offenses**

13.     Based on my conversations with another law enforcement officer ("Officer-1"), I have learned the following, in substance and in part:

a.      Or about August 26, 2015, Officer-1 conducted a car stop of two individuals later identified as DOMINICK SHERLAND and MICHAEL FRANCIS. SHERLAND was operating the vehicle and FRANCIS was a passenger.

b.      During the course of the stop, law enforcement recovered a firearm (the "Firearm") in SHERLAND's possession.  The Firearm was a loaded SCCY CPX-1 nine-

3

BMB010409

millimeter pistol, with eight live rounds in a magazine.  Based on my review of New York City Police Department records, I have learned, in substance and in part, that the Firearm has been reported stolen from firearms dealer located in Powhatan, Virginia.

       c.     During the course of the stop, law enforcement recovered approximately ten bags of a substance appearing to be marijuana from FRANCIS's waistband area.

       d.     Both SHERLAND and FRANCIS were arrested.  After he was arrested, SHERLAND spontaneously stated, in substance and in part, that he carried the firearm for personal protection.  FRANCIS was issued a summons for the marijuana and released.

       e.     Subject Device-1, Subject Device-2, and Subject Device-3 were recovered in the vehicle.  After they were arrested, SHERLAND claimed that Subject Device-1 belonged to him, and FRANCIS that Subject Device-2 and Subject Device-3 belonged to him.

       14.     Based on my review of New York City Police Department records, I have learned the following, in substance and in part:

       a.     SHERLAND has an outstanding New York State warrant for possession of over two ounces of marijuana and was arrested (1) on or about June 22, 2012, for sale of marijuana; and (2) on or about June 28, 2014, for possession of marijuana.

       b.     FRANCIS was arrested on or about July 9, 2014 after selling a quantity of crack-cocaine to an undercover law enforcement officer.

**B.  Probable Cause Justifying Search of the Subject Devices**

       15.     Based on my training and experience and the facts set forth above, I believe that DOMINICK SHERLAND and MICHAEL FRANCIS used the Subject Devices to further their participation in narcotics and firearms trafficking.  I believe that SHERLAND and FRANCIS were selling marijuana, in part because of SHERLAND's possession of a firearm and the quantity of bags of marijuana recovered from FRANCIS's possession.

4

BMB010410

16.     Based on my training and experience, I know that individuals who distribute controlled substances often use cellular telephones to communicate with co-conspirators, customers, and suppliers in order to be mobile and to evade detection by law enforcement. Additionally, I know that individuals engaged in conspiracies to distribute controlled substances often maintain addresses and telephone numbers for their associates.   Such addresses and telephone numbers are often maintained on telephones.  This might help determine the identities of various of SHERLAND and FRANCIS's co-conspirators.  Moreover, based on my training and experience, I know that individuals engaged in narcotics conspiracies often take photographs of drugs and firearms, and photographs with other co-conspirators.   A search of the digital storage of the Subject Devices is likely to reveal photographs including evidence or photographs which demonstrate association among members of the conspiracy.

17.     In particular, like individuals engaged in any other kind of activity, individuals who engage in narcotics trafficking conspiracies store records relating to their illegal activity and to other persons involved in that activity on electronic devices such as the Subject Devices. Such records can include, for example, e.g., photographs, videos, logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts. Such individuals often store such records in order to, among other things, (1) keep track of co-conspirators' contact information; (2) facilitate communication among members of the conspiracy; and (3) promote the conspiracy by taking photographs and videos and circulating them, including to customers who buy drugs and potential customers.

18.     I further believe that the Subject Devices may contain communications, records, or images reflecting how SHERLAND acquired the Firearm.

BMB010411

19.    Computer files or remnants of such files can be recovered months or even years after they have been created or saved on an electronic device such as the Subject Devices. Even when such files have been deleted, they can often be recovered, depending on how the hard drive has subsequently been used, months or years later with forensics tools. Thus, the ability to retrieve from information from the Subject Devices depends less on when the information was first created or saved than on a particular user's device configuration, storage capacity, and computer habits.

## III.  Procedures for Searching ESI

### A.  Review of ESI

20.    Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained on the Subject Devices for information responsive to the warrant.

21.    In conducting this review, law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.   Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of

BMB010412

the investigation. (Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text. Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.)

22.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.   Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Devices to locate all data responsive to the warrant.

**B.   Return of Subject Device-1 and Subject Device-2**

23.     If the Government determines that the Subject Devices are no longer necessary to retrieve and preserve the data on the device, and that the device is not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return Subject Device-1 or Subject Device-2, upon request.   Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

**IV.   Conclusion and Ancillary Provisions**

24.     Based on the foregoing, I respectfully request the court to issue a warrant to search and seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.

25.     I also respectfully request that the Court authorize delayed notice of the execution of the search warrant for a period of 180 days.   The investigation of DOMINICK SHERLAND and MICHAEL FRANCIS is ongoing.   Although SHERLAND and FRANCIS undoubtedly know that their phones have been seized in connection with their arrest, they may not know that

7

BMB010413

law enforcement was able to search their phones successfully.  They also likely do not know that they are part of a federal investigation.  To the extent SHERLAND or FRANCIS becomes aware of this information, they may take steps to destroy evidence, alert co-conspirators with the investigation, and/or tamper with witnesses.

PAUL OCONNOR
Detective
New York City Police Department

Sworn to before me on
August 27, 2015

HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8

BMB010414

## Attachment A

### I. Devices to be Searched (collectively, the "Subject Devices")

Subject Device-1 is particularly described as a silver iPhone 6 cellular telephone with IMEI number 54410067757347. Subject Device-1 has been vouchered under New York City Police Department ("NYPD") Property Clerk Invoice number 2000461871.

Subject Device-2 is particularly described as a black Kyocera Model E4210 cellular telephone with FCC ID number V65E4210. Subject Device-2 has been vouchered under NYPD Property Clerk Invoice number 2000461871.

Subject Device-3 is particularly described as a black iPhone with Model A1349 and FCC ID BCG-E2422B. Subject Device-3 has been vouchered under NYPD Property Clerk Invoice number 2000461871.

### II. Review of ESI on the Subject Devices

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Devices for the following evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 846 (the "Subject Offenses"):

1. Any subscriber or caller identification information; as well as location information for Subject Device-1 and Subject Device-2;

2. Any call log information;

3. Any missed, incoming, and outgoing calls and any information associated with those numbers;

4. Any telephone numbers, address information, photographs or other identification information;

5. Any voice mail, text messages, emails, videos, and/or photographs, which reflect or contain discussions, conversations, or images that constitute evidence of, or property designed for use, intended for use, or used in committing violations of, Title 21, United States Code, Section 846; and

6. Assigned Telephone number(s).

BMB010415

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Subject Device-1, Subject Device-2, and Subject<br>Device-3 | )<br>)<br>)<br>)<br>)<br>)  Case No. 15 Mag.<br>**15 MAG  3051** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____Southern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized)*:

PLEASE SEE ATTACHED AFFIDAVIT AND RIDER.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Narcotics Trafficking |
| 18 U.S.C. 924(c) | Possession of a Firearm in furtherance of Narcotics Trafficking |

The application is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT AND RIDER.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _180_ days (give exact ending date if more than 30 days: _02/23/2015_ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Det. Paul O'Connor
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____08/27/2015_____

_____
*Judge's signature*

City and state:  New York, New York

Honorable James L. Cott
_____
*Printed name and title*

BMB010416