UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

DANTE STEPHENS,

               Defendant.

No. 15 CR 95 (AJN)

**FILED UNDER SEAL**

## SENTENCING MEMORANDUM ON BEHALF OF DANTE STEPHENS

JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 891-1600
Fax:  (212) 891-1699

*Attorneys for Dante Stephens*

919 THIRD AVENUE NEW YORK, NY 10022-3908          **J E N N E R & B L O C K** L.L.P.

September 15, 2017

**BY ECF AND HAND DELIVERY**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Katya Jestin
Tel +1 212 891 1685
kjestin@jenner.com

Anthony S. Barkow
Tel  +1 212 891 1662
abarkow@jenner.com

Re:    *United States v. Dante Stephens*, 15-cr-95 (AJN)

Dear Judge Nathan:

        As counsel to Dante Stephens, we respectfully write regarding his sentencing, which is currently scheduled for Friday, September 22 at 11:00 A.M. For the reasons set forth below, we respectfully request that the Court impose a sentence of 24 months of custodial supervision consisting of a term of 16 months of incarceration followed by a period of supervised release with the condition that Mr. Stephens participate in and successfully complete an approximately nine-month in-patient drug rehabilitation program.[1]

        Mr. Stephens committed a serious crime, and nothing in this letter is intended to excuse or minimize his conduct. But Mr. Stephens takes full responsibility for his actions. Viewed in the context of his life circumstances, the specifics of the offense, and in comparison with the conduct and sentences of his co-defendants, we submit that the requested below-Guidelines sentence is appropriate.

        As described in Part II of this letter, Mr. Stephens is a very young man – he is only 24 years old – who had a troubled, unstable childhood but who is devoted to his children and who, throughout his life, has provided critical emotional and financial support to family and friends. Mr. Stephens has accepted responsibility for the actions that led him to where he is today and has made sincere, concrete steps towards rehabilitation. In addition, as set out in Part III of this letter, while we do not wish to minimize the seriousness of Mr. Stephens's actions in any way, his

_____

[1] In the alternative, we respectfully request that the Court impose a sentence of no more than 24 months' imprisonment and recommend that Mr. Stephens be enrolled, depending upon his eligibility, in the Bureau of Prisons's Non-Residential Drug Abuse Treatment or the Bureau of Prisons's Residential Drug Abuse Program ("RDAP").

September 15, 2017
Page 2

relatively limited participation in the conduct attributed to the gang known as Big Money Bosses ("BMB") and considerations of horizontal equity counsel in favor of the requested below-Guidelines sentence.  As discussed in Part IV, we further respectfully submit that a one-level downward departure is warranted pursuant to U.S.S.G. § 2E1.1, Application Note 4, because including certain of his prior sentences – which were for conduct directly related to the instant offense – in his criminal history score creates an anomalous result. Finally, as described in Part V of this letter, a downward variance is warranted because Mr. Stephens's criminal history category over-represents the seriousness of his criminal record.

## I.   Legal Standard

A defendant's Guidelines range provides "the starting point and the initial benchmark" for a sentencing court.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  However, the Guidelines are merely "advisory," *United States v. Booker*, 543 U.S. 220, 245 (2005), and a sentence imposed within it is not presumptively reasonable, *Gall*, 552 U.S. at 50.  A sentencing court must thus also conduct its own independent review of all the relevant sentencing factors under 18 U.S.C. § 3553(a) to reach an "individualized assessment" based on a defendant's particular circumstances. *Gall*, 552 U.S. at 49–50; *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).

In keeping with this broad authority, a court may impose a sentence below the recommended Guidelines range, *Cavera*, 550 F.3d at 189, and, indeed, *must* impose a lesser sentence if it is sufficient to comply with Section 3553(a)'s sentencing purposes, *see United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010); *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).  In sum, the overarching task of a sentencing court is to fashion a sentence that is appropriate to both the individual circumstances of the offense and the defendant and that is "sufficient, but not greater than necessary" to achieve the goals of punishment, deterrence, and rehabilitation.  *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)).

## II.   Mr. Stephens's Character and Circumstances Warrant Leniency

It is well-established that a defendant's background, including his upbringing, family circumstances, and efforts towards rehabilitation, may justify granting a below-Guidelines sentence.  18 U.S.C. § 3553(a)(1) & (2)(c) (instructing courts to consider "the history and characteristics of the defendant" and the need "to protect the public from further crimes of the defendant"); *see also, e.g., United States v. Johnson*, 964 F.2d 124, 128 (2d Cir. 1992) (family circumstances); *United States v. Maier*, 975 F.2d 944, 948 (2d Cir. 1992) (willingness to achieve rehabilitation). Here, an examination of Mr. Stephens's background and character – including his particularly difficult childhood, his kind and caring nature, his commitment to his children, the support he provides to family and friends, and his acceptance of responsibility and commitment to rehabilitation – weighs in favor of a sentence that will permit Mr. Stephens to be released from detention and enrolled in an in-patient drug rehabilitation program.

September 15, 2017
Page 3

A. <u>Mr. Stephens's Difficult Upbringing</u>

Mr. Stephens, who is just 24 years old, was born in 1993 in the Bronx. Presentence Investigation Report dated July 21, 2017 (hereinafter "PSR") ¶ 52. He had a highly unstable childhood affected by the constant struggle to make ends meet and absent parents. Mr. Stephens's father left "to have another family" when Mr. Stephens was still a young child. *Id.* ¶ 53; Letter of H. Anderson, Center for Community Alternatives ("CCA")[2] (hereinafter "CCA Report") at 3, attached hereto as Exhibit 1. His father soon stopped providing child support. PSR ¶ 53. Even before Mr. Stephens's parents separated, they were only able to provide the basic essentials of food and clothing and they argued frequently regarding lack of money. *Id.*

Mr. Stephens received little parental guidance following his parents's separation. He was left in the care of his older sister, Dana, who raised him because his mother was emotionally – and often physically – absent. CCA Report at 2–3; Letter of Dana Stephens (hereinafter "Dana Stephens Ltr."), attached hereto as Exhibit 2. When Dana also moved out of the house, Mr. Stephens "lost his primary care taker and oldest friend," leaving him alone with his older brother Michael, who would "ignore him or bully him." CCA Report at 3. For many years, Mr. Stephens was discouraged from seeing his father due to animosity between his parents, PSR ¶ 53, and his mother prioritized romantic relationships over caring for her son, CCA Report at 2; *see* PSR ¶ 54. In fact, Mr. Stephens has "no recollection of his mother ever being affectionate with him." CCA Report at 2. Dante and a former girlfriend describe that his mother neglected her children, leaving them to "fend for themselves" while she took trips to Jamaica, and kicked Mr. Stephens out of the house on at least one occasion. *Id.* at 3; PSR ¶ 57.

Moreover, as a child, Mr. Stephens suffered from a severe stutter that exposed him to frequent teasing by other children and negatively affected his education. CCA Report at 4. Indeed, he was branded with his nickname – Jibba – because of his stutter: other students teased Mr. Stephens for speaking "gibberish." *Id.* As a result of his stutter, he struggled with basic educational tasks such as reading out loud, and eventually – after a "recurring and humiliating cycle" of teasing – refused to do so. *Id.*

Unfortunately, life in Mr. Stephens's neighborhood also left him exposed to regular street crimes, violence, and drug use. *Id.* at 5–6, 13–14. Mr. Stephens often heard gunshots in his neighborhood, and he was "devastated" when a close friend was brutally beaten to death when he was 21 years old. *Id.* at 5, 13–15. ███████████████████████████

---

[2] CCA is a private, non-profit agency that, among other things, provides direct services in the fields of criminal and juvenile justice. CCA has worked with attorneys and courts for approximately 35 years to develop comprehensive sentencing recommendations on behalf of individual defendants to develop release plans for the incarcerated that facilitate smooth and successful transitions for defendants re-entering the community.

September 15, 2017
Page 4



The hardships that Mr. Stephens has experienced in his life, combined with his young age, and his positive contributions to the lives of his loved ones counsel in favor of a below-Guidelines sentence here. *See, e.g.*, *United States v. Charman*, No. 08 CR 1154 (RWS), 2009 WL 4858047, at *4 (S.D.N.Y. Dec. 9, 2009) (granting downward departure based on defendant's "young age, her family situation, [and] potential for employment").

### B.  Mr. Stephens's Supportive and Caring Nature Toward Family and Friends

Despite growing up in a difficult environment with limited means, Mr. Stephens's kind and gentle disposition meant he was (and is) well-liked, and he is a devoted and caring father, uncle, and friend. Indeed, Mr. Stephens's actions, including his participation in the distribution of illegal substances (which he deeply regrets), have been primarily driven by his determination to provide for his family.

The letters of support submitted to this Court attest to Mr. Stephens's love for and devotion to his children.[3] Prior to Mr. Stephens's incarceration, he had custody several days a week of his daughter, Taraji (now 7), and provided regular financial support for her. CCA Report at 7–8, 17; PSR ¶¶ 57, 72. Tania Palacios, Taraji's mother, explains that Mr. Stephens is "very caring . . . [and] very supportive. He buys [Taraji] clothing, sneakers, and makes sure that she get[s] her hair done [regularly]." CCA Report at 7–8. As Tania says, Taraji "is [Mr. Stephen's] priority." *Id.* at 17. Mr. Stephens also cares deeply for and provides for Sebastian, his 2-year old son with Taylor Jarrett, a former girlfriend. *Id.* at 8. Before his incarceration, Dante regularly provided money for Sebastian's care along with clothing, diapers, and toys. *Id.* Dante occasionally had custody of Sebastian overnight and on the weekends; Taraji loves her little brother and frequently asks to see him. *Id.*

Mr. Stephens is a beloved uncle to his sister Dana's children, currently aged 6 and 10, and also plays the role of uncle to a friend's daughter, Punchie. *Id.* at 11. He is so close with Dana's children that her son's first word was "Dante." *Id.* Punchie writes that Mr. Stephens would "bring[] me to the park, to school, to the movies" and that he is "the best Uncle EVER." Letter from Punchie, attached hereto as Exhibit 3.

---

[3] The PSR refers to Mr. Stephens's daughter, Taraji Stephens, aged 7, but not his son, Sebastian Stephens, aged 2. We therefore respectfully request that the PSR be amended to reflect that Mr. Stephens is a father of two. We have conferred with the Government, which has no objection to this request.

September 15, 2017
Page 5

The letters submitted to the Court establish Mr. Stephens's determination to provide for his family despite the limited opportunities available to him. Mr. Stephens has been working, in one form or another, to provide financial support to his loved ones since he was approximately 13 years old. PSR ¶¶ 69–71; Dana Stephens Ltr. The need to obtain a steady source of income became particularly pressing for Mr. Stephens after Tania became pregnant with their daughter, Taraji, leading him to drop out of high school before beginning 11th grade. CCA Report at 7; PSR ¶ 66. Tania recounts how, "although we was young Dante was very supportive and handled his responsibilities as a father [who] made sure that our daughter wasn't in need of anything." Letter from Tania Palacios (hereinafter "Tania Palacios Ltr"), attached hereto as Exhibit 4. But Mr. Stephens struggled to find regular, gainful employment. CCA Report at 7. Consequently, Mr. Stephens began regularly selling marijuana. *Id.*

Mr. Stephens's family and friends highlight the positive impact that Mr. Stephens has had on their lives, despite his own personal struggles. Tomoya Morgan, one of Mr. Stephens's half-siblings, explains that he has always been the person she "turn[ed] to . . . for his advice on how to overcome [her] heartbreak and misunderstandings." Letter from Tomoya Morgan, attached hereto as Exhibit 5. Tania credits Mr. Stephens with inspiring her – through his "hardworking" and "caring" nature – to be the "strong independent mother and the wom[a]n I am today." Tania Palacios Ltr. Another friend, Kahlisha Woodburn, who is currently serving in the U.S. Army, states that it is "the support of my childhood friend Dante Stephens" that allowed her to "ma[ke] it this far," explaining that he encouraged her by travelling with her to recruiting events, sending her care packages, and writing her letters when she began basic training. Letter from Kahlisha Woodburn, attached hereto as Exhibit 6; CCA Report at 11. Yet another friend describes how Mr. Stephens would "sacrifice whatever it is to help another." Letter from Sandi July, attached hereto as Exhibit 7.

Given the important role that Mr. Stephens played in their lives, his incarceration has been extremely difficult on his loved ones – particularly his sister, his girlfriend, Jessica Irons, and his children, all of whom rely on Mr. Stephens for material or emotional support. As CCA explains: "[i]t is well documented that parental separation, regardless of the cause, has profoundly traumatizing effects on children," including putting them at risk for developmental regressions, depression, and other behavioral issues. CCA Report at 15–17. Tania writes that Taraji has "notice[d] her father is absent in her life" and that there are "nights she actually cry for him." Tania Palacios Ltr. Moreover, without the help of Mr. Stephens's support, Tania was forced to move to Florida where she could stay with family, PSR ¶ 57, making it even more difficult for Mr. Stephens to maintain a connection with Taraji.

In fashioning a sentence, this Court can and should consider the significant positive impact Mr. Stephens has had on his family and friends, *see, e.g. United States v. Davis*, No. 07 CR 727 (HB), 2008 WL 2329290, at *1, 5 (S.D.N.Y. June 5, 2008) (granting below-Guidelines sentence based on the "significant positive impact" defendant had on his family), as well as the hardships he and they are suffering as a result of their separation, *see Valenia v. United States*, 2012 WL

September 15, 2017
Page 6

701227, at *2-3 (S.D.N.Y. Mar. 6, 2012) (considering "familial circumstances," including that defendant was "sole provider" and wife was unable to "pay all the bills," in setting sentence "well below" Guidelines range). Here, the significant mutual love and support between Mr. Stephens and his family and friends – as well as the dependence that his young daughter and son have on him – justify a below-Guidelines sentence.

C. Mr. Stephens's Acceptance of Responsibility and Efforts at Rehabilitation

Mr. Stephens has fully accepted responsibility for his actions and expresses great remorse for his behavior. On March 31, 2017, Mr. Stephens voluntarily entered into a plea agreement where he recognized the wrongfulness of his actions. Mar. 31, 2017 Hearing Tr. at 4:2–4, 10:14–21, attached hereto as Exhibit 13. As Mr. Stephens has already expressed to the Court, he "deeply regrets [his] actions" and is "very sorry for the harm [he has] caused." *Id.* at 10:19–21. Indeed, the Government and the Probation Department agree that Mr. Stephens is eligible for a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). PSR ¶¶ 9, 35–36.

Mr. Stephens has now been incarcerated at the Metropolitan Correctional Center ("MCC") for approximately 14 months, which has given him a significant amount of time to reflect critically on his life to date. The gravity of his offense and his conduct has been further driven home by the harsh conditions that he has had to endure at the MCC – including poor food quality, filthy cells, and rats, roaches, and centipedes that proliferate in the shower facilities.[4] ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ Those pre-sentence confinement conditions should be considered by this Court in determining the appropriate sentence. *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) ("pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures"); *Behr*, 2006 WL 1586563, at *5; *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004).

Regardless of the living conditions, Mr. Stephens's time in the MCC has caused him to reflect seriously on the importance of making a fresh start towards living a productive and lawful

---

[4] This Court has previously concluded on at least two occasions that problematic conditions at the MCC, which, as a pre-trial detention center, is not intended for long-term incarceration, is a factor that would justify a below-Guidelines sentence. *United States v. Behr*, 2006 WL 1586563, at *5 (S.D.N.Y. June 9, 2006) (Sweet, J.) (describing the MCC as "overcrowded," "unsanitary," and lacking certain facilities); *see also id.* ("noting that the Honorable Kimba Wood reduced an individual's sentence by one third based upon the harsh conditions in [a unit within the] MCC").

September 15, 2017
Page 7

life upon his release.  While in the MCC, Mr. Stephens has completed an anger management program and enrolled in the Lead By Example leadership program.  Certification of Completion dated August 2017, attached hereto as Exhibit 15; CCA Report at 10.  Perhaps most importantly, he has a legitimate job ready for him upon release: he will go to work in the kitchen in his grandmother's restaurant in Mount Vernon.  The Supreme Court has held that such post-arrest rehabilitation efforts are highly relevant to a court's consideration of the Section 3553(a) factors, militating in favor of a low sentence.  *Pepper v. United States*, 562 U.S. 476, 491 (2011).  Mr. Stephens's efforts to improve his life should thus be considered in the evaluation of an appropriate sentence.

Mr. Stephens has also thought critically about the need to avoid the triggers and circumstances that contributed to his unlawful conduct and could increase the risks of recidivism. Thus, upon his release, he will not return to the Bronx, where the BMB operates, and will instead move in with his long-term girlfriend, Jessica, in Waterbury, CT.  CCA Report at 12; PSR ¶ 56. From there, he will be able to see his family and travel the approximately one-hour drive to Mount Vernon for his work in his grandmother's restaurant, but avoid exposure to the neighborhood and crowd associated with his offense conduct.



September 15, 2017
Page 8



Given Mr. Stephens's sincere contrition; his determination to become a contributing member of society; and the concrete plan Mr. Stephens has put into place to maintain his sobriety, obtain legitimate employment, and avoid reoffending, the requested below-Guidelines sentence is appropriate here. *See, e.g., Ilayayev,* 800 F. Supp. 2d at 450 (explaining that defendant had "taken substantial steps toward rehabilitation," including drug treatment and establishing "a successful career"); *United States v. Hernandez,* No. 09 Cr. 703 (JBW), 2010 WL 2522417, at *2 (E.D.N.Y. May 28, 2010) ("It is unlikely that the defendant will engage in further criminal activity in light of his demonstrated regret and remorse, significant efforts at rehabilitation, and support of his family.").

### III.   Mr. Stephens's Limited Involvement in the Conspiracy and the Need to Avoid Sentencing Discrepancies Warrant Leniency

Without attempting to minimize his offense conduct, as discussed further below, Mr. Stephens's participation in the conduct attributed to the BMB conspiracy was relatively limited: he was a low-level drug dealer, uninvolved in any of the BMB's many crimes of violence or other illegal activities. Under these circumstances, the record here reflects that the interests of justice would be best served by releasing Mr. Stephens in the near-term to the custody of an in-patient drug rehabilitation program.

A. Mr. Stephen's Offense Conduct

In March 2017, Mr. Stephens pled guilty, pursuant to a plea agreement, to one count of participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Mr. Stephens's underlying offense for this racketeering count was a conspiracy to distribute between 40 and 60 kilograms of marijuana and between 196 and 280 grams of crack cocaine. The parties stipulated to an advisory Guidelines range of 63 to 78 months, reflecting an agreement that a one-level Guidelines departure was warranted pursuant to U.S.S.G. § 2E1.1, Application Note 4.

We respectfully submit that the Guidelines range stipulated in the plea agreement – and, as discussed further below, even more so the Guidelines range calculated by the Probation Department in the PSR – leads to a sentence longer than necessary in Mr. Stephens's case. Mr. Stephens was not involved in the most dangerous aspects of the racketeering conspiracy,

September 15, 2017
Page 9

including any acts of violence or use of firearms; indeed, the Government has not established that he was involved with any aspect of the BMB's activities beyond the distribution of narcotics. This is consistent with the fact that, as Mr. Stephens allocuted during his plea hearing, he "associated with at least one member of [the BMB]," Ex. 13 at 10:14–19, but was not himself a BMB member. Rather, Mr. Stephens's association with the BMB was the unfortunate result of the fact that he grew up in the same neighborhood, and attended the same school, as many of the BMB's members and other associates. Unlike other co-defendants in this matter, Mr. Stephens did not laud the gang in rap videos or social-media posts, and was only recorded conversing with one other co-defendant, Richard Phillips, who is also Mr. Stephens's cousin.

Moreover, although we do not seek to minimize the extent of Mr. Stephens's conduct, and he properly allocuted to having participated in the distribution of crack cocaine along with marijuana, his criminal history – which includes four arrests for marijuana possession, but none for crack cocaine possession – demonstrates that the sale of crack cocaine was, for him, an outlier, and that his primary participation in the underlying offense conduct was the distribution of marijuana. PSR ¶¶ 39–45. Given that the high advisory Guidelines range here is primarily driven by the quantity of crack cocaine, a downward variance is warranted to better reflect that Mr. Stephens dealt primarily marijuana. *See United States v. McGowan*, 288 F. App'x 288, 291–92 (7th Cir. 2008) (affirming below-Guidelines sentence imposed, where Guidelines range was "fueled" by defendant's "crack sales," after district court "considered the variance between sentences for crack and cocaine convictions and the fact that [the defendant] dealt primarily powder cocaine").

A. Mr. Stephens's Relative Culpability

In determining what constitutes a fair sentence for a particular defendant, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and may consider the sentences given to a specific defendant's co-defendants, *United States v. Florez*, 447 F.3d 145, 158 (2d Cir. 2006). As this Court is aware, this case involves 64 defendants, many of whom have already been sentenced. Although this is just one factor to be weighed at the Court's discretion, considerations of horizontal equity counsel in favor of the requested below-Guidelines sentence here. For example:

- One co-defendant – who, like Mr. Stephens, stipulated at the time of his plea to being involved in a racketeering conspiracy to distribute 196 to 280 grams of crack cocaine, was merely an associate of the BMB, was not involved in BMB violent offenses, and had not previously served "serious time" – was sentenced

September 15, 2017
Page 10

to a term of 36 months' imprisonment by this Court.[6] In contrast to Mr. Stephens, however, this Court found that that co-defendant "primarily" distributed crack cocaine and was involved in the BMB's fraud offenses.[7]

- Two other co-defendants who were BMB associates and were not involved in any charged or historical acts of violence were sentenced to 24 months' imprisonment by this Court. While those two defendants fell into lower criminal history categories than Mr. Stephens, they were arguably also more culpable given that they were "frequent" and "regular" dealers of crack cocaine who stipulated to involvement in distribution of a higher quantity of illegal substances as compared to Mr. Stephens.[8]

- Almost all the defendants sentenced to 48 months' imprisonment – the sentence recommended for Mr. Stephens by the PSR – or more had been involved in violent offenses or offenses that involved possession of a firearm, an aggravating factor not applicable to Mr. Stephens.[9]

- Most of the defendants sentenced to *more* than 48 months' imprisonment had much deeper ties to and involvement with the BMB than Mr. Stephens, as evidenced by their participation in pro-BMB videos or social-media posts.[10]

## IV.    A One-Level Offense Level Departure Is Warranted Because Mr. Stephens's Prior Convictions Were for Conduct that Is Part of the Instant Offense Conduct

Mr. Stephens objects to the Probation Department's calculation of the Guidelines offense level because it results in an inappropriate double counting of Mr. Stephens's prior offense conduct in the instant base offense level. While the RICO Guidelines permit prior sentences arising from

---

[6] Sentencing Tr., *United States v. Brown*, 15 CR 95 (AJN) (S.D.N.Y. Jan. 5, 2017), at 11:21–25, 18:21–25, attached hereto as Exhibit 16.

[7] *Id.* at 18:9–12.

[8] Sentencing Tr., *United States v. Williams*, 15 CR 95 (AJN) (S.D.N.Y. May 23, 2017), at 6:11–12; 10:13–15, 13:2–3, 13:10–11, 14:3–4, 15:10–12, attached hereto as Exhibit 17; Gov't Sentencing Submission, *United States v. Williams*, 15 CR 95 (AJN), Dkt. No. 1351, at 6 (May 19, 2017); Sentencing Tr., *United States v. Wilson*, 15 CR 95 (AJN) (S.D.N.Y. Dec. 16, 2016), at 8:15–18, 23:17–25, 24:20–23, 26:9–12, attached hereto as Exhibit 18; Gov't Sentencing Submission, *United States v. Wilson*, 15 CR 95 (AJD), Dkt. No. 876, at 6–7 (Dec. 14, 2016).

[9] *See, e.g.*, Sentencing Tr., *United States v. Francis*, 15 CR 95 (AJN) (S.D.N.Y. July 20, 2017), at 20:4–5, attached hereto as Exhibit 19; Sentencing Tr., *United States v. Feliciano*, 15 CR 95 (AJN) (S.D.N.Y. Nov. 21, 2016), at 7:2–14, 21:3–6, attached hereto as Exhibit 20.

[10] *See, e.g.*, Sentencing Tr., *United States v. Dewar*, 15 CR 95 (AJN) (S.D.N.Y. July 5, 2017), at 26:14–17, attached hereto as Exhibit 21; Sentencing Tr., *United States v. Haughton*, 15 CR 95 (AJN) (S.D.N.Y. Apr. 4, 2017), at 12:18–20, attached hereto as Exhibit 22.

September 15, 2017
Page 11

conduct that was part of the "pattern of racketeering activity" to be weighed as prior sentences for purposes of calculating a criminal history score, U.S.S.G. § 2E1.1, Application Note 4, the Second Circuit has held that the relevant Application Note is "reasonably construed . . . to mean that the conduct underlying the previously imposed sentence should not be used in calculating the base level for the instant offense." *United States v. Minicone*, 960 F.2d 1099, 1111 (2d Cir. 1992). Moreover, where the criminal history calculation results in an "anomalous result" because of the application of this RICO-specific rule, the Guidelines provide that a downward departure is warranted. U.S.S.G. § 2E1.1, Application Note 4.

Here, the majority of Mr. Stephens's prior convictions fell within the time frame of the charged racketeering conspiracy and involved conduct – marijuana possession and distribution – that is directly related to the current offense. The drug quantities involved in that offense conduct, therefore, have already been accounted for in the instant base offense level. Following the Probation Department's criminal history calculation thus results in an effective double counting and creates an "anomalous result" that justifies a Guidelines departure. *See Minicone*, 960 F.2d at 1111. Moreover, as noted above, the Government has agreed that this one-level Guidelines departure to offense level 24 is warranted pursuant to U.S.S.G. § 2E1.1, Application Note 4.

## V.   Mr. Stephens's Criminal History Category Over-Represents the Seriousness of His Record

Mr. Stephens also objects to the Probation Department's calculation of his criminal history score. Although the parties stipulated that Mr. Stephens fell within criminal history category III, the PSR placed Mr. Stephens in criminal history category IV as a result of three additional criminal history points. Those were assessed based on (1) a September 7, 2011 conviction for criminal sale of marijuana in the fourth degree, and (2) an August 1, 2011 conviction for criminal trespass in the second degree. PSR ¶¶ 40–41, 78. The trespass conviction arose after Mr. Stephens was arrested at his friend's apartment, where Mr. Stephens had been waiting for the friend to return home. On September 7, 2011, Mr. Stephens was sentenced to serve concurrent sentences of four months' imprisonment for the trespass and 30 days' imprisonment for the marijuana offense, and the convictions were designated as adjudicated youthful offender offenses.

We respectfully submit that these two adjudicated youthful offenses should not be included in Mr. Stephens's criminal history score. Although the Second Circuit has held that a district court *may* consider such past offenses when determining a defendant's criminal history category, it has also advised that the court should "[e]xamine the substance of the prior conviction at issue; to focus on the nature of the proceedings, the sentences received, and the actual time served." *United States v. Driskell*, 277 F.3d 150, 154, 157 (2d Cir. 2002) (internal quotation marks omitted). Here, where Mr. Stephens was only 18 years old at the time of the offenses, he was convicted of only non-violent misdemeanors, and a New York State court determined that "the interest of justice would be served by relieving [Mr. Stephens] from the onus of a criminal record," N.Y. Crim. Proc.

September 15, 2017
Page 12

Law § 720.20(2), it would be appropriate to exclude these offenses when determining Mr. Stephens's criminal history score.[11]

However, even accepting the Probation Department's determination of Mr. Stephens's criminal history score as correct, placement in criminal history category IV nonetheless drastically exaggerates the extent and seriousness of his criminal record. It is well-settled that an identified overstatement of the seriousness of a defendant's past conduct is a ground for departure from the raw criminal history score. *United States v. Mishoe*, 241 F.3d 214, 219 (2d Cir. 2001); *see also* U.S.S.G. § 4A1.3(b)(1) (permitting downward departure where "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history"). Relevant factors in making that assessment include "the amount of drugs involved . . . , [the defendant's] role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for [by the Guidelines]." *Mishoe*, 241 F.3d at 219. Here, although Mr. Stephens has seven prior criminal convictions:

- All seven were for misdemeanor offenses, not felonies.

- Three of the convictions were for offenses committed when Mr. Stephens was 18 or younger. As discussed above, the two offenses committed when Mr. Stephens had just turned 18 were both adjudicated as youthful offenses under New York state law.

- Five of the convictions were resolved by a conditional discharge or a fine of $100 or less. Only two resulted in any jail time – a concurrent term of only four months – and those were the two adjudicated youthful offenses committed when Mr. Stephens was only 18.

- Five of the convictions were for marijuana possession or distribution and thus involved offense conduct directly related to the instant offense that is already reflected in the Guidelines base offense level.

- None of the convictions was for a crime that involved the use of violence, a threat of bodily harm, or the use of firearms or other weapons.

Thus, after considering all of the relevant circumstances, Mr. Stephens's criminal history score significantly overstates his actual record and a downward variance is warranted.

In addition, we respectfully submit that the sentence the Court imposes on Mr. Stephens should be reduced by at least 30 days pursuant to § 5G1.3(b) of the Guidelines. That provision

---

[11] Notably, even setting aside Mr. Stephens's age at the time of the trespass, had his sentence been for a term of 30 days or less, the conviction would have been automatically excluded from his criminal history score pursuant to U.S.S.G. § 4A1.2(c)(1).

September 15, 2017
Page 13

authorizes the Court to reduce Mr. Stephens's sentence for time he served for relevant conduct, and Mr. Stephens spent 30 days in prison for related conduct, for which he will not receive credit from the Bureau of Prisons, as a result of his September 2011 conviction for sale of marijuana. PSR ¶ 40.

## VI.   Conclusion

For the reasons set forth herein, we respectfully submit that the Court should impose a below-Guidelines sentence of 24 months of custodial supervision consisting of a term of 16 months of incarceration followed by a period of supervised release that includes a condition that Mr. Stephens participate in and successfully complete an approximately nine-month in-patient drug rehabilitation program. An "individualized assessment" of Mr. Stephens reveals that such a sentence would be "sufficient, but not greater than necessary" to achieve the objectives of sentencing in this case. 18 U.S.C. § 3553(a). Such a sentence not only recognizes the circumstances that contributed to where Mr. Stephens is today, his remorse, and the responsibility he has taken for his actions, but will also sufficiently punish Mr. Stephens for his role in the instant offense while giving him the invaluable opportunity to get his life back on track and return, after a period of rehabilitation, to his children and legitimate employment.

Respectfully submitted,

Katya Jestin
Anthony S. Barkow
Emily S. Deininger
Lorenzo Di Silvio
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022
Tel: 212-891-1600
Fax: 212-891-1699
kjestin@jenner.com
abarkow@jenner.com
edeininger@jenner.com
ldisilvio@jenner.com

*Attorneys for Defendant Dante Stephens*

cc:     AUSA Rachel Maimin (via ECF and email)