# MAHER & PITTELL, LLP
*ATTORNEYS AT LAW*

| | |
|---|---|
| *NYC/Queens Office* | *Long Island Office* |
| **42-40 Bell Blvd., Suite 302** | **14 Bond St., Suite 389** |
| **Bayside, New York  11361** | **Great Neck, New York  11021** |
| Tel  (516) 829-2299 | Tel  (516) 829-2299 |
| *jp@jpittell.com* | *jp@jpittell.com* |

September 18, 2017

Hon. Alison J. Nathan
U.S. District Court
40 Foley Sq.
New York, NY 10007

Re:  *U.S. v. Burrell, el al* {Javone Pearce} 15 cr 95 (AJN)

Dear Judge Nathan:

      We are counsel for Javone Pearce, a defendant in the above referenced matter.

      We submit this letter in response to comments in a Pretrial Services Violation Report dated May 10, 2107 (the "Report") and to the Government's references to the Report in their sentencing submissions dated September 15 & 18, 2017.

      The Report contains the following recommendation:

> *In light of the defendant's admitted drug use, as well as his continued submissions of diluted urinalyses which, though returned negative by the national lab, were initially positive locally and some concentration of marijuana in the defendant's system, Pretrial Services respectfully recommends that the defendant's conduct be taken into account at sentencing. Specifically, Pretrial Services recommends that should the defendant be sentenced to a period of incarceration, he be remanded at the time of sentencing and a condition of drug testing and treatment be included as part of any period of supervised release. Should the defendant be sentenced to a non-custodial term of probation, Pretrial services respectfully recommends that a condition of drug testing and treatment be imposed as part of that supervision.*

      We find some aspects of this recommendation to be troubling.

      Pretrial Services is an arm of the Court.  As such, their sentencing recommendations should represent an objective balance between positive and negative aspects of how a supervisee has

handled supervision. Yet, in this instance, in making his recommendation, it appears Javone's Pretrial Services Officer has neglected to inform the Court about the highly positive aspects of Javone's supervision. The Report omits to mention that, for the past fifteen months, Javone has been working full-time at an autobody shop. It further omits to mention that, during the past sixteen months, Javone has been compliant with his bond condition of home detention. During this entire period, other than going to work, or other authorized leaves, Javone he has faithfully remained inside his home. Finally, the Report neglects to report that Javone dutifully reported to his supervising Pretrial Officers as directed.

We note the Pretrial Service Officer has recommended that a condition of Javone's post-sentence supervision include drug treatment. We are not averse to Javone attending drug counseling. From day one, Javone has always been candid about his prior history of daily marijuana use. On the day he was arrested, he told the interviewing Pretrial Officer that he had been using marijuana on a daily basis for several years. Similarly, he disclosed his use of marijuana to the Probation Officer who conducted his Presentence Interview. Quite frankly, we fully expect that drug treatment will be a condition of Javone's supervised release.

However, we object to Javone's Pretrial Officer characterizing Javone's first marijuana relapse -- which began after ten months of abstinence following his release on a bond -- as so egregious that it warrants Javone being immediately remanded at sentencing. We find this recommendation to be disingenuous. If the Pretrial Officer is so troubled by Javone's marijuana relapse, we question why he did not immediately seek, in the interim before sentencing, for Javone to attend drug counseling. We all know that, at times, substance abusers (including ones such as Javone who had a years-long daily marijuana habit) may relapse especially during a period of stress.

The Report seeks to imply there is some significance to laboratory findings which report Javone's urine samples as dilute. In addition, in its Sentencing Memorandum, the Government uses these findings as a basis to accuse Javone as being "deceitful with his Pretrial Officer." As noted above, Javone has been forthright about his history of using marijuana. We trust that Pretrial Services, as well as the Government, know a finding, that a urine sample is dilute, does not always mean the sample was intentionally diluted. A sample can be reported as dilute simply because a person drinks a lot of fluids or has naturally low creatinine levels. We note that Javone is a manual laborer who works in an autobody repair shot. During the course of a day's work, he sweats and consumes more water than an average office worker. As such, his normal high consumption of water may account for the dilute findings. In order to further examine the test results, we requested the Pretrial Officer provide the actual reports. However, he has declined to disclose them. As a result, Pretrial Services and the Government are urging Your Honor to fashion a sentence based, in part, upon a scientific test result which we cannot even review or question. We submit, under such circumstances, Your Honor should not place any significance upon the Report's reference to dilute urine samples.

Based upon the reasons stated herein, as well as our Sentencing Memorandum, we continue to urge the Court to impose a sentence of time served. We note the Government's Sentencing Memorandum, for several pages, details serious acts of violence perpetrated by the Big Money Bosses. However, the Government acknowledges that Javone -- whose offense conduct involves the sale of marijuana -- was never a member of the gang (Govt. memo p.6). Accordingly, we submit that our Requested Sentence is a fair and appropriate disposition in this case as it, collectively, constitutes a sentence where Javone:

1) Was incarcerated for five days jail after his arrest;
2) Was on (now) sixteen months home detention during the pendency of this case;
3) Will serve a term of supervised release after he is sentenced;
4) Will incur the lifelong collateral consequences of having a federal felony conviction; and
5) Will pay a $100 special assessment.

                                                Respectfully submitted,
                                                /s/
                                                Jeffrey G. Pittell

cc:    Jessica Feinstein, AUSA
        Rachel Maiman, AUSA
        Javone Pearce