UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,                S7 15 Cr. 95 (AJN)

      -against-

CARLETTO ALLEN,

                Defendants.

### DEFENDANT CARLETTO ALLEN'S MOTION
### FOR A JUDGMENT OF ACQUITTAL

Defendant Carletto Allen hereby moves under Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal.

    **I.**    **There is Insufficient Evidence to Support a Conviction on Counts One and Four**

The standard under Rule 29, as articulated by the United States Supreme Court, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *accord U.S. v. Lorenzo*, 534 F. 3d. 153, 159 (2d Cir. 2008) (finding insufficient evidence adduced at trial to demonstrate that the defendant knowingly entered into the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy). It is manifestly evident that the Government has not met its burden in this case on Counts One and Four.

    **A.**    **There is Insufficient Evidence to Support a Conviction on Count I**

Count I charged Racketeering Conspiracy under 18 U.S.C. §1962(d). The enterprise is alleged to be a gang in the Bronx called Big Money Bosses ("BMB"). There was no evidence,

however, linking Mr. Allen to BMB.  The Government conceded at trial that Mr. Allen was not a member of BMB.  (Tr. 38:4-5.)

A defendant's association with an organized crime group is not itself an act of racketeering activity; nor is a defendant to be held accountable for the racketeering acts of others. *U.S. v. Indelicato,* 865 F.2d 1370, 1384 (2d Cir. 1989).  A "RICO conspiracy requires proof 'that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering' and [ ] 'the conduct prong requires only that conspirators reached a meeting of the minds as to the operating of the affairs of the enterprise through a pattern of racketeering conduct.'"  *U.S. v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011) (quoting *U.S. v. Basciano*, 599 F.3d 184, 199 (2d Cir. 2010)); *see also U.S. v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) ("A RICO conspiracy charge is proven if the defendant embraced the objective of the alleged conspiracy, and agreed to commit . . . predicate acts in furtherance thereof." (internal quotation marks omitted)).

"[A] RICO conspiracy is never simply an agreement to commit specified predicate acts that allegedly form a pattern of racketeering.  Nor is it merely an agreement to join in a particular enterprise.  Rather, it is an agreement to conduct or participate in the conduct of a charged enterprise's affairs *through* a pattern of racketeering."  *U.S. v. Pizzonia*, 577 F.3d 455, 464 (2d Cir. 2009).  *Compare U.S. v. Applins*, 637 F.3d 59 (2d Cir. 2011) (discussing sufficiency of proof in gang round-up case).

In *Applins*, even the lowest-level members of the charged conspiracy were far more involved in the gang than the allegations against Mr. Allen.  For example, the Court noted that:

> With regard to William Robinson, the government also adduced sufficient evidence upon which the jury could find beyond a reasonable doubt that Robinson agreed to participate in the conspiracy. For example, co-conspirators testified that Robinson regularly sold crack cocaine in Elk Block territory and carried a gun.

2

> Evidence also demonstrated that Robinson attempted to retaliate against the Boot Camp gang following the altercation at Komfort Zone, by shooting numerous shots into a crowd gathered in Frisbie Court. There was also evidence that members of rival gangs shot Robinson on at least two occasions

637 F.3d at 79. There is no equivalent level of evidence tying Mr. Allen to BMB.

The Government has not "produced evidence sufficient to convince a reasonable juror beyond a reasonable doubt that [Mr. Allen] knowingly associated with the [BMB] enterprise." *United States v. Viola,* 35 F.3d 37, 41 (2d Cir.1994) abrogated on other grounds by *United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000). Mr. Allen derived no benefit from the success of the BMB enterprise. *United States v. Muyet*, 994 F. Supp. 501, 513 (SDNY 1998). He did not sell drugs for the gang, carry out discipline in the enterprise or protect its drug operations from other gangs. *Cf. United States v. Santiago*, 207 F. Supp. 2d 129, 135 (S.D.N.Y. 2002). He did not submit any proceeds from his drug sales to the gang or receive a commission. *Id.*

While the Government characterized Mr. Allen's sale of marijuana to Hamilton and others as at a "discount," that is the Government's term, not Hamilton's. (*See, e.g.*, Tr. 253:2-18.) Hamilton's story is that he haggled over the price with Mr. Allen, and got the price down through some sort of negotiation, not that Mr. Allen offered him a discount. (Tr. 219:18-23.)

The requirement "that there must be a nexus between the defendant's acts and the RICO conspiracy thus protects the defendant from being found guilty based on incidental or tenuous association with the enterprise and its members." *Id*. In *Viola*, the Second Circuit found that the government's proof failed "to support a finding of sufficient knowledge of the RICO conspiracy". The defendant's performance of "menial tasks" and sale of stolen goods on two occasions was insufficient to show that he voluntarily associated with the enterprise, and knew the enterprise extended beyond his role. *Id*.

The only testimony tying Mr. Allen to BMB is from cooperating witness Stephen Hamilton, who testified that Mr. Allen knew of the existence of BMB. Hamilton was unable to link Mr. Allen to anything more than knowing of the existence of the gang, though. Hamilton did testify that Mr. Allen called him "Mr. Big Money," but did not testify that Mr. Allen himself greeted others with the phrase "Big Money" as the gang members did. (Hamilton testified that "we" – meaning BMB members – yelled out "Big Money, Big Money" as Mr. Allen rode his bicycle away. Tr. 220:22-221:3.) Hamilton further testified that Mr. Allen sold marijuana to various people, but not that Mr. Allen himself knew whether they were BMB members. And in fact, Mr. Allen testified that he did not know who was or was not a member of BMB, and the police officers in the neighborhood were unable to identify BMB members either. (Tr. 116:19-117:2 (UC-218); 175:9-11 (Navarro); 669:24-25 (Allen).)

"[A] person cannot be convicted of agreeing to participate in a conspiracy if he has no knowledge that the conspiracy even exists." *Viola*, 35 F.3d at 44. Indeed, "too little knowledge may undermine a conspiracy conviction." *United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000).

B. **There is Insufficient Evidence to Support a Conviction on Count IV**

The Government has not introduced any evidence that Mr. Allen possessed a firearm in furtherance of or in relation to drug trafficking as proscribed by § 924(c). The evidence relating to Mr. Allen's possession of a gun is as follows:

Hamilton testified that Mr. Allen had told him he discharged a weapon at someone who had robbed him a few days earlier. (Tr. page 282.) As Hamilton does not even mention the presence of drugs during this alleged exchange, there is no evidence of a firearm being used in furtherance of or in relation to drug trafficking.

Detective Williams testified that he arrested Mr. Allen for smoking a marijuana cigarette, and that during the arrest he found a gun on Mr. Allen. Sitting in a car smoking marijuana while in possession of a gun does not rise to the level of § 924(c), as there was no allegation of drug trafficking. Mr. Allen himself testified that he was in the car that day with a gun, but that the gun was not his and was not found on his person. Mr. Allen admits that he was in the car to sell a small quantity of marijuana (two "nickel" bags of marijuana). (Tr. 687:25-688:2.)

Mr. Allen also testified that he had owned a gun in 2011, at a time when he was not selling drugs. (Tr. 691:6-692:17.)

"The government does not establish that a firearm was possessed in furtherance of drug trafficking merely by relying on the proposition that drug dealers generally use guns to protect themselves and their drugs, and thus that any time a gun is possessed by a drug dealer it is possessed in furtherance of his drug offenses. *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008); *see also, United States v. Snow,* 462 F.3d 55, 62 (2d Cir. 2006) ("the government cannot convict under § 924(c)(1)(A) by relying on the generalization that 'any time a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs.'") (quoting *United States v. Ceballos–Torres,* 218 F.3d 409, 414–15 (5th Cir.2000)).

The government must establish a nexus between the gun and drug trafficking. No nexus exists where, as here, the gun is inaccessible and there was no intent to use the gun in connection with a sale of a few nickel bags of marijuana. Regardless whether the Court credits the testimony of Detective Williams or Mr. Allen, there is no evidence of nexus between the gun and drug sales. In the January 2015 incident, according to Detective Williams, Mr. Allen was smoking – not selling – marijuana in the car, and the gun was in Mr. Allen's pocket and did not

come out of Mr. Allen's pocket until he was arrested.  Detective Williams saw a black object and said he snatched it from Mr. Allen's pocket. (Tr. 481:2-9.)  According to Mr. Allen, the gun was not his and it was in the backseat of the car during the drug transaction.

No nexus will be found where the gun's presence is "coincidental and serve[s] no purpose, actual or potential, with respect to [an] impending drug transaction." *U.S. v. Bayer*, No. CRIM. A. 09-CR-120, 2010 WL 728998, at *4 (D. Conn. Feb. 19, 2010) (inaccessibility of the gun made clear that the defendant did not anticipate the possibility that he might have to use the gun in self-defense during the impending crack sale).  Indeed, "[t]he mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime." *United States v. Snow,* 462 F.3d 55, 62 (2d Cir. 2006) (citing *United States v. Castillo,* 406 F.3d 806, 814 (7th Cir.2005)).  The fact that a gun was in the car is not sufficient evidence to sustain a conviction under § 924(c).   This, however, is precisely what the Government argued in its closing.  (Tr. 714:4-16.)

General evidence that guns are tools of the trade in the selling of narcotics, providing protection to narcotics sellers, is insufficient to establish that a specific defendant possessed a firearm in furtherance of a drug conspiracy. *United States v. Fleurissaint*, No. 03 CR. 906 (RPP), 2005 WL 120350, at *6 (S.D.N.Y. Jan. 20, 2005) (citing *United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001)). Instead, the government must establish "enough evidence to permit a rational juror to find beyond a reasonable doubt that the Defendant intended his possession of the gun 'to advance or promote' the drug conspiracy.'" *Fleurissaint at * 6.*

Regardless of whose testimony about the January 2015 arrest is credited, there is no nexus between the gun and the drug sale.  And none of the other, limited, testimony about guns

6

in the case relates to the sale of drugs.  There was insufficient evidence before the jury to convict Mr. Allen on Count Four.

### II. The Court Should Not Have Permitted the Introduction of the Bronx Plea Transcript at Trial

Mr. Allen entered a guilty plea to the charge of Attempted Criminal Possession of a Weapon in the Second Degree in New York State Court in the Bronx. Within weeks of pleading guilty, however, and before sentencing, Mr. Allen filed a motion with the court to withdraw his guilty plea, on grounds of ineffective assistance of counsel.  Mr. Allen's motion has yet to be ruled on by the court in the Bronx, and he has not been sentenced.  Even more striking, Mr. Mr. Allen's lawyer in the Bronx allowed him to answer the court's question during the allocution on the guilty plea of whether he possessed a gun while pleading to an agreed charge of *attempted* possession – this obvious error underlines Mr. Allen's claim of ineffective assistance of counsel.

Nevertheless, despite the undecided nature of the guilty plea, the Government introduced the transcript of Mr. Allen's guilty plea as substantive evidence that Mr. Allen did in fact possess a weapon in the Bronx, one of the underlying charges in this case.

The Supreme Court "has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 747 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  In his affidavit in support of his motion to withdraw his plea, Mr. Allen explained that his counsel in the Bronx case "advised [him] to take a plea to this indictment, saying, inter-alia, that I do not have any defense. That the gun was found on me,

7

even though, I told him that the Police Officer lied about 'where' the gun was found inside the vehicle." (*See* Exhibit 1, Allen Aff.)

Mr. Allen's claim of ineffective assistance of counsel with regard to his guilty plea is particularly important here, where the ineffective assistance that Mr. Allen received in his state court case will come back to haunt him a second time, in this federal case. Here, evidence that he attempted to possess a gun would not have been relevant to the charge in the case of "possessing" a gun. Unless and until the Bronx court has ruled on Mr. Allen's claim of ineffective assistance of counsel and decides against Mr. Allen, it was inappropriate to allow his Bronx court plea transcript to be used against him. *See, e.g.*, *Grant v. United States*, 186 F. Supp. 418, 419 (N.D.N.Y. 1960) (staying U.S. Attorney from "submitting any of the challenged evidence to a grand jury" when the plaintiffs contended that the challenged evidence was the product of an unlawful search and seizure).

The state case against Mr. Allen involving an allegation of gun and marijuana possession is continuing, and there are unresolved Constitutional issues involved. It was error for the Government to read his plea transcript to the jury. *See People v. Pilgrim*, 93 A.D.2d 461, 463-64 (2d Dep't 1983) (Reversing conviction where "the prosecution used the prior convictions [obtained without effective assistance of counsel], not merely as a means of impeaching the defendant's credibility, but as an important element of its direct case to disprove agency and refute the claim of entrapment. In such circumstances, we cannot conclude that the error was harmless beyond a reasonable doubt.") Similarly, many courts have recognized that prior guilty pleas are not proper grounds for impeachment purposes under Fed. R. Evid. 609 until judgment has been entered. For example, in *United States v. Klein*, 560 F.2d 1236 (5th Cir. 1977), the Fifth Circuit noted the inherent danger of relying on a guilty plea, which can be withdrawn:

"Because the judgment of a jury is favored in our law, a court may not lightly disturb a jury's verdict. On the other hand, the rule allowing a defendant, upon leave of court, to withdraw a plea of guilty before sentence is imposed 'should be construed liberally in favor of the accused.'" *Id.* at 1241 (citing *U.S. v. Presley*, 478 F.2d 163, 166 (5th Cir. 1973)); *see also U.S. v. Franklin*, 829 F. Supp. 1319, 1322 (M.D. Fl. 1993) ("[I]t is clear that introduction of the guilty plea is unwarranted given the obvious lack of certainty that it will be maintained.").

Consequently, due to the lack of certainty that the plea will be maintained or was Constitutional, Mr. Allen's plea should not have been given to the jury, even under the theory that it was simply an admission by the defendant. If the plea is later withdrawn, and no judgment of conviction was to follow, Defendant will have 'suffered, unjustly and irreparably, the prejudice, if any, caused by the disclosure of the former conviction.'") (quoting *Campbell v. United States*, 176 F.2d 45, 47 (D.C. Cir. 1949). "There is no doubt [] that the use of constitutionally invalid prior convictions for impeachment purposes is error of constitutional dimension." *Zilka v. Estelle*, 529 F.2d 388 (1976).

### III. The Court Erred In Not Instructing the Jury on Multiple Conspiracies

It is abundantly clear from Ms. Maimin's closing statement that the Government attempted to prove at least two distinct conspiracies that could fall under Count II (Narcotics Conspiracy): (1) that Mr. Allen was selling to members of BMB so they could resell the marijuana to users; (2) that Mr. Allen was buying marijuana from wholesalers to resell himself. (Tr. 719:21-721:13.) Similarly, the jury could have found Mr. Allen guilty of a variety of conspiracies with regard to Count I (Racketeering Conspiracy) – Mr. Allen selling marijuana to various members to the gang for them to resell could be multiple conspiracies, unless there is

9

evidence (and there is not) that the supposed-BMB members were working together in the sale of the marijuana.

Moreover, because the Government ultimately argued two distinct conspiracies existed on Count II, there is a failure of proof, as it is impossible to know which conspiracy the jury convicted Mr. Allen of participating in.  "[A] multiple conspiracy charge is required whenever several conspiracies might be inferred from the evidence offered." *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir.1979).  "In order to promote the goal of keeping distinct conspiracies distinct, the court should describe explicitly the possibility of several conspiracies and instruct the jury that in order to convict a given defendant, it must find that he was a member of the conspiracy charged in the indictment and not some other conspiracy." *Id.* at 625 (citations and quotations omitted).

The argument that Mr. Allen conspired with his wholesalers was not charged in the Indictment (superseding or otherwise) and is also therefore impermissible.

### IV.     The Court Should Not Have Allowed in Evidence of Mr. Allen's "Courthouse Corridor" Statement

 "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. *Maine v. Moulton*, 474 U.S. 159, 176 (1985).  [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity.  *Maine v. Moulton*, 474 U.S. at 176. "By intentionally creating a situation likely to induce [defendant] to make incriminating statements without the assistance of counsel, the Government violate[s] [defendant's] Sixth Amendment right to counsel." *United States v. Henry*, 447 U.S. 264, 274 (1980).

The U.S. Marshalls did not take the appropriate measure of care to ensure that Hamilton and Mr. Allen did not meet in the hallway. It was reasonably foreseeable that Mr. Allen would confront his accuser on a break in his testimony, and that Mr. Allen would make statements that could be viewed as incriminatory. At the time, both Mr. Hamilton and Mr. Allen were in custody of the U.S. Marshall's service in the Federal Court House at Foley Square. The Marshalls who had custody of Mr. Allen and the Marshalls who had custody of Mr. Hamilton are the government's agents, created a situation "likely to induce [Mr. Allen] to make incriminating statements without the assistance of counsel" and thus violated Mr. Allen's Sixth Amendment right to counsel. As such, Mr. Allen's statements to Hamilton should not have been admitted into evidence.

Dated:  New York, New York
        November 27, 2017

                                                                         _____
                                                                         John J. Kenney (JK 9090)
                                                                         Helene R. Hechtkopf (HH 7402)
                                                                         HOGUET NEWMAN REGAL & KENNEY, LLP
                                                                         10 East 40th Street, 35th Floor
                                                                         New York, NY 10016
                                                                         Phone:  212-689-8808

                                                                         Olubukola Adetula
                                                                         989 Sanford Ave.
                                                                         Irvington, NJ 07111
                                                                         Phone:  973-416-1000

                                                                         *Attorneys for Defendant Carleto Allen*